KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CODY GRAY - # 310525
cgray@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant RUTHIA HE
specially appearing for bail

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RUTHIA HE and DAVID BRODY,<br><br>    Defendants. | Case No. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S RESPONSE IN SUPPORT OF PROPOSED CONDITIONS OF RELEASE**<br><br>Dept.:     Courtroom 6 – 17th Floor<br>Judge:     Hon. Charles R. Breyer<br><br>Date Filed: June 12, 2024<br><br>Trial Date: Not yet set |

In its overheated twelve-page opposition brief, the government argues that "this detention issue comes down to trust." Dkt. 77 at 12. And yet, over the past two months, it is the government that has repeatedly made false and exaggerated claims that it could not defend. In July, it told Judge Hixson that Ms. He had "book[ed] a flight to Costa Rica" to test the government's "ability to monitor her travel"—a fiction that was easily explained and quickly abandoned. In August, the prosecution argued to this Court that Ms. He had somehow used a lost passport to enter the United States—a theory that fell apart under the gentlest scrutiny and which the government has never mentioned again. Now, the government puts forth another parade of horribles. It argues, for instance, that Ms. He unilaterally issued company dividends "without approval of her other board member"—a claim that is as unsubstantiated as it is false.[1] And, perhaps most egregiously, it implies that Ms. He cannot be trusted because she "has **no ties** to this district." *Id.* In truth, as the government knows, Ms. He has lived in the United States her entire adult life: she moved here after college, went to graduate school here, landed jobs at various well-known Bay Area companies, built her own startup here, applied for and received a green card, and has spent more than 85% of the past 10 years present in the United States (and most of that in the Bay Area).

In the end, the government's opposition boils down to one overarching complaint: that, in the government's view, Ms. He continues to have influence over the company she founded and the people who work there. Setting aside the veracity of those claims for now, the Court has already addressed this concern at length:

> THE COURT: I think that I am sort of embarked on an errand that's not going to work out if I have to try to figure out whether we could put into place some construct of controls and independent boards and all of this that we are talking about in order to essentially deny her access to these funds.
>
> Maybe it would work, maybe it wouldn't, and also maybe it's unfair. …
>
> I don't know too much about this company and about the facts of the case, so I sit here and I think, you know, she may be entitled to some of this money, maybe some of the money is not ill-gotten gains, maybe a lot of it is not the subject of ill-gotten

---

[1] In the Board member's defense, even the government's own interview memorandum reports only that he said he "*did not recall*" making the dividend decisions. *See* Ex. 43 at ¶ 7. If that is what he told the government, then his memory has failed him. But the leap from "did not recall" to the much firmer "*without approval*" appears to be entirely the government's. This is hardly the first time the government has made these claims, *see, e.g.*, Dkt. 74 at 8:20–9:1, although repetition does not make them any truer.

> gains. And again, it strikes me that to cut her off from the funds, that is the beneficial use of the funds, may be unfair in some real sense.
>
> So what I'm saying to you … is I'm much more concerned about the system of guards, I'm much more concerned about flight, and I am also concerned, subject to efforts that apparently she made through the submission of a government to, I guess the word is "obstruct"….

Dkt. 74 (Hr'g Tr.) at 22–23; *see also id.* at 28:6–7. At the recent August 29 hearing, the Court encouraged the parties to focus not on these factual disputes, *see id.* at 23:24–24:12, but on identifying a set of bond conditions that would ensure Ms. He's continued presence in this District, *id.* at 24–29. That is exactly what Ms. He has done. *See* Dkt. 76.

Immediately after the August 29 hearing, defense counsel requested a meet-and-confer call. When the parties talked the next day, defense counsel discussed their proposed conditions in detail and solicited feedback from the government. In particular:

1. The Court suggested that the parties discuss bond and cash amounts. Dkt. 74 at 25:9–14. Defense counsel asked whether the government thought the cash amount should exceed $500,000, and if so, whether there was a reasonable amount that would satisfy them while still leaving some funds for Ms. He to live on while she prepares for trial. (Both sides have represented that Ms. He has approximately $600,000 in liquid assets, as well as a share of a small property in Georgia. *See* Ex. 59; Dkt. 77 at 10:9–10.) Since the last hearing, Ms. He has offered to increase the total bond amount to $5 million and to secure it not just with $500,000 in cash, but also her shares in the company. Thus, if she failed to appear, she would forfeit the entire company she has spent years of her life building.[2]

