RAVI T. NARAYAN (CABN 331858)
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

RAVI T. NARAYAN (CABN 331858)
Acting Chief, Criminal Division

GLENN S. LEON (NYBN 250785)
Chief, Fraud Section

JACOB FOSTER (CABN 250785)
Principal Assistant Chief
Fraud Section, Criminal Division

    950 Constitution Avenue, NW
    Washington, D.C. 20530
    Telephone: (202) 514-2000
    FAX: (202) 514-3708
    Jacob.Foster@usdoj.gov

KRISTINA GREEN (NYBN 5226204)
ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7234
    Kristina.Green@usdoj.gov
    Alexandra.Shepard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY, <br><br> Defendants. | Case No. CR 24-329 CRB <br><br> UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO REVOKE DEFENDANT RUTHIA HE'S BOND |

Defendant has violated her conditions of release and breached the trust of the Court. She falsely represented to this Court and others that she had her surrendered her one active travel document—a Chinese passport—in February 2023 when in fact, four months later, in June 2023, she obtained a new Chinese Travel Document. Defendant has attended six court appearances where this fact was concealed from the Court and the government. Defendant has repeatedly presented the false narrative that her surrender of her passport demonstrated that she was not a flight risk and had complied in good faith with government requests when, in reality, her actions show just the opposite. The government has consistently warned the Court throughout the detention process that Defendant cannot be trusted to comply with conditions of release and has demonstrated an intent, and preparation, to flee, obstruct, and distribute illegal drugs. Defendant's failure to turn over the Chinese Travel Document, a straightforward violation of her release condition that required her to "surrender any passports or other travel documents to Pretrial Services," ECF No. 103, further corroborates this intent. The Court should revoke Defendant's bond and remand her to custody.

**I.     Defendant Falsely Presented That She Was Not in Possession of Travel Documents**

The government served Done with a subpoena for records in September 2022. From at least January 2023, Defendant researched with an associate, Yue Wang (now one of the individuals purportedly running Done) countries from where the government could not recover her assets or successfully seek her extradition. See ECF No. 52, Exs. 1 & 26; ECF No. 77, Ex. 58. Just one month later, Defendant booked a one-way flight from the United States to Hong Kong. Before Defendant boarded her flight, the government seized Defendant's phone pursuant to a warrant and requested that she not travel internationally. Defendant surrendered a passport to counsel at that time.

Counsel has repeatedly represented to the government and the Court that Defendant is not a flight risk because she surrendered her only passport. These representations include:

1.     **June 2024 Detention Hearing (C.D. Cal.):** "[Defendant's] passport, as you may know from the Pretrial Report, was surrendered to [defense counsel] over a year ago, her Chinese passport. She does not have a U.S. passport. She's not going anywhere." *See* ECF No. 52, Ex. 13 (June 13, 2024 Hrg. Tr.) at 35.

2.     **July 11, 2024 Defendant Brief:** There is "no dispute . . . that [she] voluntarily gave up

her passport to her attorney . . . . [She] surrendered her passport to her counsel at the time, which was then passed to undersigned counsel. Since then, undersigned counsel has maintained possession of the passport, and can transfer the passport to pretrial." ECF No. 25 at 8, 11.

3.  **July 12, 2024 Detention Hearing (N.D. Cal., J. Hixson)**: "It's always been the case that she only has one active passport." *See* ECF No. 48-1, at Ex. 17 (July 12, 2024 Hrg. Tr.) at 36. Based on this information, defense counsel asked "how is she going to get out of the country without her passports? . . . how is she going to get out . . . when her passport[']s with Pretrial?" *Id*. at 33–34.

4.  **August 16, 2024 Defense Brief Appealing Detention Order (N.D. Cal., J. Breyer)**: Defendant "has not possessed a passport *since February 2023*." ECF No. 48 at 21 (emphasis in original). "In February 2023, [Defendant] gave her passport (and an old expired one) to her counsel and has not possessed a passport since."). *Id*. at 29. "To be clear, [Defendant] has not had her passport since February 2023." *Id*. at 13. There is "no way [Defendant] could have boarded a flight to Costa Rica because, again, she had surrendered her passport to her attorney." *Id*. at 14. [B]ecause she has no passport and is willing to wear an ankle monitor, she has no realistic way to leave the United States." *Id*. at 23. Counsel asserted that not only was Defendant not a flight risk, but her surrender of her passport "demonstrated substantial good faith" and cooperation with the government. *Id*. at 6.

