WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
  kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice Pending*)
  mschachter@willkie.com
  sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

HUESTON HENNIGAN LLP
Vicki Chou (SBN 248598)
  vchou@hueston.com
523 W 6th St
Suite 400
Los Angeles, CA 90014
T: 213-788-4340
F: 888-775-0898

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-cr-00329-CRB |
| Plaintiff, | **DEFENDANT RUTHIA HE'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND EXHIBIT LISTS** |
| v. | |
| RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY, | DATE:  January 8, 2025 |
| Defendants. | TIME:  1:30 PM |
| | Date Filed:  Courtroom 6—17th Floor |
| | Trial Date:  Hon. Charles R. Breyer |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 8, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Ruthia He will and hereby does move for an order compelling (1) discovery pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1982), and their progeny, (2) tentative witness and exhibit lists, as contemplated by the Court at the November 6 status conference. This motion is based upon the following Memorandum of Points and Authorities, oral argument, and the pleadings on file with the Court.

1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .......................................................................................................1

LEGAL STANDARD..................................................................................................................3

ARGUMENT ..............................................................................................................................4

I.   The Government Should Identify Known *Brady* Material by Bates Number. ...................4

II.  The Government Must Disclose All Records Containing, Summarizing, or Describing Statements (Including Any Communications) Made by Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent. ..............6

III. The Government Must Produce Records of Any Plea Agreement, Draft or Modified Plea Agreement, or Other Benefit Requested, Offered, or Agreed to Between the Government and Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent....................................................................................................9

IV.  The Government Must Produce All Records Summarizing or Describing the Substance of Any Meeting Between the Government and Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent—Including any Presentations and Records Shown or Provided by Either Party During the Meeting........10

CONCLUSION.........................................................................................................................12

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bailey v. Rae*,
5
    339 F.3d 1107 (9th Cir. 2003) ................................................................3

6

*Brady v. Maryland*,
    373 U.S. 83 (1963)....................................................... *passim*
7

*Carey v. Duckworth*,
8
    738 F.2d 875 (7th Cir. 1984) ................................................................4

9

*Giglio v. United States*,
10
    405 U.S. 150 (1972). (*See* Ex. A.) ................................................. *passim*

11

*Kyles v. Whitley*,
    514 U.S. 419 (1995).................................................................4
12

*Majors v. Warden, San Quentin State Prison*,
13
    No. 2:99–cv–00493, 2016 WL 8731120 (E.D. Cal. May 27, 2016)........................8

14

*Morris v. Ylst*,
15
    447 F.3d 735 (9th Cir. 2006) ..............................................................7, 8

16

*United States v. Ahuja*,
    1:18-cr-00328-KPF (S.D.N.Y. Dec. 20, 2021), ECF No. 457............................9, 10
17

*United States v. Alahmedalabdaloklah*,
18
    94 F.4th 782 (9th Cir. 2024) ................................................................4

19

*United States v. Blankenship*,
20
    No. 5:14–cr–00244, 2015 WL 3687864 (S.D. W. Va. June 12, 2015)................5, 7

21

*United States v. Brody*,
    3:24-cr-00329-CRB (N.D. Cal. July 10, 2024), ECF No. 22 ............................4
22

*United States v. Cutting*,
23
    No. 14-cr-00139-SI-1, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) ......................5

24

*United States v. Hsia*,
    24 F. Supp. 2d 14 (D.D.C. 1998) ..........................................................6
25

*United States v. Kohring*,
26
    637 F.3d 895 (9th Cir. 2011) ................................................................8

27

ii

28

*United States v. Nicholas*,
   No. SACR 08-00139-CJC, 2009 WL 10710392 (C.D. Cal. Aug. 3, 2009)...........................11

*United States v. Omidi*,
   No. CR 17-661(A)-DMG, 2021 WL 7629896 (C.D. Cal. Sept. 1, 2021).................................5

*United States v. Perez*,
   No. 11CR3044 WQH, 2011 WL 1259823 (S.D. Cal. Mar. 29, 2011).....................................6

*United States v. Saffarinia*,
   424 F. Supp. 3d 46 (D.D.C. 2020) ..............................................................................................5

