RAVI T. NARAYAN (CABN 331858)
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

RAVI T. NARAYAN (CABN 331858)
Acting Chief, Criminal Division

GLENN S. LEON (NYBN 250785) Chief, Fraud Section

JACOB FOSTER (CABN 250785)
EMILY GURSKIS (VABN 85973)
Principal Assistant Chief
Fraud Section, Criminal Division

    1400 New York Ave NW
    Washington, D.C. 20005
    Telephone: (202) 514-2000
    FAX: (202) 514-3708
    Jacob.Foster@usdoj.gov
    Emily.Gurskis@usdoj.gov

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7234
    Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 24-329 CRB |
| Plaintiff, | |
| v. | UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE |
| RUTHIA HE, A/K/A/ RUJIA HE, and DAVID BRODY, | |
| Defendants. | |

# **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARD ..........................................................................................2

III.    ARGUMENT.......................................................................................................3

        A.     Defendants' Preference for Different Trial Dates Does Not Warrant Severance...............3

        B.     Defendants Have Failed to Demonstrate Irreconcilably Antagonistic Defenses..............10

IV.     CONCLUSION...................................................................................................15

1

**TABLE OF AUTHORITIES**

2

3

**Federal Cases**

4  *Bruton v. United States*, 391 U.S. 123 (1968) ............................................................. 2

5  *Barker v. Wingo*, 407 U.S. 514 (1972)......................................................................... 4-6

6  *Doggett v. United States*, 5050 U.S. 647 (1992) ......................................................... 4

   *Page v. Lockyer*, 200 Fed. Appx. 727 (9th Cir. 2006) ................................................ 6

7  *United States v. Anderson*, 36 Fed. App'x 325 (9th Cir. 2002) ................................ 12

8  *United States v. Angwin*, 271 F.3d 786 (9th Cir. 2001) ............................................. 11

9  *United States v. Annerino*, 495 F.2d 1159 (7th Cir. 1974) ........................................ 5

10 *United States v. Balwani*, 18-CR-258 EJD, ECF No. 967 (N.D. Cal. Dec. 12, 2019) ..... 13

   *United States v. Beamon*, 992 F.2d 1009 (9th Cir. 1993) .......................................... 6

11 *United States v. Beal*, 536 F. Supp. 3d 743 (D. Haw. 2021) .................................. 9, 10

12 *United States v. Brashier*, 548 F.2d 1315 (9th Cir. 1976) ........................................ 2

13 *United States v. Butz*, 982 F.2d 1378 (9th Cir. 1993) ............................................... 8

   *United States v. Calderon*, 220 Fed. App'x 751 (9th Cir. 2007) ............................. 11

14 *United States v. Cheeves*, No. CR. 09-1030 CRB, 2010 WL 1260808 (N.D. Cal. Mar. 29, 2010) . *passim*

15 *United States v. Diaz*, No. Cr. 2:07-0248 WBS, 2009 WL 3233700 (E.D. Cal. Oct. 1, 2009) ............. 10

16 *United States v. Doe*, 655 F.2d 920 (9th Cir. 1980) .................................................. 1

17 *United States v. Dota*, 33 F.3d 1179 (9th Cir. 1994) ................................................. 7

   *United States v. Escalante*, 637 F.2d 1197 (9th Cir. 1980) ...................................... 2

18 *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ..................................... 2

19 *United States v. Hanley*, 190 F.3d 1017 (9th Cir. 1999) ........................................... 3

20 *United States v. Henry*, 984 F.3d 1343 (9th Cir. 2021) ......................................... 9, 10

21 *United States v. Holmes,* 18-CR-258 EJD, ECF No. 362 (N.D. Cal. Mar. 20, 2020) ........................ 13

   *United States v. Jenkins*, 633 F.3d 788 (9th Cir. 2011) ........................................... 2

22 *United States v. Johnson*, 297 F.3d 845 (9th Cir. 2002) ........................................... 3

23 *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981) ............................................. 3

24 *United States v. King*, 483 F.3d 969 (9th Cir. 2007) ............................................... 4, 5

   *United States v. Kinnard*, 820 Fed. App'x 525 (9th Cir. 2020) ............................. 7, 9

25 *United States v. Lane*, 474 U.S. 438 (1986) ............................................................. 2

26 *United States v. Lewis*, 611 F.3d 1172 (9th Cir. 2010) ....................................... 2, 7-9

27 *United States v. Lloyd*, 125 F.3d 1263 (9th Cir. 1997) ............................................. 7

   *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) ............................... 6

28 *United States v. Mariscal*, 939 F.2d 884 (9th Cir. 1991) ......................................... 2

*United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999) ................................................... 14

*United States v. Messer*, 197 F.3d 330 (9th Cir. 1999) .................................................. 8, 9

*United States v. Moheb*, No. 22-CR-00132 (JSW), 2022 WL 3215003, at *3 (N.D. Cal. Aug. 9, 2022) ...
.................................................................................................................................. 5-7, 9

*United States v. Nance*, 666 F.2d 353 (9th Cir. 1982) ........................................................ 4

*United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970) ....................................................... 2

*United States v. Shell*, 974 F.2d 1035 (9th Cir. 1992) ........................................................ 6

*United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989) ................................................. 12

*United States v. Shields*, 673 F. App'x 625 (9th Cir. 2016) ............................................... 12

*United States v. Shkreli*, 260 F. Supp. 3d 247 (E.D. N.Y. April 19, 2017) .................................. 14, 15

