**WILLKIE FARR & GALLAGHER LLP**
Koren Bell (SBN 268614)
 kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
 mschachter@willkie.com
 sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

**HUESTON HENNIGAN LLP**
Vicki Chou (SBN 248598)
 vchou@hueston.com
523 W 6th St., Suite 400
Los Angeles, CA 90014
T: 213-788-4340
F: 888-775-0898

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S REPLY IN FURTHER SUPPORT OF HER MOTION FOR A BILL OF PARTICULARS**<br><br>Date:  January 8, 2025<br>Time:  10:00 A.M.<br>Ctrm:  6 - 17th Floor,<br>      Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

    I.     The Circumstances of This Case Call for a Bill of Particulars. .....................................2

    II.    The Government's Objections to a Bill of Particulars are Meritless. ..........................6

    III.   The Court Also Has Supervisory Authority to Order the Relief Ms. He Requests. ...................................................................................................................9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*United States v. Ahmad*,
    53 F.R.D. 194 (M.D. Pa. 1971) ......................................................................................... 7

*United States v. Chalmers*,
    410 F.Supp.2d 278 (S.D.N.Y. 2006) ................................................................................. 6

*United States v. Chen*,
    No. C 05-375 SI, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) ........................................ 9

*United States v. Cole*,
    717 F. Supp. 309 (E.D. Pa. 1989) ..................................................................................... 7

*United States. v. Covelli*,
    210 F. Supp. 589 (N.D. Ill. 1962) ..................................................................................... 7

*United States v. Holmes*,
    No. 5:18-cr-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ..................... 7, 8, 9

*United States v. Inclan*,
    2:15-cr-00057-RFB, 2017 WL 3337263 (D. Nev. Aug. 4, 2017) ................................... 10

*United States v. Long*,
    706 F.2d 1044 (9th Cir. 1983) .......................................................................................... 7

*United States v. Lonzo*,
    793 F. Supp. 57 (N.D.N.Y. 1992) ..................................................................................... 7

*United States v. Lynch*,
    No. 3:18-cr-00577-CRB (N.D. Cal. Nov. 29, 2018) ..................................................... 6, 7

*United States v. MacFarlane*,
    759 F. Supp. 1163 (W.D. Pa. 1991) .................................................................................. 7

*United States v. Medeiros*,
    No. 18-1966-JCH, 2024 WL 3342615 (D. N.M. Jul. 8, 2024) ....................................... 10

*United States v. Rothenberg*,
    No. 20-cr-00266-JST-1, 2021 WL 6807581 (N.D. Cal. Dec. 6, 2021) ............................ 9

*United States v. Thevis*,
    474 F. Supp. 117 (N.D. Ga. 1979) ................................................................................ 6, 8

*United States v. W.R. Grace*,
    526 F.3d 499 (9th Cir. 2009) ....................................................................................... 9, 10

**Rules**

Fed. R. Crim. P. 7 .................................................................................................... *passim*

**Other Authorities**

Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 130 (5th ed.) ......................................................6, 7

**INTRODUCTION**

The opposition confirms that, under the circumstances of this case, a bill of particulars is necessary under Rule 7(f) to clarify the Government's core theory, prevent surprise, and aid in Ms. He's preparation of her defense—paradigm purposes for a bill. It is also appropriate in the exercise of the Court's inherent supervisory authority to ensure the speedy and orderly administration of justice—a point that the opposition does not even address.

Although the Court directed the Government "to identify…the *parameters* of your case" and "to *circumscribe*, to *limit*, to *narrow* the case" in the context of discovery that is "admittedly massive involving millions of documents," the Government has failed to do so. (*See* Decl. of Kristina Green in Support of United States' Opp. to Defendant Ruthia He's Motion for a Bill of Particulars ("Green Decl.") Ex. 2 Nov. 6 Tr. at 7:25–8:1, 9:13–14; Supp. Decl. of Koren Bell ("Bell. Supp. Decl.") Ex. H Dec. 12 Tr. at 4:20 (emphases added).) In fact, the opposition does not even acknowledge the Court's directive and instead doubles down on the Government's position that the scope of its case should remain unconfined. Nor does the opposition acknowledge the Court's finding that a bill of particulars, if granted, would mitigate Ms. He's concerns about the lack of meaningful access to the massive and rapidly growing volume of discovery in custody by focusing her review on the theory and scope of the obviously limited case that the Government says it can present in only 10 to 15 days. (Bell Supp. Decl. Ex. H Dec. 12 Tr. at 11:4–10 ("[W]hile we are talking about 5 billion pieces of paper, you know, practically speaking, if, in fact the bill of particulars addresses . . . 10 incidents or 20 or 30, you are really talking about the paper or documents related to those 30.").)

