# EXHIBIT H

Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )    NO. CR 24-00329 CRB |
| | ) |
| RUTHIA HE and DAVID BRODY, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

San Francisco, California
Thursday, December 12, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**  (via videoconference)

For Plaintiff:          ISMAIL J. RAMSEY
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                   BY:  **KRISTINA GREEN**
                        **JACOB FOSTER**
                        **EMILY GURKIS**
                        **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant Ruthia He:

                        WILLKIE FARR & GALLAGHER, LLP
                        2029 Century Park East
                        Los Angeles, California  90067
                   BY:  **KOREN BELL, ATTORNEY AT LAW**

                        WILLKIE FARR & GALLAGHER, LLP
                        787 Seventh Avenue
                        New York, New York  10019
                   BY:  **MICHAEL SCHACHTER, ATTORNEY AT LAW**

        **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

**<u>APPEARANCES:</u>**  (via videoconference, continued)

For Defendant David Brody:

                      HICKEY & CHUNG, LLP
                      Pier 9 - Suite 100
                      San Francisco, California  94111
          **BY:  KOREN BELL, ATTORNEY AT LAW**

                      TAMARA CREPET LAW
                      Pier 9 - Suite 100
                      San Francisco, California  94111
          **BY:  TAMARA CREPET, ATTORNEY AT LAW**

```
 1   Thursday - December 12, 2024                    10:31 a.m.

 2                      P R O C E E D I N G S

 3                         ---o0o---

 4        THE CLERK:  Calling criminal action CR24-0329, USA

 5   versus Ruthia He and David Brody.

 6      Counsel, please state your appearances.

 7        MR. FOSTER:  Good morning, Your Honor, Jacob Foster

 8   with Kristina Green and Emily Gurskis on behalf of the United

 9   States.

10        THE COURT:  Good morning.  Good morning.  Everybody

11   else is apparently muted.

12                      (Pause in proceedings.)

13        MS. CHUNG:  Good morning, Your Honor, Naomi Chung and

14   Tamara Crepet on behalf of Dr. David Brody.

15        THE COURT:  Good morning.

16        MS. BELL:  Good morning, Your Honor, I will try again.

17   Can everyone hear me?

18        THE COURT:  A little soft but if you speak up.

19        MS. BELL:  Okay.  Good morning, everyone.  I hope I

20   can be heard now.  Koren Bell and Michael Schachter on behalf

21   of Ruthia He.

22        THE COURT:  Good morning.  They are not on by video.

23   They are only on by phone; is that it?

24        THE CLERK:  Ms. He is in custody so --

25        THE COURT:  Well, I know that.
```

1          **THE CLERK:**  And Mr. Brody, is he appearing by phone?

2          **MS. CHUNG:**  Sorry.  I was unable to reach Dr. Brody.

3    I know he has some health issues that apply in the morning, so

4    I wasn't able to reach him this morning in time to appear for

5    court.

6          **THE COURT:**  Okay, but I assume we can proceed without

7    the presence of the Defendants; is that correct?

8          **MS. CHUNG:**  That's correct, Your Honor.

9          **THE COURT:**  And on behalf of Ruthia He.

10          **MS. BELL:**  Yes, Your Honor.  Thank you very much for

11    accommodating us on an emergency basis.

12          **THE COURT:**  Sure.  As I understand it, the reason for

13    this conference is to address the issues of production of the

14    documents in a form that is accessible to the Defendant while

15    incarcerated at Santa Rita.  That's basically the issue.

16        And I further understand that according to what I have

17    read, is that this issue arises in the context of several

18    matters.

19        First of all, that the volume of documents, which is

20    admittedly massive involving millions of documents, presents

21    one issue.  That is, that there are all of these documents.

22        Secondly, that they have not been produced or -- well, I

23    don't know whether they have or not -- but they are in a form

24    that is not useful to the Defendant.  The question is:  Have

25    they been produced -- my understanding is that at least some

1    have been produced in -- in a form, quote, Relativity or

2    something like that.  Some have been produced in a PDF that --

3    that what would be useful to the Defendant is if they are all

4    produced in a PDF, something along that line.

5        So, that's what I understand the issue to be.  Is there --

6    is that correct or is there -- in addition is there something

7    else that we want to discuss?

