**WILLKIE FARR & GALLAGHER LLP**
Koren Bell (SBN 268614)
  kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
  mschachter@willkie.com
  sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

**HUESTON HENNIGAN LLP**
Vicki Chou (SBN 248598)
  vchou@hueston.com
523 W 6th St., Suite 400
Los Angeles, CA 90014
T: 213-788-4340
F: 888-775-0898

*Attorneys for Defendant*
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-cr-00329-CRB |
| Plaintiff, | **DEFENDANT RUTHIA HE'S REPLY IN SUPPORT OF HER MOTION TO COMPEL** |
| v. | |
| RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY, | Date:   January 8, 2025<br>Time:   10:00 AM<br>Ctrm:   6 - 17th Floor<br>         Hon. Charles R. Breyer |
| Defendants. | |

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................................................1

    I.    The Court Should Compel the Government To Identify Known *Brady* Material by Bates Number. ..........................................................................................1

    II.    The Government's Argument for Why it Should Not Disclose Its Communications—Including Plea Agreement Negotiations—with Witnesses or Counsel for Witnesses is Unavailing. ....................................................................3

    III.    The Court Should Compel the Government to Disclose Draft Plea Agreements Exchanged with Cooperators' Counsel. ................................................5

    IV.    The Government Should Produce Reverse Proffer Presentations Delivered to Testifying Cooperators. .............................................................................................7

    V.    The Government's Tentative Witness List, Exhibit List, and Proposed Scheduling Order are Inadequate. ...........................................................................7

CONCLUSION .............................................................................................................................8

i

DEFENDANT RUTHIA HE'S REPLY IN SUPPORT OF HER MOTION TO COMPEL
Case No. 3:24-cr-00329-CRB

# TABLE OF AUTHORITIES

**Cases**

*Maxwell v. Roe*,
    628 F.3d 486 (9th Cir. 2010) ...................................................................................................4

*Rhoades v. Henry*,
    638 F.3d 1027 (9th Cir. 2011) .................................................................................................2

*United State. v. Omidi*,
    No. CR 17-661(A)-DMG, 2021 WL 7629896 (C.D. Cal. Sept. 1, 2021) ..............................1, 2

*United States v. Acosta*,
    357 F.Supp.2d 1228 (D. Nev. 2005) ........................................................................................3

*United States v. Ahuja*,
    No. 1:18-cr-00328-KPF (S.D.N.Y. Dec. 20, 2021) .........................................................5, 6, 7

*United States v. Blankenship*,
    No. 5:14–cr–00244, 2015 WL 3687864 (S.D. W. Va. June 12, 2015) ....................................2

*United States v. Buske*,
    No. 09–CR–65, 2011 WL 2912707 (E.D. Wisc. Jul. 18, 2011) ...............................................5

*United States v. Cloud*,
    102 F.4th 968 (9th Cir. 2024) ..................................................................................................3

*United States v. Cutting*,
    No. 14-cr-00139-SI-1, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017) .......................................2

*United States v. Dupuy*,
    760 F.2d 1492 (9th Cir. 1985) .................................................................................................4

*United States v. Hsia*,
    24 F. Supp. 2d 14 (D.D.C. 1998) ............................................................................................2

*United States v. Lynch*,
    No. 3:18-cr-00577-CRB (N.D. Cal. June 30, 2023) ................................................................8

*United States v. Olsen*,
    704 F.3d 1172 (9th Cir. 2013) ..............................................................................................3, 4

*United States v. Saffarinia*,
    424 F. Supp. 3d 46 (D.D.C. 2020) ......................................................................................1, 2

*United States v. Salyer*,
    No. S-10-0061 LKK (GGH), 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010) .......................1, 2

*United States v. Sudikoff*,
    36 F. Supp. 2d 1196 (C.D. Cal. 1999) ..................................................................................3, 4

# ARGUMENT

## I. The Court Should Compel the Government To Identify Known *Brady* Material by Bates Number.

The Government seems to think that it satisfies its *Brady* obligations by producing exculpatory material within a mountain of evidence. To justify its decision not to identify *Brady* material by Bates number, the Government makes much of the fact that Ms. He is represented by "well-resourced firms," who can comb through the millions of pages of documents produced in this case and identify any exculpatory material. (ECF No. 184 at 1, 6, 7.) As an initial matter, the Court should not accept the Government's assumptions about Ms. He's ability to finance her defense. And regardless, the Government's constitutional obligations to disclose exculpatory material do not change based on the defendant's means. *United State. v. Omidi*, No. CR 17-661(A)-DMG, 2021 WL 7629896, at *2 (C.D. Cal. Sept. 1, 2021) (requiring Government to specifically identify known *Brady* material by Bates number given enormous volume of discovery despite the fact that it could not "be reasonably disputed that Defendant Omidi's counsel are well-resourced").