2. The defense made clear that it would increase its original security proposal to match Dr. Lynch's—that is, to include two around-the-clock, armed security guards whom the Court would order to watch Ms. He at all times and to restrain her if she attempted to flee. That day, defense counsel provided the government with contact information for the proposed security company, Rescor, and offered to discuss any further questions the

---

[2] Rather than engage seriously with this proposal, the government now speculates that Ms. He might "simply bankrupt" the entire company and then "creat[e] a new Chinese corporation" to "continu[e] operations." Dkt. 77 at 10 n.2. The government says nothing about how Ms. He could do any of that if she forfeited the company, let alone how she would transfer years of work, patients, and business relationships to some new (and entirely hypothetical) Chinese corporation.

|   |   |   |
|---|---|---|
| 1 |    | government had at any time. The government never responded. Indeed, the first time it |
| 2 |    | raised its apparent concern—that Rescor has not previously "conducted security in |
| 3 |    | connection with pretrial release"—was when it filed its opposition brief a full week later. |
| 4 |    | *See* Dkt. 77 at 11 n.3. If the government has suggestions about Rescor's proposal, or |
| 5 |    | "details and operational guidelines" that it wants finalized, *id.*, then it should say what |
| 6 |    | they are and work with defense counsel and the Court to resolve them. |
| 7 | 3. | The defense also proposed conditions that would restrict Ms. He's access to electronic |
| 8 |    | devices and communications. Under the current proposal, which was developed in |
| 9 |    | consultation with Pretrial Services, Ms. He would have access to only two devices: a |
| 10 |    | "dumb" flip-phone, which could make and receive calls and text messages, and an |
| 11 |    | internet-capable personal computer, which would be monitored and audited by Pretrial |
| 12 |    | Services. Here, too, the government did not identify any concerns during the parties' |
| 13 |    | August 30 phone call, nor in the week that followed. Indeed, in its opposition brief, the |
| 14 |    | government's only complaints are: (a) that Ms. He previously "used a wide array of |
| 15 |    | messaging services"—which would be banned under her current proposal, *see* Dkt. 76 |
| 16 |    | at 2:1–10; and (b) that Ms. He could "obtain a second device without informing counsel or |
| 17 |    | Pretrial Services," which is theoretically true of any defendant, including many housed in |
| 18 |    | Santa Rita Jail. Ms. He has consistently complied with these sorts of restrictions in the |
| 19 |    | past: she voluntarily surrendered her passport to her attorney; when the government asked |
| 20 |    | her not to travel internationally, she didn't; and she has never once sought to flee, |
| 21 |    | including in the almost-two-year period between September 2022 (subpoena to Done) and |
| 22 |    | June 2024 (her arrest). If the Court allows her to use two devices and prohibits others, as |
| 23 |    | Ms. He has proposed, she will abide by that restriction. If the Court wants to add some |
| 24 |    | sort of search procedure, by the armed guards or Pretrial Services, that's fine too. But the |
| 25 |    | government's speculative conjecture about how a defendant *might* violate future |
| 26 |    | conditions, without evidence or precedent, does not mean that the conditions Ms. He has |
| 27 |    | proposed are inadequate. |
| 28 |    | \* \* \* |

At the last hearing, the Court made clear that it believes the conditions in this case will need to match those in Dr. Lynch's case. Ms. He's proposal does that and more:

| **U.S. v. Michael Lynch**, 18-cr-577 | **U.S. v. Ruthia He**, 24-cr-329 |
|---|---|
| Defendant shall deliver to the Clerk of Court a bond in the amount of $100 million, secured by $50 million in cash or unencumbered shares of publicly traded stock, accompanied by power of sale. | The defendant shall deliver to the Clerk of Court a bond in the amount of $5,000,000, secured by $500,000 in cash and the defendant's shares in Done Global Inc., which shares shall be accompanied by a power of sale that becomes effective if bail is forfeited. |
| Defendant shall be confined to an address in the city and county of San Francisco, subject to the approval of the United States Attorney's Office and the Court, and may only travel for meetings with counsel, medical appointments, and court appearances, all of which must be located in the city and county of San Francisco. Any further travel must be approved by the United States Attorney's Office and the Court. | The defendant shall be confined to a fixed address in the Northern District of California, subject to the approval of Pretrial Services, and may travel only for meetings with counsel, medical appointments, or court appearances, all of which shall occur in this District. Any other travel must be approved by the Court. |
| Defendant shall be guarded on a 24-hour basis by a private security company at Defendant's expense, including video surveillance and armed guards. The costs of supplying the private security for six months shall be paid in advance. The private security company, the security arrangement, and any changes thereto, shall be approved by the United States Attorney's Office and the Court. | The defendant shall be guarded on a 24-hour basis by a private security company. The company shall ensure that there are two guards on duty at any time and that the guards are authorized to restrain defendant if she attempts to flee. The private security company, the security arrangements, and any changes thereto, shall be approved by the United States Attorney's Office or this Court. |
| | The defendant must submit to electronic monitoring. |
| Defendant shall surrender all travel documents of any kind whatsoever, including any document which may be used to enter or exit any country, genuine or not. Defendant shall not apply for or otherwise obtain any new travel documents, genuine or not. | The defendant shall surrender all travel documents of any kind whatsoever to Pretrial Services immediately and shall not apply for or otherwise obtain any new travel documents. |
| Defendant shall be subject to strict supervision by Pretrial Services and adhere to any other conditions imposed by the Court. | The defendant must submit to supervision by Pretrial Services and must report immediately upon release and thereafter as directed to Pretrial Services. |

| *U.S. v. Michael Lynch*, 18-cr-577 | *U.S. v. Ruthia He*, 24-cr-329 |
|---|---|
| | The defendant shall be entitled to use the following devices at her fixed address: (a) a "dumb" flip-phone that has the capability to make or receive phone calls or text messages, but not to download any "apps," such as WhatsApp or Telegram; and (b) a computer that is approved by and shall be monitored by Pretrial Services. The defendant shall be allowed to use the computer to review discovery, to conduct internet research associated with her defense, and to email or communicate with her lawyers, family, and friends. Pretrial Services shall ensure that the defendant cannot access any ephemeral messaging platforms (*e.g.*, WhatsApp, Telegram, or Signal) on either device. Pretrial Services shall regularly audit defendant's use of her phone and computer. Defendant shall not use any other electronic communication devices (*e.g.*, smart phones, tablets, laptops, or personal computers) except as authorized in this paragraph. |
| | The defendant shall have no contact, directly or indirectly, with any co-defendant outside of the presence of her counsel. |
| | The defendant must not use alcohol to excess and must not use or possess any narcotic or other controlled substance without a legal prescription. |

When undersigned counsel first attempted to negotiate a potential bail package in this case, the government's immediate response was that it viewed Ms. He as "not bailable under any conditions." Unfortunately, it has approached the parties' meet-and-confer discussions in the same way. But that is not the law. Section 3142 does not require "ironclad guarantees," presumably because they never exist in any case. Instead, the conditions of release are meant to "reasonably assure" the defendant's continued appearance. *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (citing 18 U.S.C. § 3142). Unless the Court concludes that "**no combination of conditions**" will meet that goal, the Bail Reform Act requires that Ms. He be released. *Id.* The bail package that Ms. He has proposed meets (indeed, exceeds) the conditions

1  set in Dr. Lynch's case; it addresses the Court's identified concerns by requiring round-the-clock
2  security and limiting Ms. He's ability to communicate; and it far exceeds what Pretrial Services
3  has recommended. Respectfully, the Court should order Ms. He released subject to the proposed
4  conditions so that she can work with her attorneys and prepare her defense in this case.

6  Dated: September 9, 2024                                    KEKER, VAN NEST & PETERS LLP

8                                                        By:   */s/ Nicholas D. Marais*
                                                               ELLIOT R. PETERS
9                                                              NICHOLAS D. MARAIS
                                                               CODY GRAY
10
                                                               Attorneys for Defendant RUTHIA HE
11                                                             specially appearing for bail