5.  **August 21, 2024 Detention Hearing (N.D. Cal., J. Breyer):** Defendant "was going to take a trip in February of [2023], and a bunch of agents came to her house and told her not to travel and so she didn't. . . . She hasn't had her passport since then." Ex. 1 (Aug. 21, 2024 Hrg. Tr.) at 15. Because Defendant "[h]asn't had her passport," her presence in the United States since February 2023 was "powerful" evidence that she was not a flight risk. *Id*. at 16.

6.  **August 23, 2024 Detention Hearing (N.D. Cal., J. Breyer):** "[S]he gave her passport, her only passport" to counsel in February 2023. *See* ECF No. 77-1, Ex. 40 (Aug. 23, 2024 Hrg. Tr.) at 24. Based on this, counsel again argued that Defendant could not effectively flee the country. *Id*. at 42.

7.  **August 29, 2024 Detention Hearing (N.D. Cal., J. Breyer):** "What we have stressed to the Court is starting in February [2023], [Defendant] gave her passport to her lawyer." ECF No. 77-1, Ex. 39 (Aug. 29, 2024 Hrg. Tr.) at 16. "[Defendant] doesn't have a passport. So she would have to somehow fake the guard, cut off the ankle bracelet, and go to the San Francisco Airport where she

doesn't have a passport." *Id.* at 20.

8. **September 4, 2024 Defense Proposed Release Conditions (N.D. Cal., J. Breyer):** Defendant "has a Chinese passport (currently in the possession of her counsel)," and has "demonstrated good faith in cooperating with the government regarding travel over the last 18 months, including voluntary surrender of her passport in February 2023." *See* ECF No. 76-1 at 1–2.

9. **September 9, 2024 Defense Brief (N.D. Cal., J. Breyer):** "[S]he voluntarily surrendered her passport to her attorney" and "never once sought to flee." *See* ECF No. 82 at 4.

10. **September 9, 2024 Detention Hearing (N.D. Cal., J. Breyer)**: Defendant "surrendered her passport," and "[t]here is no court order, no requirement of [Defendant] that she has failed to comply with." *See* Ex. 2 (Sept. 9, 2024 Hrg. Tr.) at 17.

11. **September 11, 2024 Defendant Proposed Release Conditions (N.D. Cal., J. Breyer):** Defendant "has a Chinese passport (currently in the possession of her counsel)," and has "demonstrated good faith in cooperating with the government regarding travel over the last 18 months, including voluntary surrender of her passport in February 2023." ECF No. 87-1 at 1–2.

## II.   Defendant's Representations Were False Because She Obtained a Second Passport

On September 17, 2024, the Court entered an Order setting conditions for Defendant's release. *See* ECF No. 103. Among other conditions, the Order required that Defendant "surrender any passports or other travel documents to Pretrial Services by [September 17, 2024]" and "not apply for other passports or travel documents." *See id.* Additionally, the Order provided that government agents would remove any devices and anything that might serve as a weapon from her residence. *See id.*; ECF No. 92 at 3. Government agents searched Defendant's residence on the night of September 19, 2024, when she was released from Santa Rita. During the search, within a bag, agents found a "Chinese Travel Document" issued to Defendant on June 21, 2023 via the Consulate General of China in San Francisco.

The search team provided the log of items found in the house to the government on September 20, 2024. Since that date, the government has consulted with multiple government agencies to confirm the validity of this Travel Document and how it may be used. Specifically, the government consulted with a Customs and Border Patrol ("CBP") agent, a Homeland Security Investigations ("HSI") agent who formerly worked at the Department of State, an HSI intelligence analyst, an HSI agent who was

formerly a CBP officer and an Enforcement Removal Operations ("ERO") officer. Based on the information provided by these agents and officers, as well as public domain research, the government understands that a Chinese Travel Document is a type of travel document issued by Chinese embassies and consulates to Chinese citizens for their international travel to China. It may be issued, for example, where a Chinese citizen has a lost or stolen passport and needs to travel in an emergency.