*United States v. Salyer*,
   No. CR. S-10-0061, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010)...........................................6

*United States v. Sudikoff*,
   36 F. Supp. 2d 1196 (C.D. Cal. 1999) ..................................................................................7, 9

*United States v. Triumph Cap. Grp., Inc.*,
   544 F.3d 149 (2d Cir. 2008)........................................................................................................7

**Other Authorities**

Dep't of Justice, Justice Manual, § 9-5.001(B)(1)........................................................................3, 4

Fed. R. Crim. P. 5(f) .........................................................................................................................4

Fed. R. Crim. P. 16 ................................................................................................................1, 10, 12

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

1

## **PRELIMINARY STATEMENT**

At the November 6 status conference, the Court was clear that the Government was expected to not only identify the parameters of its case, as discussed in the concurrently-filed Motion for Bill of Particulars, but provide prompt discovery to facilitate the exercise of Ms. He's speedy trial rights.  (Tr. of Status Conf. at 9: 9-12).  On November 11, together with her letter requesting Indictment particulars, Ms. He sent a letter to the Government requesting certain supplemental discovery pursuant to Fed. R. Crim. P. 16, as well as information that the Government is required to produce under the Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).  (*See* Ex. A.)  Among other things, Ms. He requested that the Government:

1.  Identify all known *Brady* and *Giglio* material by Bates number;

2.  Produce all records containing, summarizing, or describing statements (including any communications) made by any defendant, cooperator, conspirator, witness, or potential witness—*including their counsel or agent*—in connection with the Indictment, any related charges, the Done or any related investigation, or any actual or implied threats of investigation or prosecution;

3.  Produce all records related to any plea agreement, draft or modified plea agreement, or other benefit (including any promises of immunity, leniency, preferential treatment, or other inducement) requested, offered, or agreed to between the Government and any defendant, cooperator, conspirator, witness, or potential witness—*including their counsel or agent*—in connection with the Indictment, any related charges, the Done or any related investigation, or any actual or implied threats of investigation or prosecution; and

4.  Produce all records summarizing or describing the substance of any meeting between the Government and any defendant, cooperator, conspirator, witness, or potential witness—*including their counsel or agent*—including any presentations made and any records shown or provided by either party during the meeting, in connection with the Indictment, any related charges, the Done or any related investigation, or any actual or implied threats of investigation or prosecution.

(*See id.* Ex. A at 3, 5-6).

1

Ms. He also requested, "[p]ursuant to the colloquy with the Court at the November 6 status conference, the Government's 'tentative exhibit list' and 'tentative witness list,'" as separately discussed in the concurrently-filed Motion for Bill of Particulars. (*See id.* at 6 (citing Tr. of Status Conference at 7:19–7:24.))   The letter closed by requesting:  "If you do not have additional documents or evidence to produce in response to a particular below request, please advise us—by November 18—if the Government is representing that it has produced all responsive documents (or will do so by a date certain), no such documents or evidence exist, or if, rather, the Government is choosing not to produce the documents and evidence, such that we can meet and confer, and bring any disputed matters to the Court's attention in advance of the December 4 status conference." (*Id.* at 1-2.)

Almost two weeks later, on November 22, the Government rejected Ms. He's above-mentioned requests, among others.  (*See* Ex. B.)  It took the position that it need not specifically identify exculpatory material that may be located somewhere in the over 11 million pages (exclusive of its most recent productions, which have not yet been loaded) and 6,005 gigabytes of discovery that it has produced to date.  (*Id.* at 3.)  And it took the broad view that prosecutor's notes and draft plea agreements are immune from *Brady* disclosure.  (*Id.* at 8, 10.)  Despite the interview memoranda produced to date indicating that the Government has been in contact with counsel for certain witnesses, the Government declined to produce any written communications or describe the substance of any communications with any witness's attorneys, including counsel for cooperating witnesses.  (*Id.* at 8-9.)  Finally, although the interview memoranda produced by the Government indicates that it prepared a PowerPoint presentation that it showed to a cooperating witness during a reverse proffer session, the Government has not produced the presentation and

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

has taken the position that it need not disclose the substance of reverse proffer sessions under *Brady*.  (*Id*. at 8.)