*United States v. Simmons*, 536 F.2d 827 (9th Cir. 1976) .................................................... 7

*United States v. Smith*, 494 F. Supp. 3d 772 (E.D. Cal. Oct. 14, 2020) ................................... 6

*United States v. Tanh Huu Lam*, 251 F.3d 852 (9th Cir. 2001) ...................................... 4-6, 9

*United States v. Throckmorton*, 87 F.3d 1069 (9th Cir. 1996) ........................................... 11

*United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991) .............................................. 11, 14

*United States v. Troiano*, 426 F. Supp. 2d 1129 (D. Haw. 2006) .................................... 14, 15

*United States v. Vasquez-Velasco*, 15 F.3d 833 (9th Cir. 1994) ........................................... 3

*United States v. Verdera*, No.08-000018, 2008 WL 11350110 (D. Guam July 2, 2008) ............... 14, 15

*United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977) ......................................................... 3

*United States v. Williams¸* No. 3:13-CR-00764 -WHO, 2017 WL 4877131 (N.D. Cal. Oct. 30, 2017).7, 9

*Zafiro v. United States*, 506 U.S. 534 (1993) ..................................................... *passim*

**Federal Statutes**

18 U.S.C. § 3161 ............................................................................................. 7-9

21 U.S.C. § 841 ................................................................................................ 8

21 U.S.C. § 846 ................................................................................................ 8

**Federal Rules**

Federal Rule of Criminal Procedure 8 ............................................................... 2

Federal Rule of Criminal Procedure 14 ....................................................... 1, 3, 11

## I.    INTRODUCTION

The Court should deny Defendants Ruthia He and David Brody's motion for severance of their joint trial pursuant to Federal Rule of Criminal Procedure 14(a).  ECF No. 160 ("Def. Mot.").  "Co-defendants jointly charged are, *prima facie*, to be jointly tried."  *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980).  This is particularly true in conspiracy cases.  A defendant seeking severance "must demonstrate that a joint trial is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever."  *Id.* at 926.  Defendants are jointly charged in three conspiracies.  Granting severance would result in two trials that would involve substantially overlapping, if not duplicative, witnesses and documentary evidence.  Defendants fail to meet the high standard necessary to justify the needless expenditure of judicial and public resources, and infringement upon witnesses' time, that would result from two trials.

Severance is not necessary to remedy the purported conflict between Defendant He's and Defendant Brody's preferred trial dates.  Although Defendants present this as a conflict between Defendant He's constitutional right to a speedy trial and Defendant Brody's need for effective preparation, it bears mention that Defendant He has already agreed that time should be excluded under the Speedy Trial Act ("STA") and has not demanded that trial proceed under the 70-day clock without further exclusions.  She has merely stated a preference to proceed to trial in the Spring.  The Court may select a trial date between Defendant He's requested date in May and Defendant Brody's requested date in December 2025 that appropriately balances a desire to avoid undue prolonged pretrial detention for Defendant He, the actual conflict caused by Defendant Brody's counsel's March 2025 trial, and the time the Court deems necessary for effective preparation.  A joint trial in this time frame would not violate Defendant He's constitutional right to a speedy trial.  Moreover, even if Defendant He objects to the further exclusion of time under the STA at some future point, the Court could, nevertheless, exclude time until its chosen trial date, concluding the additional delay reasonable to allow Defendant Brody's counsel time to effectively prepare, which is an appropriate "ends of justice" exclusion.  In addition, Defendants have not established their intended defenses are irreconcilable and mutually exclusive, or that the defense of one defendant would rely on arguing the other should be convicted.  Therefore, severance cannot be justified on those grounds.  A jury could accept that Defendant He lacked the

1  necessary *mens rea* to have committed the crimes *without necessarily convicting* Defendant Brody, and

2  vice versa.  Defendants have not satisfied their burden to demonstrate that severance is necessary.

3  **II.    LEGAL STANDARD**

4          Rule 8(b) permits the joinder of defendants where "they are alleged to have participated in the

5  same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

6  Fed. R. Crim. P. 8(b).  "[T]he predominant consideration is whether joinder would serve the goals of

7  trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given

8  transaction need only be proved once." *United States v. Roselli*, 432 F.2d 879, 901 (9th Cir. 1970).

9          "Generally speaking, defendants jointly charged are to be jointly tried." *United States v.*

10 *Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir.

11 1991) ("Co-defendants jointly charged are, prima facie, to be jointly tried."); *Zafiro v. United States*, 506

12 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trial of defendants who are

13 indicted together."); *United States v. Brashier*, 548 F.2d 1315, 1324 (9th Cir. 1976) ("Joint trials are the

14 rule rather than the exception.").  The reasons for this are manifold, including: "'[i]t would impair both

15 the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes .

16 . ., that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring

17 victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly

18 favoring the last-tried defendants who have the advantage of knowing the prosecution's case

19 beforehand.'" *United States v. Lewis*, 611 F.3d 1172, 1177 (9th Cir. 2010) (quoting *Richardson v.*

20 *Marsh*, 481 U.S. 200, 2010 (1987)).  Joint trials "'conserve state funds, diminish inconveniences to

21 witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *United*

22 *States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)).

23 "[A] joint trial is particularly appropriate where codefendants are charged with conspiracy, because the

24 concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants

25 when much of the same evidence would be admissible against each of them in separate trials." *United*

26 *States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004); *see also United States v. Jenkins*, 633 F.3d

27 788, 807 (9th Cir. 2011); *Escalante*, 637 F.2d at 1201.