Because Ms. He is "in custody and . . . presumed to be innocent," the Court does not want this case "to take a lifetime to try." (Green Decl. Ex. 2 Nov. 6 Tr. at 10:9–12.) For her part, Ms. He desires the speediest possible trial. But as long as the Government's case remains a moving target—as the opposition makes clear it is—Ms. He cannot responsibly determine the first possible date that she can be ready for trial. (*See* Green Decl. Ex. 1 Dec. 4 Tr. at 6:21-22 (The Court

describing as "perfectly reasonable" Ms. He's position that Indictment particulars are prerequisite to committing to a trial date).)

### I. The Circumstances of This Case Call for a Bill of Particulars.

The opposition underscores that three circumstances in this case—the broad and unspecified allegations, the volume of discovery, and Ms. He's wish for the speediest possible trial—warrant a bill of particulars. Meanwhile, the imperative for the Government "to circumscribe, to limit, to narrow the case" grows stronger by the week. Prior to its November 6 representation to this Court that "[w]e've produced our Rule 16 discovery," the Government had produced 9.3 million pages of material (plus 2.9 million documents separately produced by the filter team). (Green Decl. Ex. 2 Nov. 6 Tr. 4:2-6.) But the Government has produced an additional ***6.7 million pages alone since that representation*** (plus the thousands of documents subsequently produced by the filter team as well). And on November 7, ***the day after making this representation to the Court***, the Government asked the Company to produce email for ***almost 80*** additional Done employees, which will drown the defense in yet more massive productions. (Bell Supp. Decl. Ex. I.)

<u>First</u>, the Indictment's broad and unspecified allegations raise questions about the Government's theory and scope of its case that are only compounded by the opposition. The crux of the case is that Ms. He conspired with "others" over the course of three years to "cause" and "pressure" "Done Prescribers" to write unauthorized prescriptions, and by extension, to defraud insurers through "false and fraudulent" statements. These allegations beg core questions. Do these alleged conspiracies include *all* of Done's hundreds of prescribers during the alleged conspiracy period or a subset of them—and if so which? Do they include all of the Done employees or a subset of them? People outside the company? Was the criminal agreement to issue unauthorized prescriptions to *all* of these prescribers' approximately 150,000 patients or a subset of them—and if so which patients and prescriptions? What are the alleged false statements to health care providers in the broad categories of documents listed in the Indictment (ECF No. 1 ¶ 71)? And as

2
RUTHIA HE'S REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS
Case No. 3:24-cr-00329-CRB

to the allegation that Ms. He conspired to corruptly alter, destroy, and conceal unidentified records, which specific obstructive conduct falls within the scope of the criminal agreement?

Rather than answer these questions, the opposition doubles down on the lack of Indictment particulars about the Government's theory and scope of its case. It references the "nine prescribers whose prescriptions and conduct are at issue in the case" (ECF No. 187 at 2)—a subset that itself implicates tens of thousands of prescriptions—but does not say whether *all* of these prescriptions or only some were issued pursuant to the alleged conspiracy, and if so which. Likewise, the opposition states that the prior authorization process "*often* involved," but did not always involve, false representations to insurers, but does not say which prior authorization forms contain what allegedly false statements. (*Id*. at 16 (emphasis added).) These are central questions that Ms. He has posed since her counsel's first meeting with the Government on November 5, before counsel's first appearance before this Court on November 6, when counsel promptly raised the need for Indictment particulars.

Nor does the Government confine its case to these nine prescribers.[1] To the contrary, the opposition confirms that "the Indictment, interview reports, and other voluntary disclosures" only "highlight *some* of the patients and prescribers who *will likely be presented* at trial." (*Id*. at 11 (emphasis added).) It states that "all prescriptions issued by co-defendant Brody" pursuant to the "bridge-prescription" policy were unlawful, as were those of ***"any others acting in a similar fashion,"***[2] without identifying those "others." (*Id*. at 2-3.) It asserts that **"*many*,"** but not all, of Ms. He's co-conspirators have been identified. (*Id*. at 19.) It lists broad *categories* of documents as purported samples of the misstatements—"false and fraudulent prior authorizations,"

---

[1] Of these nine, only three prescribers have pled guilty in equally broad plea agreements which make no mention of Ms. He.