8            MS. BELL:  Thank you, Your Honor.  Yes, there is a

9    threshold issue, which is what presents, I think, the urgent --

10   the even more urgent nature of our request for Court

11   intervention, which is that even if the Government were to

12   undertake this resource, an extremely time intensive process of

13   converting the record that it has produced to date to a

14   searchable PDF form, which would allow them to be opened on the

15   court issued tablet, that, it turns out, does not really

16   provide our client with meaningful access to the documents in

17   light of the sheer volume of the documents and the fact that

18   the court ordered tablet does not have a search function that

19   will allow her to search across the millions of pages.

20       And so, in other words, after what the Government

21   estimates to be a six to eight-week process of converting just

22   the impacted documents from production 1 -- and we now have

23   eight additional government productions plus a whole set of

24   filtered team materials -- so, it would be by their estimation

25   six to eight weeks to do the reformatting of just a small

1  subset of the impacted materials, the problem is that our

2  client would not be able to meaningfully review them on the

3  court issued tablet because of the lack of the search function.

4  So, she would effectively have to open each individual file.

5  Once opened a PDF, she can search within the PDF if the

6  Government converts to that format; but she can't just search

7  across them the way we would on the Relativity platform.

8      And that is what led us to inquire whether there would be

9  an option for her to access the Relativity site from within the

10  jail because that would obviate the need to convert any files,

11  and it would also solve the problem of her meaningful access

12  because it would allow her to search across documents.

13      And so, given our conversations at last week's status

14  conference and the Court's indication that the parties were to

15  come to a resolution on this issue by yesterday, we wanted to

16  bring the issue to the Court's attention immediately because

17  even if we go down this path, which doesn't work from a timing

18  perspective, it is not going to solve really the access problem

19  from our perspective.

20      **THE COURT:**  Okay.  And as I understand the issue of a

21  searchability, which is really the one you were addressing, in

22  the context of millions of documents, the problem with

23  searchability is that it would require internet access; is that

24  right?

25      **MS. BELL:**  Yes, Your Honor.  In order to -- the tablet

1    does have the function that it can be set to access just the

2    Relativity internet site.  So, that can be done from a

3    technical perspective; but from the jail's perspective -- and

4    both the Defense and the Government have spent quite a bit of

5    time inquiring into whether that would be a possibility from

6    the jail's perspective -- and they have said definitively no;

7    that that would not be permissible.  That would be the most

8    direct and streamlined response to this problem were that to be

9    a possibility because it is something that could be put into

10    place very quickly, and then it would allow our client to have

11    real-time access to what we, as her counsel, concurrently

12    access, which is productions, you know, 1 through 8.  We are

13    still loading production number 9.

14            **THE COURT:**  Let me --

15         **MS. BELL:**  But that doesn't seem to be an option.

16            **THE COURT:**  Let me explore that option a little bit

17    more.

18        My understanding -- when you say that the -- the facility

19    has an issue with that, as I understand it, it's that what?  Is

20    it they don't have -- either the ability or the -- or the

21    process for allowing inmates to have internet access; is that

22    the issue?

23        In other words, are you saying to me, well, if -- here is

24    our solution, but is it -- does it look like -- you say, "Here

25    is our solution.  Give her access to the internet."  And then

1  they -- the facility comes back and says, "There is no access

2  to the internet here for inmates."

3      And so, the answer then is:  Well, she will have to go

4  somewhere where there is access to the internet.  And that's at

5  least a part -- I mean, there is more to discuss in that

6  regard; but just in terms of mechanics, is that what the issue

7  is?

8          **MS. BELL:**  Yes, Your Honor.  That's what I understand

9  it to be; that the jail says that inmates cannot access the

10  internet even if it's set to only the Relativity site.

11          **THE COURT:**  All right.  So, let me ask -- let me turn

12  to the Government.  What -- what are your thoughts in that

13  regard?

14          **MR. FOSTER:**  Yes, Your Honor.  So, the Government has

15  tried to go beyond its discovery obligations.  We filed a

16  response to their motion noting we have done a number of

17  things.  We have produced a subset of hot documents that are

18  viewable on the iPad.  We have also produced documents in what

19  is called text format, which is loadable onto the iPad; so,

20  these e-mail and Slack productions the Defendant can reach --

21  I'm not a technology expert -- but I believe they would also be

22  able to search.

23      And so the request that every document, every scrap of

24  data in this case needs to be converted to a chosen format is

25  without supporting law and it's unreasonable.