Even if a defendant's resources had some bearing on the Government's *Brady* obligations, Ms. He is not in a better position than the Government to identify exculpatory information. The Government has been investigating this case for years, and Ms. He was only indicted in June. *See Omidi*, 2021 WL 7629896, at *2 ("[T]he Government has had the benefit of several prosecutors and federal agents reviewing the material on a rolling basis over the course of its years-long investigation."); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 88 (D.D.C. 2020) (noting that the Government had the benefit of being able to review the documents over the course of its three-year investigation); *United States v. Salyer*, No. S-10-0061 LKK (GGH), 2010 WL 3036444, at *5 (E.D. Cal. Aug. 2, 2010) ("If the government professes this inability to identify the required information after five *years* of pre-indictment investigation, its argument that the defense can 'easily' identify the materials buried within the mass of documents within *months* of post-indictment activity is meritless.") (emphasis in original).

1    The Government is wrong when it argues that *Brady* does not require it to identify exculpatory information within voluminous amounts of discovery. (ECF. No. 184 at 4.) It relies on *Rhoades v. Henry*, 638 F.3d 1027, 1039 n.12 (9th Cir. 2011), as binding authority in this Circuit for its sweeping assertion. Yet *Rhoades* involved a defendant who requested the Government to pinpoint a particular segment within a single videotape that it had produced. *See id*. at 1039. In contrast, the Government here has produced massive discovery. Its three most recent productions alone, on November 26, December 5, and December 19, contained over 1 million, 4 million, and 1 million pages of material, respectively. Judge Gee, in *Omidi*, held that *Rhodes* was inapplicable in a similar case involving "enormous volume[s] of discovery." *See Omidi*, 2021 WL 7629896, at *2 (C.D. Cal. Sept. 1, 2021). This Court should adopt the reasoning of *Omidi* and the multiple district court cases both inside and outside the Ninth Circuit that have required the Government to specifically identify known *Brady* material to the defendant where it has produced voluminous discovery. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 82–91 (D.D.C. 2020); *United States v. Cutting*, No. 14-cr-00139-SI-1, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017); *United States v. Blankenship*, No. 5:14–cr–00244, 2015 WL 3687864, at *4–6 (S.D. W. Va. June 12, 2015); *Salyer*, 2010 WL 3036444, at *5 (E.D. Cal. Aug. 2, 2010); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998).

The fact that the Government has produced discovery "in an electronic, searchable format," that is indexed also does not relieve the Government of its responsibility to specifically identify *Brady* material produced in a mountain of discovery. (ECF No. 184 a 6.); *see also Saffarinia*, 424 F. Supp. 3d at 82–91 (ordering the Government to identify *Brady* material produced in discovery, despite it being produced "in an electronic and searchable format"). As explained in Ms. He's concurrently-filed Reply in Further Support of Her Motion for a Bill of Particulars, the categories of discovery on the Government's production index are often incredibly broad. For example, the Government has identified one category of discovery as "Grand jury subpoena return from Done Health," which includes email and slack communications for Done's employees and contains **13.2 million pages** of material alone, with Ms. He's communications making up **at least 4.2 million**

*pages of that category*. Searching for exculpatory material here remains like searching for a needle in a haystack, notwithstanding the electronic "searchability" of the productions.

Ms. He is not asking the Government to "independently comb through the discovery" to "prepare both sides of the case at once." (*See* ECF No. 184 at 7.) She merely requests that the Government identify *known Brady* material. If the Government has identified no exculpatory information within its vast productions, it should explicitly say so.

## II. The Government's Argument for Why it Should Not Disclose Its Communications—Including Plea Agreement Negotiations—with Witnesses or Counsel for Witnesses is Unavailing.

The Government contends that Ms. He is not entitled to discovery of plea negotiations or discussions it has had with the attorneys for its witnesses. (ECF No. 184 at 8.) As Ms. He described in her opening brief, at least one district court in this Circuit has required the Government to produce, before trial, "all proffers by any witnesses receiving any benefit, whether immunity or leniency, in return for testimony," including "any proffers made by lawyers for such witnesses," "any notes or documents created by the government that reflect this information," and "any material that indicates any variations in the witness's proffered testimony," as well as "any information in [the Government's] possession that reveals the negotiation process by which the immunity agreement was reached, including materials authored by a witness, a witness's lawyer, or the government." (ECF No. 159 at 7 (quoting *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1206 (C.D. Cal. 1999)).)