A Chinese citizen may readily obtain this document and use it to freely travel from the United States to China as often as desired over a period of two years from the date of issue. The Chinese Travel Document may be obtained by submitting an application to the Chinese consulate or embassy, paying a small fee, verifying one's identity, and appearing at the consulate or embassy. The agents and officers with whom the government consulted believe the Chinese Travel Document to be a legitimate, valid document based on its appearance. The government also confirmed with Pretrial the numbers for the travel documents that Defendant previously provided to Pretrial—a U.S.A. travel document, a U.S.A permanent resident card, an expired Chinese passport, and the Chinese passport Defendant surrendered in February 2023 (active at least as of that date). The number of the Chinese Travel Document does not match the passport numbers in either of the Chinese passports held by Pretrial. Pictures of the Chinese Travel Document follow:






### III.     **Legal Standard**

Under 18 U.S.C. § 3148(a), a person released under 18 U.S.C. § 3142 "who has violated a condition of [her] release, is subject to a revocation of release, an order of detention, and a prosecution

for contempt of court." A court must consider, under § 3148(b)(1), whether there exists "clear and convincing evidence that the person has violated any other condition of release," § 3148(b)(1)(B). If the condition is satisfied, the court must determine, under § 3148(b)(2), whether "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," § 3148(b)(2)(A), or whether "the person is unlikely to abide by any condition or combination of conditions of release," § 3148(b)(2)(B).

**IV.    Defendant Has Violated, and Will Not Abide by, Conditions of Release**

The Chinese Travel Document recovered from Defendant's residence is clear and convincing proof that she did not "surrender any passports or other travel documents to Pretrial Services." Revocation of release, an order of detention, and contempt are the appropriate remedies.

Defendant's concealment of this document for over a year reinforces that no combination of conditions can mitigate her risk of flight and obstruction. While Defendant has repeatedly asked this Court to find that her surrender of a passport in February 2023 was an act of "good faith," that is evidently untrue. Mere months later, she obtained a travel document that would have allowed her to flee. Undeterred, she continued to conceal that travel document for another full year, even when its existence was repeatedly put at issue by the parties and judges over the course of the past three months. This is clear and convincing evidence that Defendant should not be in a non-custodial setting, even with two guards, as the risks of flight, obstruction, and continued criminality are simply too great. Leonard Glenn Francis (aka Fat Leonard) was able to flee while guarded by private security and wearing a GPS monitor because such security is inherently not as effective as a custodial environment.

Moreover, it is now obvious that Defendant "is unlikely to abide by any condition or combination of conditions of release." She has unmistakably violated the Court's Order. She cannot pretend that her violation was inadvertent, either. Her possession of an additional passport was a subject of discussion at no less than six hearings before judicial officers considering whether she would abide by any conditions of release. At these hearings, counsel repeatedly brought up her surrender of her passport to argue that she could not flee the country, that the government's concerns that she might have additional passports were overblown, and that she was acting in good faith all along. Defendant never took the opportunity to correct these misguided arguments, or to ensure that counsel was not

misrepresenting facts to the Court. Defendant does not respect the judicial process, and she remains unlikely to abide by any conditions of release. Having obtained at least two Chinese travel documents, it is well within Defendant's capacity to obtain another. Moreover, her violation of one condition of release shows that she is likely to violate others, and pose an unacceptable risk of danger to the community in the form of obstruction and continued distribution of unlawful controlled substances through her control of Done. Done continues to operate and distribute controlled substances. The government continues not to receive critical evidence from Done – responsive to a subpoena served in June – that is material to its ongoing investigation. Revocation of her bail is both appropriate and necessary.

## V.  Conclusion

Defendant has already violated the Court's conditions of release, and her repeated misrepresentations to counsel and the Court make clear that she will not abide by future conditions of release. Because no combination of conditions can adequately mitigate her demonstrated risks of flight and obstruction, the Court should revoke her bond and order her detained pending trial.

DATED: October 1, 2024

Respectfully submitted,

RAVI T. NARAYAN
Attorney for the United States

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

_____/s/_____
JACOB FOSTER
Principal Assistant Chief
RAYMOND E. BECKERING III
Trial Attorney

_____/s/_____
KRISTINA GREEN
KATHERINE M. LLOYD-LOVETT
Assistant United States Attorneys