The Government's *Brady* disclosures are deficient.  Ms. He is entitled to prompt disclosure of all material exculpatory evidence in the Government's possession, and the Government cannot hide that material in a haystack of voluminous discovery.  Therefore, for the reasons stated below, Ms. He requests that the Court order that the Government produce records relating to Items 1 through 4 above, as well as the tentative witness and exhibits lists referenced by the Court at the November 6 hearing—which, as discussed in the concurrently-filed Motion for Bill of Particulars, the Government has likewise failed to provide.

## LEGAL STANDARD

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a defendant's due process rights are violated when the Government fails to disclose prior to trial "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution."  *See also Giglio,* 405 U.S. at 153-54 (holding that nondisclosure of evidence affecting credibility of witness falls within *Brady*'s ambit).  "The prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused, and even an inadvertent failure to disclose may constitute a violation."  *Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003).  "Recognizing that it is sometimes difficult to assess the materiality of evidence before trial," Department of Justice policy mandates that "prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."  Dep't of Justice, Justice Manual, § 9-5.001(B)(1).

The Government's *Brady* obligation extends to members of the prosecution team, which here the Government has represented (Ex. B at 2 n.1) to include:  the Drug Enforcement Agency,

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

the Department of Health and Human Services, Homeland Security Investigations, and IRS-Criminal Investigations, in addition to the USAO.  *See id.* § 9-5.001(B)(2) (prosecutors have the obligation "to seek all exculpatory and impeachment information from all members of the prosecution team … includ[ing] federal, state, and local law enforcement officers").  This means that prosecutors have a duty "to learn of any favorable evidence known to the others acting on the government's behalf in the case."  *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also United States v. Alahmedalabdaloklah*, 94 F.4th 782, 944 (9th Cir. 2024) ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.") (citation omitted); *see also Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) ("a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case").

Pursuant to Federal Rule of Criminal Procedure 5(f), and this Court's order, failure to produce *Brady* material "in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances."  *United States v. Brody*, 3:24-cr-00329-CRB, (N.D. Cal. July 10, 2024), ECF No. 22.

## ARGUMENT

### I.    The Government Should Identify Known *Brady* Material by Bates Number.

Given the volume of discovery in this case, which exceeds 11 million pages even excluding the Governments most recent productions, plus 6,005 gigabytes of additional discovery, Ms. He requests that the Court order the Government specifically to identify by Bates number all documents and statements that constitute *Brady* material, regardless of whether such material has

4

1  already been produced to Ms. He in discovery.  To date, despite interviewing over 130 witnesses

2  and producing this massive volume of discovery, the Government has not identified anything that

3  it considers to be *Brady* material.  Nor, in its response to Ms. He's letter requesting discovery, did

4  it state that it has *not* identified any *Brady* material.  Instead, the Government stated in conclusory

5  fashion that it "has complied, and will continue to comply, with its obligations under *Brady* and

6  *Giglio*," and that it was "not aware of an obligation under *Brady* and/or *Giglio* to identify particular

7  pieces of evidence to the defense."  (Ex. B, at 3.)

8  

9          Notwithstanding the Government's assertions to the contrary, in complex cases such as this

10  one, where the Government produces voluminous discovery, courts have routinely required the

11  Government "to specifically identify *Brady* material known to it, in order to ensure that such

12  material is not missed by the defendant."  *United States v. Omidi*, No. CR 17-661(A)-DMG, 2021

13  WL 7629896, at *2 (C.D. Cal. Sept. 1, 2021) (holding that, given "the sheer volume of discovery,"

14  it was "reasonable to order the Government, to the extent that it has become aware of *Brady*

15  material during its review of the produced discovery, to specifically identify that material" to the

16  

17  defendant).[1]  Therefore, Ms. He asks the Court to order, contrary to the Government's apparent