28         Defendants do not contest that joinder is appropriate under Rule 8(b).  Rather they argue that

1   severance is warranted under Rule 14(a).  Rule 14(a) allows severance where joinder "appears to

2   prejudice a defendant or the government."  Fed. R. Crim. P. 14(a).  Rule 14 is narrowly construed.  A

3   court should grant severance "only if there is a serious risk that a joint trial would compromise a specific

4   trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or

5   innocence."  *Zafiro*, 506 U.S. at 539; *see also United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir.

6   1981) ("the test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern

7   with judicial economy and compels the exercise of the court's discretion to sever.").

8        The decision of whether to sever a trial is committed to the sound discretion of the district court.

9   *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977).  Because severance is generally disfavored,

10  "defendants bear a heavy burden when attempting to obtain reversal of a district court's denial of a

11  motion to sever."  *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2002).  Such decisions will be

12  reversed only when the joint trial was "so manifestly prejudicial" as to require the trial judge to exercise

13  his discretion in just one way, by ordering a separate trial.  *Id.* (quoting *United States v. Hanley*, 190

14  F.3d 1017, 1027 (9th Cir. 1999)); *see also United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir.

15  1994) (defendant must clear "high standard" by proving that "clear, manifest, or undue prejudice from

16  the joint trial . . . violate[d] one of his substantive rights" and denied him a fair trial).

17  **III.    ARGUMENT**

18       **A.    Defendants' Preference for Different Trial Dates Does Not Warrant Severance**

19       As a threshold matter, Defendant He has not expressly asserted her right to a speedy trial under

20  the STA, nor demanded that Court no longer exclude time under the STA time limits.  Her counsel has

21  merely claimed that, given her incarceration, Defendant He would "like to be in trial at the latest by

22  May."  *See* Decl. of Kristina Green in Support of U.S.' Opp. to Def. Mot. ("Green Decl."), Ex. A, 5:11.

23  But Defendant He's counsel indicated that they would not be prepared to proceed to trial in March 2025

24  ("March seems unrealistic") and require additional (but as yet unquantified) time to prepare.  *Id.* at 5:12-

25  6:20.  Defendant Brody's counsel, on the other hand, has requested a trial date in December 2025, *id.* at

26  21:21–22, citing this delay as necessary for effective preparation.[1]  The government understands that

27

28  _____
         [1] Defendant Brody submitted an *ex parte* filing in support of his motion.  The government has not been given access to that filing, so cannot address any specific issues raised in it.

1   one member of Defendant Brody's counsel's three-person team has an actual conflict with a Spring trial

2   date, namely a one-defendant trial set for March 2025 (and scheduled to end in April). Defendants

3   argue that severance is necessary to "avoid[] the conflict between Defendant He's constitutional right to

4   a speedy trial and Defendant Brody's constitutional right to prepare an adequate defense." Def. Mot. at

5   3. This vague assertion of a "conflict" does not justify the drastic remedy of severance. Rather, the

6   appropriate remedy is the selection of a trial date that balances Defendant He's desire for a trial in the

7   shorter term with Defendant Brody's need for effective preparation, as well as avoids the actual conflict

8   caused by counsel's March trial, such as a trial date in May, June, or July 2025 (or a later date in 2025 if

9   the Court deems that necessary based on sealed *ex parte* submissions by Defendant Brody's counsel).

10             **1.      A Joint Trial Would Not Violate Defendant He's Constitutional Rights**

11          Defendant He asserts severance is required to protect her constitutional right to a speedy trial

12   under the Sixth Amendment, despite the fact that she is currently litigating pre-trial motions, has not

13   expressly demanded a speedy trial under the STA 70-day time limit, no trial date is currently set, and she

14   has failed to establish how an as-yet unset trial date violates her constitutional right under the necessary

15   *Barker* analysis. Indeed, the Ninth Circuit has pointed out that it would be "an unusual case in which

16   the time limits of the [STA] have been met but the [S]ixth [A]mendment right to speedy trial has been

17   violated." *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). Notwithstanding Defendant He's

18   vague and unsubstantiated assertions to the contrary, a joint trial would not violate Defendant He's

19   constitutional right to a speedy trial.

20          The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the

21   right to a speedy . . . trial." To determine whether a delay to trial violates a defendant's Sixth

22   Amendment right to a speedy trial, the Court must consider: "(1) the length of the delay; (2) the reason

23   for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay."

24   *Untied States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 519

25   (1972)); *United States v. Tanh Huu Lam*, 251 F.3d 852, 855 (9th Cir. 2001) (court must determine

26   whether the delay before trial was uncommonly long, whether the government or the criminal defendant

27   is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial,

28   and whether he suffered prejudice as the delay's result) (citing *Doggett v. United States*, 5050 U.S. 647,

651 (1992)). None of these four factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; rather the court must "engage in a difficult and sensitive balancing test." *Lam*, 251 F.3d at 856 (internal quotation marks and citations omitted).