[2] Besides the "bridge prescription policy," other at-issue policies include, for example, 30-minute initial appointments, "discouraging follow-up medical care," and a payment system based on "patient load" that compensated providers based on the numbers of patients on their panel. (ECF No. 1 ¶¶ 65-70.) Neither the Indictment nor the opposition say whether *all* prescriptions issued pursuant to these other policies, or rather some subset, are alleged to be part of the unlawful agreement.

"statements" to pharmacies, and "false and fraudulent claims"—without identifying the at-issue false *statements* in these records. (*Id.* at 4-5.) Beyond these broad categories of documents, it provides only two "*examples*" of actual alleged false statements but fails to say whether there are more buried in the millions of pages of discovery the Government has produced to date. (*Id.* at 4.) And, similarly, it offers only "*representative examples*" of obstructive conduct, likewise leaving Ms. He to guess what falls within the scope of the alleged criminal agreements. (*Id.* at 18.) Under these circumstances, where the Government has refused "to circumscribe, to limit, to narrow the case" per the Court's directive, Ms. He is unable to focus her preparation on the case the Government will actually present and avoid surprise at trial.

In short, contrary to the Government's contention (ECF No. 187 at 11-12), the fact that this is a "policies and procedures" case—a premise that potentially implicates all of the prescriptions and corresponding representations to insurers in the alleged conspiracy period—does not obviate but rather animates the imperative for a bill of particulars where culpability will turn on Ms. He's knowledge and intent as to the effect of Done's policies on prescriptions she indisputably did not issue. In turn, the theory and scope of the case that the Government will present in a 10-15 day trial necessarily implicates the "numbers" of records (*cf. id.*) out of the millions produced that Ms. He will need to review, her investigation and defense preparation, and the first possible date that she can be ready for trial. If only the three prescribers and four prescriptions charged in Counts 2-5 were at issue, that is one case to prepare. If it is a subset of the prescriptions issued by the nine prescribers referenced in the opposition, that is another. And it is an entirely different scenario if "the Indictment, interview reports, and other voluntary disclosures" merely "highlight *some* of the patients and prescribers who *will likely be presented* at trial," as the opposition says. (*See id.* at 11 (emphases added).)

**Second**, as the Government concedes, the discovery it has produced in this case is not only voluminous, but rapidly growing. (ECF No. 187 at 3, 5, 14.) It now totals **at least 16 million pages**, plus 2.9 million documents separately produced by the filter team. The opposition confirms that "its investigation remains ongoing" and even more discovery is yet to come. (*Id.* at 20; *see*

4

*also id.* at 14 ("As the Government interviews additional witnesses about specific policies, prescribers, and patients, it will continue to produce interview reports and key documents related to those topics[.]").) Among the forthcoming productions will be the email and other records the Government asked the Company to produce for ***almost 80*** additional Done employees, the day after telling this Court "[w]e've produced our Rule 16 discovery." (Bell Supp. Decl. Ex. I; Green Decl. Ex. 2 Nov. 6 Tr. 4:2-6.)[3] As such, Ms. He will almost certainly have to contend with millions more pages of discovery in the near future.

**Third**, Ms. He seeks the speediest trial possible without sacrificing her ability to prepare an adequate defense. She wishes to be an active participant in the preparation of her defense from custody but lacks meaningful access to discovery given the immense and rapidly growing volume, the multi-week delays inherent in getting the productions to her on the Court-ordered tablet, and the fact that the tablet does not have a function that would allow her to search across the millions of files even once she has access to them. (Bell Supp. Decl. Ex. H. Dec. 12 Tr. at 4:12-7:13, 10:11-16.) The Court has already found that a bill of particulars, if granted, would mitigate these concerns by focusing Ms. He's review on the narrow case the Government plans to present in 10 to 15 days. (*Id*. at 11:4–10, 12:2-5 ("the Government will be in a very good position to say, 'Here are the 1,000 documents or 500 or 20 related to the 10, 20, 30 particulars…'" if a bill is granted).)