1    I will turn it over to AUSA Green to address the Santa

2 Rita issue.

3    **MS. GREEN:**  Yes, Your Honor.  With respect to the

4 internet issue that you have flagged, that what Ms. Bell said

5 is accurate.  So, there is no place in the jail where the

6 inmates have access to the internet.

7    But to Mr. Foster's point, we do understand that the bulk

8 of Defendant's concern here is the e-mail and the Slack

9 productions, which as Mr. Foster said, have been produced in

10 text file format which can be loaded to the iPad; and she can

11 search within those.  So, in terms of access to those

12 documents, she has them in text format.  And, you know, we

13 believe that we have complied with our discovery obligations.

14 The fact that she might prefer them in PDF format versus text

15 file format we don't think is relevant here.

16    **THE COURT:**  Well --

17    **MS. BELL:**  Your Honor, I will --

18    **THE COURT:**  Go ahead.

19    **MS. BELL:**  My apologies.

20    **THE COURT:**  Go ahead.

21    **MS. BELL:**  I will just say that seems to be a point of

22 material disagreement.  I'm certainly not a tech expert either,

23 but based on our extensive communications, both with the

24 Government and with our tech experts, I think we have run to

25 ground the issue that our client does not have physical access

1  to these files in any way that they can be opened on the

2  tablet.  So, we believe that is a --

3       **THE COURT:**  Well, I thought you're using this company

4  Relativity; is that correct?

5       **MS. BELL:**  Yes, Your Honor, correct.

6       **THE COURT:**  Okay.  So, they do have the ability -- at

7  least I thought they did -- of converting them to PDF form by

8  simply pushing a button.

9       **MS. BELL:**  So, Your Honor, yes, the files can be

10  converted.  It's the time and cost to --

11       **THE COURT:**  And I understand that's not the only thing

12  that you are saying.  You are saying they can be converted, but

13  you are saying to be useful they have to be searchable?

14       **MS. BELL:**  Yes, Your Honor.  They have to be

15  searchable across files not just within files given that we are

16  talking about approximately 5 million pages of --

17       **THE COURT:**  Documents.

18       **MS. BELL:**  -- material.

19       **THE COURT:**  All right.  So, why isn't the thing for me

20  to do -- first of all, is to continue with the efforts of

21  production; produce it in whatever is being done, produce it

22  in -- in a form that Relativity can convert it to PDF; and I

23  will have -- I have before me now the bill of particulars --

24  the motion on the bill of particulars, and it strikes me

25  that -- that while I don't have the opposition to it yet, I

1    expect to get it, I guess this week.  Is that when I'm getting

2    it?

3            **MR. FOSTER:**  The 16th, Your Honor.

4            **THE COURT:**  The 16th, whenever that is.  That I will

5    then be able to focus on that.  In the event I grant it, then

6    while we are talking about 5 billion pieces of paper, you know,

7    practically speaking, if, in fact, the bill of particulars

8    addresses, you know, 10 -- 10 incidents or 20 or 30, you are

9    really talking about the paper or the documents related to

10   those 30.

11       Now, I grant you that there may be other documents that

12   you want access to and that you may deem to be relevant; but

13   then, number one, you will have access to it.  In terms of --

14   in terms of its relevance if necessary, we can re-visit it once

15   I decide the bill of particulars motion.

16       I'm just trying to break this down into steps because

17   there is no answer -- I mean, there is the answer.  I mean, the

18   answer is, I suppose, is having the Defendant come to a secured

19   facility on a daily basis and going through hundreds and

20   thousands and millions of documents every day, five days a

21   week, all day.  And that -- that while a person has that right,

22   I can't believe that anybody in their right mind wants that to

23   occur.  It is totally unnecessary.

24       So, I think that the next step for me is to see if it is

25   appropriate to break this down in terms of a bill of

1    particulars.  And then when you look at what are the -- the

2    ABCs of it or the 123s of it, the Government will be in a very

3    good position to say, "Here are the 1,000 documents or 500 or

4    20 related to the 10, 20, 30 particulars and here they are.

5    They are in a usable form.  And if you need access to

6    further -- I mean, meaningful or a -- if you need other

7    documents, you have them but let's discuss it.  Maybe we can --

8    maybe we can accommodate your -- your requirement."

9        And, I mean, I'm not sure that the Government has to agree

10   or not agree or even be advised as to that.  So, we avoid that;

11   but I may, you know -- I would, of course, allow -- I would, of

12   course, allow the Defense to -- to approach the Court in an ex

13   parte proceeding relating to its defense.