Rather than attempt to distinguish *Sudikoff* on its facts, the Government argues that the case is a "departure from the Supreme Court's articulation of the prosecutor's constitutional *Brady* obligations." (ECF No. 184 at 8–9 (quoting *United States v. Acosta*, 357 F.Supp.2d 1228, 1243 (D. Nev. 2005)).) This argument does not hold up. Since *Acosta*, the district court case on which the Government primarily relies in its attempt to undermine *Sudikoff*, the Ninth Circuit has *twice* cited *Sudikoff*'s reasoning with approval. *See United States v. Cloud*, 102 F.4th 968, 979 n.10 (9th Cir. 2024); *United States v. Olsen*, 704 F.3d 1172, 1178 n.3 (9th Cir. 2013).

1    Indeed, to the extent that the Government argues that *Sudikoff* was wrongly decided because the Government must only disclose particular evidence under *Brady* if Ms. He can demonstrate that "the requested evidence might affect the outcome of the trial," it is mistaken. (*See* ECF No. 184 at 9 n.5 (quoting *United States v. Heine*, 314 F.R.D. 498, 504 (D. Or. 2016)).) As the Ninth Circuit cautioned in *Olsen*, "[a] trial prosecutor's speculative prediction about the likely materiality of favorable evidence [ ] should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." *Olsen*, 704 F.3d 1178 at n.3.  As the district court held in *Sudikoff*, communications between the Government and potential witnesses or those witnesses' attorneys tend to be materially impeaching when they reveal variations in proffered testimony, because such variations in a witness's proffered testimony may undermine the witness's credibility. 36 F. Supp. 2d at 1203–04.  Additionally, communications about the plea negotiation process between the Government and a witness and/or the witness's counsel is relevant to the witness's motives to testify. *Id.*  Such communications should be disclosed under *Brady*/*Giglio*.

Additionally, contrary to the Government's position, any "chilling effect" of disclosing communications with a witness or witness's counsel about plea negotiations does not override a defendant's constitutional right to *Brady* material.  The Government only cites to one out-of-circuit case to support its argument that disclosure could lead to a chill in plea deals.  (ECF No. 184 at 10 (citing *United States v. Weaver*, 992 F. Supp. 2d 152, 158 (E.D.N.Y. 2014)).)  The Government's argument is unpersuasive, as the Ninth Circuit has required the Government to disclose to a defendant details of an accomplice's plea negotiations without ever raising any concerns about a speculative "chilling effect" that such a disclosure might have on future plea arrangements. *See Maxwell v. Roe*, 628 F.3d 486, 510-11 (9th Cir. 2010) (holding that "the details of [cooperator's] plea negotiations would have helped to establish [cooperator's] sophistication and directly contradicted the naivete he professed at trial"); *United States v. Dupuy*, 760 F.2d 1492, 1500-03 (9th Cir. 1985) (holding that district court erred in sealing prosecutor's notes about plea negotiations that potentially contained *Brady* material out of a desire to protect the confidentiality

of such negotiations without first reviewing the notes *in camera* to determine whether they should be disclosed to the defense).

### III. The Court Should Compel the Government to Disclose Draft Plea Agreements Exchanged with Cooperators' Counsel.

The Government admits that it exchanged draft plea agreements with counsel for certain cooperating witnesses in this case. (ECF No. 184 at 10.) However, it refuses to disclose if or how those drafts changed as part of the plea negotiation process. This includes whether there were any changes in the plea agreements that reflect discussions between the Government and counsel for cooperating witnesses about the criminal conduct that the witness would admit to the Court, potentially alongside alterations to the plea agreement that constitute benefits to the witness. Although the Government has identified out-of-circuit cases in which courts have refused to compel discovery of draft plea agreements, *see* ECF No. 184 at 10–11, those cases do not support that, as a matter of policy, the Government may withhold from defendants drafts of plea agreements that reflect inconsistencies about what the witness might testify to at trial or suggest that the witness adopted the prosecutor's version of the facts after initially painting a different picture. Indeed, one case cited by the Government recognizes that such information can be discoverable. *See United States v. Buske*, No. 09–CR–65, 2011 WL 2912707, at * 4 (E.D. Wisc. Jul. 18, 2011) (denying motion to compel disclosure of draft plea agreement, but noting that the court "did ask the government to review pertinent communications to see whether counsel for the cooperators made any factual proffers to the government (i.e., about what these witnesses would testify to), noting that those communications could be discoverable").

The Government's attempts to distinguish *United States v. Ahuja*, No. 1:18-cr-00328-KPF (S.D.N.Y. Dec. 20, 2021), ECF No. 457, which found a *Brady* violation based on the Government's failure to disclose draft plea allocutions, is unavailing. First, the Government suggests that the fact that prosecutors interacted directly with the cooperator in *Ahuja* is a distinguishing fact because, in Ms. He's case, the Government has only interacted with cooperators' counsel and not "directly with a cooperator over the content of their allocution."