18  

19  _____

20  [1] *See also United States v. Saffarinia*, 424 F. Supp. 3d 46, 82–91 (D.D.C. 2020) (ordering
Government to specifically identify *Brady* material in discovery consisting of more than one
21  million records and 3.5 million pages of documents, notwithstanding that it had provided the
defendant with "production logs, Bates-stamping, and metadata in an electronic and searchable
22  format that is accessible through 'Relativity,' an electronic database"); *United States v. Cutting,*
No. 14-cr-00139-SI-1, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017) ("order[ing] the
23  government to identify by Bates number the *Brady*/*Giglio* material in the discovery that has been
produced" where electronic discovery was voluminous); *United States v. Blankenship*, No. 5:14–
24  cr–00244, 2015 WL 3687864, at *4–6 (S.D. W. Va. June 12, 2015) (ordering Government to
"specifically designate any known *Brady* material as such and disclose the same to defense
25  counsel," and holding that the Government "does not comply with the requirement of *Brady* by
merely including all known *Brady* material within the four million plus pages of discovery,"
26  notwithstanding the Government's argument that "its discovery production [was] not akin to a
document dump because it ha[d] provided a database capable of electronic search and is 'rich with
27  

5
28  MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

position in its response to Ms. He's discovery letter, that the Government specifically identify by Bates number any document or statement it knows constitutes *Brady* material.

## II. The Government Must Disclose All Records Containing, Summarizing, or Describing Statements (Including Any Communications) Made by Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent.

To date, the Government has not disclosed any of its communications with counsel for any defendant, potential witness, cooperator, or alleged co-conspirator despite the fact that some of the interview memoranda it has produced make reference to counsel for certain witnesses, and some alleged co-conspirators have pled guilty and are cooperating with the Government. Communications between the Government and a potential witness's lawyer are exculpatory, for example, to the extent that counsel for a potential witness or cooperator who is also the target of the investigation presented evidence to the Government of their client's or Ms. He's innocence, or made a representation that is inconsistent with a later proffer statement, or negotiated with the Government to arrive at a plea deal. *See, e.g., United States v. Perez,* No. 11CR3044 WQH, 2011 WL 1259823, at *3 (S.D. Cal. Mar. 29, 2011) ("The Government has recognized that an attorney proffer can create an inconsistency with a later proffer statement that would require disclosure.");

---

metadata and indexed by a variety of different characteristics that allow Defendant to search, sort, and categorize them however he pleases"); *United States v. Salyer*, No. CR. S-10-0061, 2010 WL 3036444, at *5 (E.D. Cal. Aug. 2, 2010) (affirming discovery order tasking government with identifying *Brady/Giglio* information in its millions of pages of discovery and noting, among other things, that the government's argument "on the burden of requiring *Brady/Giglio* identification in the voluminous documents case actually is the argument which conclusively proves [defendant's] point in this case"); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) (ordering that "[t]o the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to [the defendant]" and explaining that "[t]he government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack.").

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

*Blankenship*, 2015 WL 3687864, at *7 (holding that Government must produce the substance of attorney proffers made to the Government that fall under *Brady*); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1206 (C.D. Cal. 1999) (ordering Government to disclose "all proffers by any witnesses receiving any benefit, whether immunity or leniency, in return for testimony," including "any proffers made by lawyers for such witnesses," "any notes or documents created by the government that reflect this information," and "any material that indicates any variations in the witness's proffered testimony," as well as "any information in [the Government's] possession that reveals the negotiation process by which the immunity agreement was reached, including materials authored by a witness, a witness's lawyer, or the government").

To the extent that the substance of an attorney proffer is memorialized in the notes of a member of the prosecution team, the Government must turn over those notes. *See id.* at 1206; *see also United States v. Triumph Cap. Grp., Inc.,* 544 F.3d 149, 161–163  (2d Cir. 2008) (holding that Government was required to disclose exculpatory notes from proffer session with cooperator's attorney under *Brady* and noting that, if such notes were disclosed to defendant, he could have argued that the cooperator "initially authorized his attorney to tell the truth, which inculpated others and exculpated [the defendant], but that once [the witness] began to cooperate with the government he fabricated a new, inculpatory version of his dealings with [the defendant] to enhance the value of his cooperation and his expected reward").