"The length of delay is a threshold factor." *United States v. Moheb*, No. 22-CR-00132 (JSW), 2022 WL 3215003, at *3 (N.D. Cal. Aug. 9, 2022) (citing *Barker*, 407 U.S. at 530). The Court must "consider whether the time from indictment to trial crossed the line dividing ordinary from presumptively prejudicial, which is normally considered to be approximately a year." *King*, 483 F.3d at 976. A delay that extends beyond a year may, nevertheless, be tolerated depending on the particular circumstances of the case, including its complexity. *See Barker*, 407 U.S. at 530–31; *King*, 483 F.3d at 976 (finding approximately two-year delay between indictment and trial "not excessive" and so length of delay did "not seriously weigh" in defendant's favor); *Lam*, 251 F.3d at 857 (finding delay of fifteen months did not greatly exceed threshold needed to trigger *Barker* inquiry). Here, a trial date would not at the very earliest even stray into the realm of presumptively prejudicial until mid-June 2025; and a reasonable delay even past that date would not weigh strongly in Defendant He's favor given the complexity of the case, the amount of discovery, and Defendant Brody's need to effectively prepare.

Though arguably unnecessary to engage in an analysis of the remaining *Barker* factors, given Defendant He's failure to meet the threshold factor of length of delay, the other factors, nevertheless, also fail to weigh in Defendant He's favor. Regarding the second factor, the reason for the delay, "different weights should be assigned to different reasons" for delay. *Barker*, 407 U.S. at 531. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government; whereas a more neutral reason should be weighted less heavily. *Id.* Here, the reason for the delay in trial past Defendant He's preferred date would be to allow for her co-defendant to effectively prepare for trial. This reason for delay is justified and is not the result of bad faith on the government's part. "A delay caused by the unavailability of counsel for a codefendant is at best neutral and does not weigh against the Government." *Moheb*, 2022 WL 3215003, at *4; *see also United States v. Annerino*, 495 F.2d 1159, 1163 (7th Cir. 1974) (delay in conspiracy case caused by unavailability of codefendants' counsel due to heart attack and another trial deserved some deference). The third *Barker* factor also does not counsel in favor of finding a Sixth Amendment violation. Defendant He, to date,

1    has not expressly asserted her speedy trial right, has not requested a particular trial date, has sought

2    continuances in setting a trial date, and has agreed to exclusions of time.

3        The fourth *Barker* factor, prejudice, is assessed in the light of the interests of defendants that the

4    speedy trial right was designed to protect, namely, "(i) to prevent oppressive pretrial incarceration; (ii) to

5    minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be

6    impaired." *Barker*, 407 U.S. at 532.[2] "Of these, the most serious is the last, because the inability of a

7    defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (noting the

8    prejudice that may result if witnesses die or disappear or if defense witnesses are unable to recall

9    accurately events). "In evaluating this factor, the Court must assess 'how much the defense was actually

10   impaired, recognizing that prejudice of this sort cannot be proved easily,' and 'then balance that

11   impairment with the degree of the government's dalliance.'" *Moheb*, 2022 WL 3215003, at *5 (quoting

12   *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993). The defendant's proof of prejudice must

13   be "definite and not speculative." *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995). Here,

14   Defendant He has not set forth any reasons why her defense will be impaired by a reasonable delay in

15   the trial to accommodate her codefendant's counsel's trial conflict and need for effective preparation.

16       Although Defendant He has been detained pending trial, the length of her detention is not close

17   to an unconstitutionally long period, and likely will not be, given the Court's assertion that the case

18   should proceed to trial in 2025. *See, e.g.*, *Page v. Lockyer*, 200 Fed. Appx. 727, 728 (9th Cir. 2006)

19   (affirming denial of habeas petition based on alleged violation of Sixth Amendment right to speedy trial

20   despite fact that defendant was detained for approximately six years prior to trial); *United States v.*

21   *Smith*, 494 F. Supp. 3d 772, 785 (E.D. Cal. Oct. 14, 2020) (denying defendant's motion to dismiss based

22   on alleged STA and Sixth Amendment violation where defendant had been detained pretrial for

23   approximately nine months, noting his detention "has not been excessively prolonged"); *Lam*, 251 F.3d

24   at 860 (holding defendant's constitutional right to speedy trial not violated where he was detained for

25   fourteen months because that factor did not outweigh the other *Barker* considerations). Finally, to

26

27   _____

28   [2] "[N]o showing of prejudice is required when the delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992). That is not the case here, where any reasonable delay would be attributed not to the government, but to consideration of co-defendant's counsel's trial schedule in order to allow for effective preparation.

1    "establish prejudice as a result of anxiety, a defendant must distinguish his emotional strain from that

2    experienced by any other criminal defendant." *Moheb*, 2022 WL 3215003, at *5 (citing *United States v.*

3    *Simmons*, 536 F.2d 827, 831–32 (9th Cir. 1976).  Defendant He has not done so.

4

5              **2.       A Reasonable Delay to Accommodate Defendant Brody's Need for Effective
                    Preparation Would Not Violate the Speedy Trial Act**

6              Even if Defendant He were to demand a speedy trial under the STA in early 2025, the Court

7    could nevertheless delay the trial to a date it deems necessary to accommodate Defendant Brody's

8    counsel's need for effective preparation and exclude time in the interest of serving the "ends of justice".

9    *See* 18 U.S.C. § 3161(h)(7).  In deciding whether to grant an "ends of justice" continuance, the court

10   must "conduct an appropriate inquiry to determine whether the various parties actually want and need a

11   continuance, how long a delay is actually required, what adjustments can be made with respect to the

12   trial calendars or other plans of counsel, and whether granting the requested continuance would

13   'outweigh the best interest of the public and the defendants in a speedy trial.'"  *United States v. Lloyd*,

14   125 F.3d 1263, 1269 (9th Cir. 1997).