In sum, Ms. He understands that when this Court sets a trial date, "it will be a firm date," set in "concrete." (Green Decl. Ex. 1 Dec. 4 Tr. at 20:1 –3.) A bill of particulars is necessary to clarify the Government's theory and scope of its case before she can commit to that date. The Government's provision of a subject-to-change, 60-person-plus preliminary witness list does nothing to change the Rule 7(f) analysis. This list discloses nothing. The Government told the Court it plans to put on its case in 10 to 15 days. (Green Decl. Ex. 2 Nov. 6 Tr. at 5:7–10.) It

---

[3] The Government suggests that Ms. He is somehow responsible for Done's "untimely" productions in response to grand jury subpoenas. (ECF No. 187 at 18.) In fact, Done is represented by independent counsel at Fenwick & West and Kobre & Kim, a team which includes former federal prosecutors. *See, e.g.*, https://www.fenwick.com/people/christopher-j-steskal; Michael R. Sherwin, Kobre & Kim, https://kobrekim.com/people/michael-r-sherwin. Ms. He had nothing to do with these productions.

knows it is not calling anywhere close to 60 witnesses in that span, but a list that long says nothing about who is really making the cut and does little to focus defense preparation. The Government's proposed trial schedule also fails to substitute for the particulars prerequisite to Ms. He determining the earliest possible date that she can be prepared for trial.[4]

## II.   The Government's Objections to a Bill of Particulars are Meritless.

The Government's reasons for objecting to a bill of particulars here are inadequate. There is no basis for the Government to avoid providing Indictment particulars pursuant to this Court's directive "to circumscribe, to limit, to narrow the case," a practical, common sense inquiry subject to the Court's discretion. *See* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 130 (5th ed.) ("[A] defendant's need for particular information is highly fact-dependent…"); *see also United States v. Chalmers*, 410 F.Supp.2d 278, 283 n.2 (S.D.N.Y. 2006) (noting the "fact-sensitive inquiry and the wide discretion allowed to judges determining these motions").

**First**, the Government complains that Ms. He seeks a bill of particulars to "*confine* rather than *clarify* the Government's case." (ECF No. 187 at 1.) But Ms. He *does* seek particulars to clarify the Government's theory, as discussed above. In any event, "[i]t is not as the government contends, a defense to a motion for Bill of Particulars that the granting of the motion may unnecessarily freeze the government's proof." *United States v. Thevis*, 474 F. Supp. 117, 123 (N.D. Ga. 1979), *aff'd*, 665 F.2d 616 (5th Cir. 1982). Indeed, narrowing the scope of the Government's case is entirely appropriate where, as here, it is necessary to protect a defendant's ability to prepare her defense and avoid prejudicial surprise at trial. *See*, *e.g.*, ECF No. 187 at 9

---

[4] Ms. He objects to the timelines and structure of the Government's proposed scheduling order, including because it contemplates the *simultaneous* exchange of exhibit and witness lists. (*See* Green Decl. Ex. 9.) Once the Court sets a trial date, Ms. He requests a schedule that tracks the Order in the *Lynch* case, which did not require defendants to serve their exhibit and witness lists before the commencement of trial. *See* Scheduling Order, *United States v. Lynch*, No. 3:18-cr-00577 CRB (N.D. Cal. June 30, 2023), ECF No. 192 (attached hereto as Bell. Supp. Decl. Ex. J). There, the Government was required to provide its preliminary witness list 31 weeks before trial, its witness list 16 weeks before trial, and its exhibit list 14 weeks before trial. *Id*. Based on this schedule, in contemplation of a Spring trial date implicating sooner deadlines, Ms. He had originally proposed to the Government that it provide its witness list 16 weeks before trial, its exhibit list 14 weeks before trial, and its preliminary lists on December 4. (Decl. of Koren Bell in Support of Defendant Ruthia He's Motion for a Bill of Particulars ("Bell Decl.") Ex. F.)