14       So, what I'm saying is, like, today is whatever it is.  I

15   don't know that we are quite in the position of making the

16   decisions of how to deal with the policies of, like, Santa Rita

17   and this Court and the CJA funds and who is paying what and

18   what are we looking at and I'm -- by the way, I'm not faulting

19   the Defense for -- the Defense is bringing this because I asked

20   them to.

21       So, I'm not faulting a party.  I'm just trying to figure

22   out am I in a position to help move this thing along.  My

23   answer is not today.  My answer is:  Let me take a look at the

24   scope of the case, what has to be proved and what doesn't,

25   what's in and what's out -- in a global sense or maybe even in

1  a specific sense for some of these things -- and then -- and

2  then I can make some decisions.  We all make decisions.  You

3  know, and that's where I think we go from here.

4       So, unless somebody wants to add something to it, I think

5  I understand the basic arguments; but I need to have some

6  further arguments once I make a determination as to the bill of

7  particulars.

8            MS. BELL:  Your Honor, if I may, yes, we agree that

9  the bill of particulars is implicated by the sheer volume of

10  discovery here and that it would assist us as counsel in

11  narrowing and focusing our work and in potentially helping to

12  direct our clients, but it doesn't obviate the issue that we

13  are bringing to the Court's attention; and I don't think that

14  waiting until the bill of particulars is resolved is going to

15  advance the problems teed up here insofar as any type of file

16  conversion is a very time-consuming process, as the Government

17  has laid out, regardless of who does it.

18       And so, our client's position is that she would like the

19  ability -- we are talking about her own e-mails.  So, even if

20  the Court grants the bill of particulars, given the

21  Government's theory here -- that she caused unlawful

22  prescriptions through policies at her company -- that -- those

23  particulars potentially implicate a broad swath of her

24  communications and the other communications at issue.

25            THE COURT:  Okay.  Let me ask:  Are her e-mails -- in

 1   what form are her e-mails presently?

 2          **MS. BELL:**  They are currently in a form that is not

 3   supported by the tablet.  So, this is addressed in footnote 3,

 4   but the e-mails and Slacks were provided in formats such as

 5   EML, e-mail or MSG, as I understand it.  And all of her text,

 6   app and messaging data were produced as files within Axiom or

 7   Cellebrite.  While we as her, Counsel --

 8          **THE COURT:**  Can -- go ahead.

 9          **MS. BELL:**  We, as her, Counsel, can access those on

10   the Relativity site.

11          **THE COURT:**  Right.

12          **MS. BELL:**  But she cannot access those on her tablet

13   and even if we were --

14          **THE COURT:**  Well, then advise the Court.  Talk to your

15   computer people, the Relativity people, and ask them what would

16   be involved in converting those e-mails to -- to, what's it

17   called, to PDF form.  Ask them -- what it would take in terms

18   of time and effort to convert those to PDF.

19          **MS. BELL:**  And, Your Honor, that is what both parties

20   have done.  The Government's estimate was six to eight weeks

21   just for --

22          **THE COURT:**  Well, I'm not asking what it would take

23   them.  I'm asking you what would your provider take because I

24   have been told that they can do this very quickly by people who

25   are computer experts.  So, I'm getting -- you know, the

1  Government is the Government.  I'm not going to get into -- I'm

2  not running the Government today -- good God.  I mean, please,

3  don't even suggest such a thing -- but you do have -- you do

4  have a company that's assisting you, and my question to you is

5  what -- what does the company say would take them in terms of

6  time in order to --

7          **MS. BELL:**  Yes, Your Honor.

8          **THE COURT:**  -- convert a very narrow group.  And when

9  I say "very narrow," I mean, she may have 50,000 e-mails.  I'm

10 not suggesting they are ten.  What would it take to convert her

11 e-mails to PDF.

12         **MS. BELL:**  So, Your Honor, there are 5 million

13 e-mails, Slacks and text and app messaging data.  There are

14 15 million total documents.  So, the particulars help with the

15 15 million universe.  They do not help from our client's

16 perspective for the 5 million plus that relate to her

17 communications.

18     From what we know from our vendor thus far, it's going to

19 be a multi-week process for us too.  It is not a click of the

20 button given the volume that we are dealing with.  And,

21 Your Honor, a big source of concern here is these productions

22 are forthcoming.  The Government has indicated we are getting

23 another one next week, production 10.  This last week we have

24 gotten over a million pages.  The vast majority of those are

25 e-mails and Slacks.  There is no end in sight to this.