(ECF No. 184 at 13.) That distinction makes no difference. Indeed, Judge Failla explicitly found improper the Government's failure to disclose draft plea allocutions exchanged between the Government and cooperators' *counsel*. *Ahuja*, No. 1:18-cr-00328-KPF, ECF No. 457 at 26:14-25 ("Both the fact and the content of these communications with cooperators *and their counsel* [about draft plea allocutions] were significant. As to the former, I think it [was] significant that when the cooperating witnesses were thinking about the precise criminal conduct in which they had engaged, they drafted allocutions that accorded with certain defense theories and undermined portions of their trial testimony and the government's theory of the case. As to the latter, the malleability of the cooperating witnesses, plus the fact that the government had a hand in drafting at least two, if not all three allocutions, while not dispositive of any issue at trial, were the proper subjects of cross-examination[.]") (emphasis added).

Second, the Government cherry-picks language from Judge Failla's decision, which states "that there is nothing per se improper in the involvement of prosecutors in drafting, editing, shaping the plea allocutions of its cooperating witnesses." *Id.* at 27:3-5. But the Government ignores the very next sentence, which explains the type of minor involvement that a prosecutor may have that might not necessarily constitute *Brady* or *Giglio* material. *Id.* at 27:5-7. ("An allocution can be inadvertently incorrect as to a date or a place or it can omit an element, like a tie to interstate commerce."). Judge Failla then specifies that:

> [A]llocutions and prosecutors' involvement therewith exist on a continuum, and **I can think of circumstances in which either the fact of the prosecutor's involvement, or the comparison of the before and after allocutions, can constitute appropriate impeachment for the jury.** These include instances in which the prosecutor scripts the allocution in its entirety, or where the cooperator's initial allocution minimizes the cooperator's conduct or suggests that the cooperator does not truly believe himself to be guilty of the offense to which he is pleading, or where the initial allocution contains flat-out false statements. . . . I think it also includes instances in which the prosecutor edits the substance of the allocution in order to preempt arguments that the government knows are at the heart of the trial defendants' defense.

*Id.* at 27:8-23 (emphasis added). In other words, a prosecutor's involvement in editing the substance of the factual predicate in a defendant's guilty plea is material impeachment information that must be turned over to the defense. The Court should therefore adopt the reasoning of *Ahuja* and compel the Government to disclose all draft plea agreements it exchanged with cooperator's counsel that reflect changes to the factual allegations to which the cooperator agreed to plead, or require that the Government confirm that no such drafts were exchanged with cooperator's counsel.

### IV. The Government Should Produce Reverse Proffer Presentations Delivered to Testifying Cooperators.

The Government should produce reverse proffer presentations that it has shown to cooperating witnesses. It is Ms. He's understanding that the Government now intends to produce such reverse proffer presentations. (*See* ECF No. 184 at 14 (noting that "the Government will . . . voluntarily produce the contents of reverse proffer presentations that were shown directly to cooperating witnesses in an abundance of caution").) To the extent that the Government does not produce such reverse proffer session presentations, Ms. He requests that Court compel the Government to do so for the reasons stated in her opening brief in support of this motion. (*See* ECF No. 159 at 10–12.)

### V. The Government's Tentative Witness List, Exhibit List, and Proposed Scheduling Order are Inadequate.

For the reasons described in Ms. He's Reply in Further Support of Her Motion for A Bill of Particulars, she objects to Government's witness list and "appendix identifying key documents," (ECF No. 184 at 15), as inadequate to allow her to provide the Court with an educated estimate of how long it would reasonably take to prepare for trial, given the immense volume of discovery and the broad allegations. The Government has estimated that its case would take 10 to 15 trial days. The 60-person witness list it has disclosed in its opposition to Ms. He's Bill of Particulars Motion cannot possibly reflect the narrow case the Government expects to try in that time frame. Additionally, the Government does not clarify whether the "key documents" appendix it provides

constitutes all the exhibits it intends to introduce at trial or only a fraction of its exhibit list.

Additionally Ms. He objects to the timelines and structure of the Government's proposed scheduling order, including because it contemplates *simultaneous* exchange of exhibit and witness lists. Once the Court sets a trial date, Ms. He requests a schedule that tracks its scheduling order in the *Lynch* case, which did not require defendants to serve their exhibit and witness lists before the commencement of trial. Scheduling Order, *United States v. Lynch*, No. 3:18-cr-00577-CRB (N.D. Cal. June 30, 2023), ECF No. 192.

## CONCLUSION

For the reasons stated herein, Ms. He respectfully requests that the court grant the relief she requested in her Motion to Compel, ECF No. 159.

Dated: December 27, 2024         WILLKIE FARR & GALLAGHER LLP

By: */s/ Koren Bell*
Koren Bell
Michael S. Schachter
Steven J. Ballew

HUESTON HENNIGAN LLP

Vicki Chou

*Attorneys for Defendant*
RUTHIA HE