To the extent that the Government argues that a prosecutor's notes of communications with a witness's counsel are covered by the work product protection, that doctrine does not trump Ms. He's constitutional right to *Brady* disclosure.  The Government cites to *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006), to support its argument that "records from counsel" are immune from disclosure under *Brady*.  (Bell Decl. Ex. B, at 8.)  *Morris*, however, involved *"opinion work*

7

*product*," which revealed the prosecutor's "strategies, legal theories, or impressions of the evidence." 447 F.3d at 742 (emphasis added). *Morris* specifically held that "a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady unless they contain exculpatory facts*." *Id.* (emphasis added). Notes memorializing the substance of a proffer made by a potential witness or the witness's attorney do not fall within *Morris*'s exception. *See, e.g.*, *United States v. Kohring*, 637 F.3d 895, 906 (9th Cir. 2011) (holding that government attorney's handwritten notes stating that an important prosecution witness had "bad recall," "vague memory," and was taking "meds affecting cognitive memory" did not fall under work product exception and were exculpatory under *Brady*); *Majors v. Warden, San Quentin State Prison*, No. 2:99–cv–00493, 2016 WL 8731120, at *26 (E.D. Cal. May 27, 2016) (distinguishing *Morris* from *Kohring*, and holding that while prosecutor was not required under *Brady* to turn over opinion that witness had bad memory, "he was required to turn over any 'underlying exculpatory facts' such as her statements that she was unable to recall details or her statements that otherwise contradicted her testimony") Thus, to the extent that the Government has taken the position, that "records from counsel," are categorically immune from *Brady* disclosure, it is clearly mistaken.

In a case like this, where four alleged co-conspirators have pled guilty, it is extremely likely that, in advance of their pleas, their attorneys told the Government not only what part of the charged conduct their clients would admit, but also what portions of the charged conspiracies their clients would deny. Ms. He therefore asks that the Court require the Government to produce any exculpatory records containing, summarizing, or describing statements (including any communications) made by any defendant, cooperator, conspirator, witness, or potential witness— *including their counsel or agent*—in connection with the Indictment, any related charges, the Done or any related investigation, or any actual or implied threats of investigation or prosecution, or

8

confirm that no such exculpatory communications exist. In connection with this Order, the Government's attorneys should be required to review their own records and rough notes for the existence of such exculpatory material.

### III. The Government Must Produce Records of Any Plea Agreement, Draft or Modified Plea Agreement, or Other Benefit Requested, Offered, or Agreed to Between the Government and Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent.

As part of her request for *Brady* material in this category, Ms. He asked that the Government produce draft or modified plea agreements with the cooperators who have pled guilty in this case. (Bell Decl. Ex. A, at 6.) The Government responded that, "[a]s a general matter," it "does not produce draft plea agreements," and "is not aware of any authority in the Ninth Circuit mandating disclosure of draft plea agreements." (Bell Decl. Ex. B, at 10.)

Similar to the attorney proffers discussed above, draft plea agreements are discoverable under *Brady*/*Giglio* to the extent they "reveal[] the negotiation process by which the [plea agreement] was reached." *Sudikoff*, 36 F. Supp. 2d at 1206. Additionally, the plea agreements that have been produced for each cooperator contain detailed descriptions of the allegedly criminal conduct to which the cooperator admitted guilt. To the extent that the description of the criminal conduct was amended as a result of a back-and-forth between the cooperator's counsel and the Government, the failure to disclose how the plea agreement changed would violate *Brady*. Indeed, one court recently granted a new trial as a result of the Government's failure to disclose its involvement in editing the plea allocution of a cooperating witness. Decision, *United States v. Ahuja*, 1:18-cr-00328-KPF (S.D.N.Y. Dec. 20, 2021), ECF No. 457. As the *Ahuja* court noted, plea allocutions (and similarly the exchange of draft plea agreements), are analogous to proffer sessions with the Government. *Id.* at 29. "It is sometimes the case that a proffering witness's recollection evolves, as when a putative co-conspirator's name is not mentioned in the first proffer,

9

but is mentioned later on. The omission may be attributable to imprecise questioning by the Government, or to fear, or to a genuine failure to recollect. Or, of greater concern, it could reflect the witness's desire to please the prosecutors by saying what the witness believes they want to hear." *Id.* at 29. The latter reason for a witness changing his story is powerful impeachment evidence. For that reason, "where the Government is involved in the allocution [or changing the factual allegations in a plea agreement], and the changes that result are sufficiently substantive, the defense should be permitted to probe the fact and substance of those changes." *Id.*

For these reasons, the Court should order the Government to produce drafts of the plea agreements with the cooperators in this case—as well as exculpatory records related to any other plea agreement, draft or modified plea agreement, or other benefit (including any promises of immunity, leniency, preferential treatment, or other inducement) requested, offered, or agreed to between the Government and any defendant, cooperator, conspirator, witness, or potential witness—including their counsel or agent—in connection with the Indictment, any related charges, the Done or any related investigation, or any actual or implied threats of investigation or prosecution.

**IV. The Government Must Produce All Records Summarizing or Describing the Substance of Any Meeting Between the Government and Any Defendant, Cooperator, Conspirator, Witness, or Potential Witness—Including Their Counsel or Agent—Including any Presentations and Records Shown or Provided by Either Party During the Meeting.**

In the interview memoranda that it has produced to Ms. He, the Government makes reference to at least one PowerPoint presentation it showed to a cooperating witness. Although the interview memoranda references the PowerPoint presentation, the Government has not produced it to Ms. He. In response to Ms. He's discovery letter, the Government has taken the position that the "Defense is not entitled under Rule 16 or *Brady* to any oral or written

10

communications reflecting the substance of reverse proffers sessions between the United States and any witness or potential witness." (Bell Decl. Ex. B, at 8.)

Yet records from reverse proffer sessions may fall within *Brady*'s ambit. For instance, understanding how the Government pressured a cooperating witness during a reverse proffer session, or examining that witness if the Government misled or omitted facts to paint a misleading case against them, may contain or lead to exculpatory information. *See Brady*, 373 U.S. at 87. Additionally, examining a cooperating witness about the pressure tactics of a reverse proffer session may bear on their credibility as a testifying witness. *See Giglio*, 405 U.S. at 153–54.

To support its position, the Government cites *United States v. Nicholas*, No. SACR 08-00139-CJC, 2009 WL 10710392, at *2 (C.D. Cal. Aug. 3, 2009). There, however, the Court denied defendant's motion to compel the substance of reverse proffer sessions because "the Government has represented that it has disclosed all *Brady* material contained in its communications with witnesses, including agreements with Government witnesses, any consideration witnesses received from the Government, and 'any evidence that would have been the basis for a factual reverse proffer.'" *Id.* However, the Court also "agree[d] that evidence of reverse proffers with any testifying witness is *Brady* material," but simply denied the motion because the Government had represented that all *Brady* material related to the reverse proffer had already been disclosed. *Id.*

The Government has made no such representation to Ms. He here. Indeed, it refuses to disclose the reverse proffer PowerPoint presentation that it made to cooperating witnesses. Ms. He thus requests that the Court order that the Government produce the substance of any meeting with any defendant, cooperator, conspirator, witness, or potential witness—including their counsel or agent—including any presentations made, and any records shown or provided, by either party

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

during the meeting (including PowerPoint presentations shown during such sessions).  At the least, Ms. He requests that the Court review the known PowerPoint presentation (and other presentations) *in camera* to ensure that the Government has not withheld *Brady/Giglio* material.

## **CONCLUSION**

For the reasons stated herein, Ms. He respectfully requests that the Court order that the Government order compelling (1) the discovery requested herein pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1982), and their progeny, (2) tentative witness and exhibit lists, as contemplated by the Court at the November 6 status conference.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB

Dated:  December 2, 2024              WILLKIE FARR & GALLAGHER LLP


                                      By:    */s/ Koren Bell*_____
                                             Koren Bell
                                             Michael S. Schachter
                                             Steven J. Ballew

                                      HUESTON HENNIGAN LLP

                                             Vicki Chou


                                      Attorneys for Defendant
                                      RUTHIA HE

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUTHIA HE'S MOTION TO
COMPEL DISCLOSURE OF *BRADY* MATERIAL AND TENTATIVE WITNESS AND
EXHIBIT LISTS
Case No. 3:24-cr-00329-CRB