15             Where defendants are properly joined for trial, as here, factors including a case's complexity,

16   voluminous discovery, the desire for judicial economy, and a co-defendant's need for additional time to

17   effectively prepare for trial, may justify an ends of justice continuance.  *See, e.g.*, *Lewis*, 611 F.3d at

18   1176 (holding time properly excluded given complexity of case, voluminous discovery, and need to

19   determine co-defendants' counsels' readiness for trial); *United State v. Dota*, 33 F.3d 1179, 1183 (9th

20   Cir. 1994) ("An ends-of-justice continuance may be justified on grounds that one side needs more time

21   to prepare for trial"); *United States v. Kinnard*, 820 Fed. App'x 525, 528 (9th Cir. 2020) (holding 11-

22   week continuance excludable "pursuant to §§ 3161(h)(7)(A) and (B)(ii), where counsel for codefendants

23   required additional time to adequately prepare for trial in a complex case and the court made an express

24   'ends of justice' finding," and exclusion was attributable to defendant under 18 U.S.C. § 3161(h)(6)

25   because defendant "was properly joined for trial with codefendants who sought the continuance");

26   *United States v. Williams*, No. 3:13-CR-00764 -WHO, 2017 WL 4877131, at *5 (N.D. Cal. Oct. 30,

27   2017) ("Many separate trials would have wreaked havoc on judicial economy").

28             It is within the Court's purview to determine the time necessary for Defendant Brody's effective

preparation; however, the government notes the following to the extent it is helpful as the Court makes this assessment. The government has outlined its theory of culpability as to Defendant Brody, which should facilitate his preparation. The Indictment outlines numerous policies and practices, agreed upon by Defendant He and Brody, which the government alleges caused Done prescribers, including Defendant Brody, to write unauthorized prescriptions. ECF No. 1, ¶¶ 62–74. The Indictment also details four specific § 841 counts, which are examples of the § 846 conspiracy. In addition, the government has informed Defendant Brody's counsel that, given the nature of Dr. Brody's prescribing, it is the government's view that all the prescriptions he wrote were unauthorized because Defendants agreed he could write prescriptions without interacting with patients or reviewing medical records. *See, e.g.*, Green Decl. Ex. A, 18:1–13. The government has also provided a list of key documents, a discovery index, and interview reports to facilitate Defendant Brody's review of the discovery. As the Court has pointed out, and as counsel have confirmed in outlining their intended defenses in the Def. Mot., Defendant Brody's counsel "certainly understand[s] the scope of the case." *Id.* at 14:9–18. Defendant Brody is not in custody, which further eases his trial preparation. *Id.* at 14:19. Finally, as the Court correctly recognized, this is at base a "process or procedure case," in which the government will focus on the policies and practices Defendants agreed upon that resulted in the issuance of unauthorized prescriptions, not analyze every individualized prescription Defendant Brody wrote. Green Decl. Ex. A, 18:20–20:6. That posture may impact the time necessary to effectively prepare.

"[A]n exclusion from the Speedy Trial clock for one defendant applies to all co-defendants." *United States v. Messer*, 197 F.3d 330, 338 (9th Cir. 1999). In order to attribute a codefendant's excludable delay under § 3161(h)(7) to a defendant, however, the delay must meet the reasonableness requirement of 18 U.S.C. § 3161(h)(6). *Lewis*, 611 F.3d at 1176; *accord Messer*, 197 F.3d at 336 ("The attribution of delay to a codefendant, however, is limited by a reasonableness requirement."); *United States v. Butz*, 982 F.2d 1378, 1381–82 (9th Cir. 1993) ("To resolve [defendant's] speedy trial claim, we must determine whether the court properly granted the continuance and whether applying this excludable time to [defendant] made the resultant delay unreasonable.").

The "'reasonableness of delay can be measured in reference to (a) the totality of the circumstances prior to trial, or (b) the actual prejudice suffered by the appellant as a result of the §

3161(h)(7) exclusion,'" as well as other factors. *Williams*, 2017 WL 4877131, at *5 (quoting *Messer*, 197 F.3d at 337; *accord United States v. Henry*, 984 F.3d 1343, 1353 (9th Cir. 2021) ("Reasonableness is assessed on a case-by-case basis according to at totality-of-the-circumstances test"). Such factors may include the length of delay, whether the delay was necessary to achieve its purpose, whether there was any actual prejudice suffered by the defendant, and whether a defendant is in pretrial detention. *See, e.g.*, *Messer*, 197 F.3d at 337, 338. Notably, the Ninth Circuit has found trial delay reasonable where necessary to allow a co-defendant time for effective preparation, even where a codefendant has articulated specific prejudice resulting from that delay (which is not the case here). *See Kinnard*, 820 Fed. App'x at 528 ("[A]n extension is reasonable 'because the importance of allowing codefendants time to prepare for trial further[s] the policy of favoring joint trials, and, thus, outweighs any prejudice that may [result] from having one of those codefendants eventually decide to plead guilty and testify against' defendant.") (quoting *Lewis*, 611 F.3d at 1178). Furthermore, the Ninth Circuit has upheld continuances far longer than that presumably being considered by the Court here, even where the defendant was detained pretrial. *Henry*, 984 F.3d at 1353 (holding continuances that totaled approximately ten and a half months reasonable in complex case despite fact that defendant was in pre-trial detention); *Lam*, 251 F.3d at 856 (delay of fourteen-and-a half months reasonable in complex case).

In sum, Defendants' vague assertion of a conflict between Defendant He's constitutional right to a speedy trial and Defendant Brody's constitutional right to effective preparation does not warrant severance. Defendants are properly joined in an indictment charging them with multiple conspiracies. A joint trial will promote judicial economy, prevent unnecessary inconvenience to witnesses (many, if not all, of whom would have to testify in both trials), and prevent the needless presentation of duplicative evidence. *See, e.g.*, *Moheb*, 2022 WL 3215003, at *2 (denying defendant's request for severance based on medical conditions because defendant's interests did not outweigh interest in efficiency and presumption in favor of joint trial where defendants had been jointly indicted on conspiracy charges). Furthermore, Defendant He has not cited any specific prejudice she would suffer from a reasonable delay in trial beyond her preferred (but unspecified) date, except for a desire to avoid prolonged pretrial detention—a sentiment no doubt shared by every in-custody defendant in a joint trial.

The two cases Defendants cite in support of their severance request are distinguishable. In *Beal*,

1  the court found a delay of 21-months until trial unreasonable, particularly "in light of [defendant's]

2  limited role in the alleged conspiracy." *United States v. Beal*, 536 F. Supp. 3d 743, 757 (D. Haw. 2021).

3  Here, by contrast, both Defendants, as CEO and Clinical President of Done, are central to the alleged

4  conspiracies.  Furthermore, in this case, a trial date would not even stray into the realm of presumptively

5  prejudicial until mid-June 2025, at the earliest.  *See, e.g.*, *Henry*, 984 F.3d at 1353 (stating post-

6  accusation delays of close to a year are "presumptively prejudicial" but noting that the Ninth Circuit has

7  nevertheless upheld continuances in complex cases of longer than a year).  In *Diaz*, the court granted

8  severance where the defendant had "consistently asserted his right to a speedy trial" and where the trial

9  for the co-defendants was scheduled to start more than three years after the filing of the indictment.

10  *United States v. Diaz*, No. Cr. 2:07-0248 WBS, 2009 WL 3233700, at *1 (E.D. Cal. Oct. 1, 2009).

11  Neither of these circumstances are present here.  Defendant He has not expressly invoked her right to a

12  speedy trial under the STA and a trial in 2025 would not come close to the length of delay the court was

13  assessing in *Diaz*.

14       **B.**     **Defendants Have Failed to Demonstrate Irreconcilably Antagonistic Defenses**

15       Defendants argue that severance is warranted because they anticipate raising "mutually

16  antagonistic defenses" with respect to the controlled substance and health care fraud allegations in the

17  Indictment.  Specifically, Defendant He argues that, as a non-medical practitioner, she intends to

18  demonstrate that she relied on Defendant Brody and other clinicians and advisors "to ensure that Done's

19  policies were sufficient to support the issuance of authorized prescriptions." Def. Mot. at 4.  She further

20  states that she "does not intend to defend" Defendant Brody's prescribing practices.  *Id.*  Defendant

21  Brody argues that he intends to demonstrate that Defendant He took advantage of him, controlled Done,

22  and disregarded policies for which he advocated, or implemented policies without his knowledge, all in

23  the pursuit of maximizing profit.  *Id.*  He further argues that he "may agree" with the government that

24  Defendant He knew and intended her policies to have an injurious effect.  *Id.* at 5.  While Defendants

25  have strived to establish that they might "point [a] finger" at each other, *id.* at 5, neither Defendant has

26  articulated a specific, intended defense that, if believed, would *necessitate* finding the co-defendant

27  guilty.  Nor has either Defendant set forth a clear intent to pursue a defense strategy of stepping into the

28  role of prosecutor and proving the co-defendant guilty of the charged crimes.  Rather, the core of each

1    Defendants' defense centers upon establishing a lack of the requisite *mens rea* to be found guilty.  These

2    defenses are not so mutually exclusive as to warrant severance.

3          "To warrant severance on the basis of antagonistic defenses, codefendants must show that their

4    defenses are irreconcilable and mutually exclusive." *United States v. Angwin*, 271 F.3d 786, 795 (9th

5    Cir. 2001).  Defenses are mutually exclusive when "acquittal of one codefendant would *necessarily call*

6    for the conviction of the other." *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991)

7    (emphasis added).  "Antagonism between defenses or the desire of one defendant to exculpate himself

8    by inculpating a codefendant . . . is insufficient to require severance." *United States v. Throckmorton*,

9    87 F.3d 1069, 1072 (9th Cir. 1996); *see also Zafiro*, 506 U.S. at 540 (severance not mandated even

10   where both defendants claim innocence and each accuses the other of the crime).  "To be entitled to

11   severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the

12   codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the

13   codefendant's theory by the jury precludes acquittal of the defendant." *Throckmorton*, 87 F.3d at 1072.

14         Even when defendants present antagonistic defenses, such defenses "are not prejudicial *per se*."

15   *Zafiro*, 506 U.S. at 538 (noting "courts have reversed relatively few convictions for failure to grant a

16   severance on grounds of mutually antagonistic or irreconcilable defenses" and positing that this "low

17   rate of reversal may reflect the inability of defendants to prove a risk of prejudice in most cases

18   involving conflicting defenses"); *United States v. Calderon*, 220 Fed. App'x 751, 754 (9th Cir. 2007)

19   ("Notably, antagonistic defenses are not prejudicial per se, even if defendants are hostile to or seek to

20   blame one another").  As such, "Rule 14 does not require severance even if prejudice is shown; rather, it

21   leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*,

22   506 U.S. at 538–39 (refusing "to adopt bright-line rule, mandating severance whenever codefendants

23   have conflicting defenses").  A district court should grant severance only if there is a serious risk that a

24   joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

25   making a reliable judgment about guilt or innocence.  *Zafiro*, 506 U.S. at 538–39.

26         Here, accepting either Defendant's core defense that he/she lacked the requisite *mens rea* would

27   not preclude acquittal of the respective co-defendant.  Nor do the "facts of the case . . . necessitate that

28   the jury convict one or the other defendant." *United States v. Cheeves*, No. CR. 09-1030 CRB, 2010

1   WL 1260808, at *3 (N.D. Cal. Mar. 29, 2010) (Breyer, J.) (distinguishing *Tootick* where there was "no
2   evidence to support a conclusion that *neither* defendant committed the crime"). A jury could accept
3   Defendant He's defense that she relied on Defendant Brody and others to ensure the appropriate
4   issuance of prescriptions, while at the same time accepting Defendant Brody's defense that he did not
5   knowingly and intentional agree to issue (and did not issue) unauthorized prescriptions. In other words,
6   both Defendants could argue their innocence, and the jury may believe both and return acquittals for
7   both. *See, e.g.*, *United States v. Shields*, 673 F. App'x 625, 626–27 (9th Cir. 2016) ("Defendants'
8   defenses were not mutually exclusive because they both argued that they were innocent, and the jury
9   could have believed that both were acting in good faith, and acquitted them both."); *Cheeves*, 2010 WL
10  1260808, at *3 ("While each defense counsel plans to blame the other defendant, the facts of the case do
11  not necessitate that the jury convict one or the other defendant. . . the facts in this case will permit a jury
12  to acquit one defendant without convicting the other. It's not a zero sum game."). Although Defendant
13  He may claim to have relied on Defendant Brody, or Defendant Brody may attempt to establish that
14  Defendant He took advantage of him or implemented certain clinical changes without his knowledge,
15  such finger-pointing does not justify severance. *See, e.g.*, *United States v. Anderson*, 36 Fed. App'x
16  325, 326 (9th Cir. 2002) (holding defenses not irreconcilably mutually antagonistic where defendant
17  argued she was convinced by another to engage in bank fraud scheme; and codefendant argued he knew
18  nothing about business and was duped by defendant who took advantage of him). The "mere presence
19  of hostility among defendants or the desire of one to exculpate himself by inculpating the other does not
20  generate the kind of prejudice that mandates severance." *United States v. Sherlock*, 962 F.2d 1349, 1363
21  (9th Cir. 1989). Indeed, given that Defendants are charged with conspiracies, such finger-pointing may
22  work to their benefit in establishing a lack of agreement, as opposed to cause prejudice.
23          Furthermore, even assuming Defendants present somewhat antagonistic defenses, they have not
24  articulated any specific prejudice they may suffer as a result of a joint trial, besides the unsubstantiated
25  assertion that each may be subjected to a "second prosecutor" (discussed further below). *See Zafiro*, 506
26  U.S. at 539–40 (affirming denial of severance motion where petitioners had not shown that joint trial
27  subjected them to any legally cognizable prejudice and instead contended that the "very nature of their
28  defenses, without more, prejudiced them."). The Supreme Court has provided examples of situations

1    that could heighten the risk of prejudice from a joint trial, none of which Defendants have asserted here.

2    These examples include (1) when evidence that the jury should not consider against a defendant and that

3    would be admissible if a defendant were tried alone is admitted against a codefendant; (2) when many

4    defendants are tried together in a complex case and they have markedly different degrees of culpability;

5    (3) evidence that is probative of a defendant's guilt but technically admissible only against a

6    codefendant; (4) if essential exculpatory evidence that would be available to a defendant tried alone

7    were unavailable in a joint trial. *Zafiro*, 506 U.S. at 539; *see also Cheeves*, 2010 WL 1260808, at *4

8    ("[N]either defendant identifies a particular trial right that will likely be compromised. *Zafiro* provides a

9    list of factors as indicators of potential prejudice, and none is present in this case.").

10          Defendants cite *United States v. Holmes* as an example of a court granting severance where one

11    defendant argued she lacked the requisite *mens rea* because she relied upon a codefendant.  Def. Mot. at

12    5.  But *Holmes* involved unique arguments of prejudice, not present here.  In *Holmes*, the Honorable

13    Edward J. Davila did not articulate the basis of his decision to sever the *Holmes* trial from the *Balwani*

14    trial.  *See* 18-CR-258 EJD, ECF No. 362 (N.D. Cal. Mar. 20, 2020).  Balwani's severance motion,

15    however, was instigated by Holmes' notice of her intent to introduce an expert at trial who would testify

16    about: "[T]he intimate partner violence/abuse (including at least psychological, emotional [redacted]

17    suffered by Ms. Holmes at the hands of Mr. Balwani, the abusive tactics used by Mr. Balwani that

18    allows him to exert control over Ms. Holmes, and the psychological impact of the relationship on Ms.

19    Holmes," including the possible identification of . . . Post Traumatic Stress Disorder . . . ."  18-CR-258

20    EJD, ECF No. 967, at *2 (N.D. Cal. Dec. 12, 2019).  Mr. Balwani argued that this "momentous

21    development" left him with no choice but to move to sever "to avoid devasting prejudice to his case"

22    resulting from this "abuse" defense. *Id.*  Mr. Balwani further argued that this "tremendously prejudicial

23    evidence" would not otherwise be inadmissible against him in a single-defendant trial. *Id.* at 4.

24          Defendants' argument for severance seems to center upon the unfounded claim that their

25    antagonistic defenses will result in each Defendant stepping into the role of a "second prosecutor."  Def.

26    Mot. at 4–6.  The proffered defenses here, however, do not justify severance based on this concern.

27    Notably, neither Defendant has articulated a core defense strategy of setting out to prove the co-

28    defendant guilty of the charged crimes in order to establish his or her own innocence.  At most, each

1    Defendant has merely stated that he/she "may" concur with the government's characterization of the
2    other. *Id.* at 4-5. *Cf. United States v. Mayfield*, 189 F.3d 895, 900, 907 (9th Cir. 1999) (reversing denial
3    of motion to sever where prosecutor's case in chief was "marginal," and decisive evidence of guilt was
4    instead provided by co-defendant, whose "counsel used every opportunity to introduce impermissible
5    evidence against Mayfield" and whose closing argument barely even addressed the government's
6    evidence against her client and instead focused on convincing the jury that Mayfield was the guilty
7    party"). Indeed, this case is similar to the scenario this Court faced in *Cheeves*. There, the Court found
8    that the defendants would not be subjected to two prosecutors because the government, given its theory
9    of the case, would disagree with each defendant to the extent each tried to blame the other for, and
10   disassociate himself from, certain conduct. *Cheeves*, 2010 WL 1260808, at *3 ("[W]hen viewed
11   through the prism of the Government's factual allegations as set forth in their papers, the Defendants
12   will not truly be subjected to two prosecutors in the same wa[y] as in *Tootick*"). The same is true here.
13   If either Defendant blames the other for the alleged criminal conduct, while distancing him/herself and
14   arguing a lack of *mens rea*, the government will *disagree* because the government must prove
15   conspiracies—namely *agreement* between the Defendants to engage in the charged conduct.

16        The cases cited by Defendants are inapposite. In *Shkreli*, Greebel's counsel, "in his declaration
17   and at oral argument", stated an intention for "Greebel's defense team to act as a second prosecutor
18   against Shkreli, by arguing that Shkreli is guilty and that Greebel is, himself, just another victim of
19   Shkreli's fraud." *United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D. N.Y. April 19, 2017).
20   "Greebel's counsel intend[ed] to assert a defense that will be an 'echo chamber' for the prosecution by
21   presenting evidence of multiple instances of Shkreli's purported lies, deceptions, and
22   misrepresentations," including evidence of his lies that the government itself may not present. *Id.* at
23   256. Greebel's counsel went beyond merely finger-pointing and blaming Shkreli. Instead, Greebel
24   articulated a clear intent to "argue that Shkreli is guilty as charged, and that Greebel is but another
25   victim of Shkreli's lies and deceitfulness," so presenting a "realistic scenario that Shkreli will be
26   prosecuted, not only by the government, but also by Greebel." *Id.*[3] Both *Verdera* and *Troiana* involved

27

28   _____
     [3] In *Shkreli*, the defendants also sought severance based on purported "mutually antagonistic"
     defenses where Shkreli intended to argue he lacked intent to defraud because he relied on advice of
     counsel, Greebel; and Greebel contended his advice was predicated on receiving truthful information

confrontation clause issues because the government intended to admit evidence of co-defendants' statements that could implicate the defendants. *United States v. Verdera*, No.08-000018, 2008 WL 11350110, at *5, *8 (D. Guam July 2, 2008); *United States v. Troiano*, 426 F. Supp. 2d 1129, 1132–34 (D. Haw. 2006). The courts found the typical remedy, redaction, insufficient given the nature of the statements, the intended defenses, and the hindrance that would pose on effective cross-examination. Thus, the courts held that this confrontation clause problem *combined with* the existence of mutually exclusive and antagonistic defenses, in which the core of co-defendant's defense was to accuse the respective defendant of committing the charged crime, weighed in favor of severance. *Verdera*, 2008 WL 11350110, at *9; *Troiano*, 426 F. Supp. 2d at 1135.

Finally, even if a joint trial posed some risk of prejudice, "that can be cured with proper instructions," *id.* at 540; such as those the Supreme Court found sufficient in *Zafiro*:

> "The District Court properly instructed the jury that the Government had the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he or she was charged. The court then instructed the jury that it must give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her. In addition, the District Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence. *These instructions sufficed to cure any possibility of prejudice.*

*Zafiro*, 506 U.S. at 540–41 (emphasis added); *accord Cheeves*, 2010 WL 1260808, at *4 ("This Court is capable of limiting any possible prejudicial effect of this joined trial through the use of appropriate and timely jury instructions.").

Defendants have failed to establish that their proposed defenses are so irreconcilable and mutually antagonistic as to warrant severance. To the extent their defenses present any risk of prejudice at trial, the Court may fashion jury instructions to cure such prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' joint motion for severance.

---

from Shkreli, which he did not. *Shkreli*, 260 F. Supp. 3d at 253–54. The court held these defenses *not* mutually antagonistic because a jury could accept one defendant's defense without necessarily finding the other guilty. *Id.* ("That he relied on his counsel, Greebel, does not lead to the inference that Greebel had the requisite intent.").

DATED:  December 16, 2024

Respectfully submitted,

RAVI T. NARAYAN
Attorney for the United States

 /s/
KRISTINA GREEN
Assistant United States Attorney


JACOB FOSTER
Principal Deputy Chief
EMILY GURSKIS
Assistant Chief
Department of Justice
Criminal Division, Fraud Section