(citing *United States v. Cadena*, 2008 WL 2557948, at *1 (E.D. Cal. June 24, 2008) (a bill "**confines** the government's case to the particulars furnished") (emphasis added)); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (Under Fed. R. Crim. P. 7(f), a court may require a confining bill "to minimize danger of surprise at trial" and "aid in preparation and to protect against double jeopardy."); *United States v. Cole*, 717 F. Supp. 309, 317 (E.D. Pa. 1989) ("[T]he Court finds that a bill of particulars . . . is appropriate to inform [defendant] of the precise charges against him ***and to establish the parameters of the Government's case.***") (emphasis added); *see also* Notice of Voluntary Bill of Particulars, *United States v. Lynch*, No. 3:18-cr-00577-CRB (N.D. Cal. Oct. 8, 2023), ECF No. 230; *id.* at ECF No. 266 at 5:1–5 (This Court advising that "the nature of a bill of particulars" is to "avoid" equivocation from the Government and that "[i]t's a notice type of thing that says 'This is what the case is. ***And you're on notice it's this and it's not that***.'") (emphasis added).  Contrary to the Government's claims, "conspiracy is too broad an offense to permit confident generalizations," and there are "many decisions" holding that details of a conspiracy are an appropriate subject for a bill of particulars when doing so is necessary to allow the defendant to prepare an adequate defense and avoid surprise at trial.  *See* Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 130 (5th ed.) (citing cases). [5]

---

[5] *See, e.g.*, *United States v. Holmes*, No. 5:18-cr-00258-EJD, 2020 WL 666563, at *9 (N.D. Cal. Feb. 11, 2020) (ordering the Government to provide the same particulars with respect to false statements alleged as part of fraud conspiracy as Ms. He requests here given that (1) "the universe of potential misrepresentations is vast," (2) "the discovery in this case is immense," and thus (3) "[t]hese realities create a substantial risk that Defendants may be unfairly surprised at trial"); *United States v. Lonzo*, 793 F. Supp. 57, 59 (N.D.N.Y. 1992) ("[T]he current practice of this Court has been to grant requests for the names of unindicted co-conspirators and for the specification of the quantity of drugs alleged in each count of a drug-conspiracy indictment . . ."); *United States v. MacFarlane*, 759 F. Supp. 1163, 1169 (W.D. Pa. 1991) (recognizing that disclosure of identity and statements of unindicted coconspirators whom government planned to call as witnesses may be ordered in the context of a bill of particulars, after considering interests such as the personal security of witnesses); *United States v. Ahmad*, 53 F.R.D. 194, 201 (M.D. Pa. 1971) (ordering the Government to specify in a bill of particulars "any overt acts not enumerated in the indictment concerning which the government intends to offer evidence at the trial"); *United States. v. Covelli*, 210 F. Supp. 589, 590 (N.D. Ill. 1962) (holding that Government was required to disclose in a bill of particulars "overt acts which could have been included in the indictment but were not and which the Government intends to present testimony about at the trial," and that permitting the Government to "disclos[e] certain overt acts through the indictment and withhold[] others" that it intended to prove at trial would allow for "the type of surprise a bill of particulars is designed to

**Second**, the Government's position that Ms. He's request for a bill of particulars should be denied because she seeks "all the Government's evidence in support" of its theory of criminality is likewise a non-starter. (ECF No. 187 at 1.) It is not "a legitimate objection to a motion for Bill of Particulars that it calls for an evidentiary response or a legal theory of the government, when the furnishing of this information is necessary to prepare a defense and to avoid prejudicial surprise at trial." *Thevis*, 474 F. Supp. at 123. The circumstances here call for a bill of particulars, even if doing so results in the Government disclosing its evidence.

In any event, Ms. He is *not* requesting "all" of the Government's evidence. She is seeking Indictment particulars about the theory and scope of the Government's case—who she is alleged to have conspired with, which prescribers and prescriptions will be at issue at trial, which false statements are within the scope of the health care fraud conspiracy, and what obstructive acts constitute the obstruction of justice conspiracy charge—to focus her investigation and prepare her defense. This, as the Governments concedes, is an entirely legitimate purpose of a bill of particulars. (*See* ECF No. 187 at 9 (noting that a bill of particulars "is intended to . . . permit the defendant to conduct his own investigation.") (quoting *United States v. Hsuan Bin Chen*, Case No. 09-CR-100-SI, 2011 WL 332713, at *7 (N.D. Cal. Jan. 29, 2011)).)

**Finally**, the Government's claim that the Indictment, interview reports, and the discovery in this case are sufficient to permit Ms. He to adequately prepare her defense and avoid surprise at trial is simply wrong. *See, e.g.*, *Holmes*, 2020 WL 666563, at *9 (interview reports, which did "not identify the alleged misrepresentations" and "more than 20 million pages of documents" produced in discovery were insufficient to alleviate the need for a bill of particulars with respect to false statements alleged as part of fraud conspiracy). The Indictment, discovery, and briefing are the source of the problem here, not the solution.

In particular, the Government's claim that this case should be treated differently than those where courts "grant requests for bills of particulars where discovery is voluminous" because it has produced "ample" "searchable and indexed" discovery misses the mark. (ECF No. 187 at 5, 10, avoid.").

20.) The index is of little assistance in navigating the massive discovery. For example, it identifies one category of discovery as "Grand jury subpoena return from Done Health." Within that category alone, which contains arguably the most important evidence in the case—the email and slack communications of Done's employees, including Ms. He's own communications and that of Dr. Brody—is 13.2 million pages. Searching for only Ms. He's communications "narrows" the universe to **over 4.2 million pages**, not counting the **over 2.9 million documents** separately produced by the filter team. While the Government contends that "this is a policies and procedures case—and the evidence of Defendant's intent surrounding these policies and procedures is detailed in witness interviews, ***her own communications, and other documents or evidence***," ECF No. 187 at 12 (emphasis added), Ms. He is left to plough through a mountain of discovery to find this evidence without Indictment particulars.

A neatly packaged document dump is still a document dump. And the immense volume of discovery here makes this case indistinguishable from the others Ms. He cited in her opening brief, in which courts have similarly granted bills of particulars based on the Government's voluminous discovery productions and open-ended indictment allegations. *See e.g.*, *Holmes*, 2020 WL 666563, at *9; *United States v. Rothenberg*, No. 20-cr-00266-JST-1, 2021 WL 6807581, at *2-3 (N.D. Cal. Dec. 6, 2021); *United States v. Chen*, No. C 05-375 SI, 2006 WL 3898177, at *3-4 (N.D. Cal. Nov. 9, 2006).

### III. The Court Also Has Supervisory Authority to Order the Relief Ms. He Requests.

Even if the standard for justifying a bill of particulars under Rule 7(f) were not satisfied here, the Court has the authority to order this relief. As Ms. He described in her opening brief, "the Court may exercise its supervisory power to order the Government to disclose the evidence and witnesses it intends to rely upon at trial to facilitate effective case management." (ECF No. 158 at 14 (citing *United States v. W.R. Grace*, 526 F.3d 499, 504 (9th Cir. 2009) (en banc).)

In affirming the district court's order excluding the Government from offering witnesses or evidence that it did not include on its final witness or exhibit lists, which the district court ordered the Government to disclose a year before trial, the Ninth Circuit, en banc, explained:

> We begin with the principle that the district court is charged with effectuating the speedy and orderly administration of justice.  **There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly**.

*W.R. Grace*, 526 F.3d at 508–09 (emphasis added).  Courts have cited *W.R. Grace* as an alternative justification to Rule 7(f) for ordering the Government to provide information requested in a bill of particulars.[6]  The opposition does not even address this argument, perhaps recognizing that the Court could indeed order the Government to provide the information Ms. He seeks independent of Rule 7(f).

## CONCLUSION

For the foregoing reasons, Ms. He respectfully requests that the Court order the Government to file the requested bill of particulars.

---

[6] *See, e.g., United States v. Medeiros*, No. 18-1966-JCH, 2024 WL 3342615, at * 4 (D. N.M. Jul. 8, 2024) (citing *W.R. Grace* as support for order granting motion for a bill of particulars requiring the Government to "file a notice listing the evidence of concealments and false statements it intends to present in a second trial by date, speaker, and recipient," as well "as to each false statement or concealment listed . . . which part(s) of the conspiracy the false statement or concealment relates."); *United States v. Inclan,* 2:15-cr-00057-RFB, 2017 WL 3337263, at * 1 (D. Nev. Aug. 4, 2017) (ordering Government to disclose which of the thousands of digital images produced in discovery it would use at trial under the court's inherent authority, after denying bill for the same, "based upon the record that the Defendant would need to know which digital files the government intended to use at trial to be able to adequately prepare possible defenses.").

Dated: December 27, 2024

WILLKIE FARR & GALLAGHER LLP

By: /s/ Koren Bell
Koren Bell
Michael S. Schachter
Steven J. Ballew

HUESTON HENNIGAN LLP

Vicki Chou

*Attorneys for Defendant*
RUTHIA HE