1    The Government has already indicated that there are still

2    outstanding large -- potentially large productions of grand

3    jury material that may implicate the same exact formatting

4    problem and --

5              THE COURT:  All right.  Well, wait.  Time out.  Time

6    out.

7              MS. BELL:  Yes.

8              MR. FOSTER:  Your Honor --

9              THE COURT:  All right.  Fine, okay.  Yes, Mr. Foster.

10             MR. FOSTER:  Thank you.  One thing I would note there

11   is that the documents that Counsel talks about are documents

12   produced by the Defendant's own company that have been given to

13   the Government since these last status hearings.

14       The Government has no -- cannot predict the future of what

15   Defendant's company gives us.  And when they give it to us, we

16   give it directly to the Defendant.  One other interesting thing

17   to note is that Defendant's company recently, without

18   discussing with the Government, started producing in PDF, her

19   chosen format.  Defendant's company is still making millions of

20   dollars a month.  These are not CJA lawyers.  The Government

21   has been reasonable in saying, "We are happy to divide and

22   conquer this problem.  Even if it isn't our obligation under

23   Rule 16, maybe we will convert some into PDF.  You convert

24   others.  Maybe there's some things that don't need to be

25   converted at all because, you know, things on people's phone

1    like calendar announcements, probably not relevant to the

2    case."  And so, we are happy to work with the Defense on these

3    issues.

4            **THE COURT:**  Well, continue to work.  Hopefully there

5    will be in the form of PDF.  I will address the subject again

6    after I address the bill of particulars.  That's -- I mean, I

7    have got to move forward on this, and I have to have a way to

8    move forward on it; and that's the way I have chosen to move

9    forward on it because, again, it's been my experience after

10   25 years that all cases, no matter how complicated they are,

11   have a -- have a -- rely on a totally manageable number of

12   documents, notwithstanding the millions of documents that have

13   been created, they -- the case itself is based on a manageable

14   number.

15           Now, it may be when the day is over, after we figure out

16   what's allowed and what isn't allowed or what the particulars

17   are and so forth, it may be the case is unmanageable.  And then

18   maybe I have to sever counts or maybe do something else.  I

19   don't know but I'm not there yet.  I'm not going to say this

20   case is unmanageable, and I'm not going to say that 5 million,

21   10 million, 20 million documents have to be now reduced to a --

22   to a searchable format because, by the way, number one, I don't

23   know what that would cost; and, number two, I don't know how

24   many months that would take.  You know?

25           **MS. BELL:**  Your Honor --

1        **THE COURT:**  Yeah.

2        **MS. BELL:**  If I may, Your Honor -- and thank you.  We

3    appreciate that.  I would say for Ms. He even though the Court

4    thinks it may sound crazy, I'm confident that if given the

5    opportunity to be transported to a location while this bill of

6    particulars issue is pending to begin the review of these

7    materials, she would accept that gratefully and very much would

8    like to have access to the materials.

9        **THE COURT:**  I'm not doing that.  I'm not doing that.

10   Look, she has created this situation.  She created the

11   custodial situation.  That -- that is entirely her action.  The

12   Government did not.  She did.  And so one of the consequences

13   of doing it is that it makes it more difficult for her to -- to

14   allocate her time and go through documents and so forth in

15   the -- in a way of her choosing.

16       Now, after having said that, it's also clear she can't be

17   prejudiced.  Prejudiced to the sense that it somehow denies her

18   the ability to effectively represent herself -- or be

19   represented, and I'm mindful of that as well.  And that's why I

20   want to work through it.

21       I understand your request.  I understand that you object

22   to the way I am going forward on this, but I am going forward

23   on this the way I said I'm going to go forward on this; and we

24   will take a look at it.  I would -- I would encourage the

25   parties to continue the process of producing documents on a PDF

1  basis.  All right.  Thank you very much.  Appreciate it.

2          **MS. BELL:**  Thank you, Your Honor.  We appreciate your

3  time.

4          **THE COURT:**  Bye-bye.

5          **THE CLERK:**  That concludes this morning's proceedings.

6  Thank you.

7              (Proceedings adjourned at 10:58 a.m.)

8                      ---oOo---

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

DATE:    December 13, 2024

_Marla Knox_
_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter