HICKEY & CHUNG, LLP
Naomi Chung (SBN 283743)
Brendan Hickey (SBN 261794)
　chung@defender.law
　hickey@defender.law
Pier 9, Suite 100
San Francisco, CA  94111
T: (415) 942-9000
F: (415) 484-7054

TAMARA CREPET LAW
Tamara A. Crepet (SBN 277408)
Pier 9, Suite 100
San Francisco, CA 94111
T: (415) 517-3496

Attorneys for Defendant
DAVID BRODY

WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
　kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: (310) 855-3016
F: (310) 855-3099

Michael S. Schachter (*Pro Hac Vice*)
　mschachter@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: (212) 728-8102
F: (917) 656-0462

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DAVID BRODY,<br><br>　　　　Defendant. | Case No. 24-CR-329-CRB<br><br>**REPLY TO GOVERNMENT OPPOSITION [ECF 183] TO DEFENDANTS' JOINT MOTION FOR SEVERANCE [ECF 160]** |

## INTRODUCTION

On December 4, 2024, Defendants Ruthia He and David Brody jointly moved this Court for severance on the grounds that (1) the conflict between Ms. He's right to a speedy trial and Dr. Brody's

right to mount a defense with the effective assistance of counsel warranted severance, and (2) they anticipated presenting antagonistic defenses. ECF 160. On December 16, 2024, the government opposed Defendants' motion primarily arguing that (1) Ms. He had not exercised her speedy trial right and that even if she had the law favored Dr. Brody's right to effective assistance of counsel, and (2) Ms. He's and Dr. Brody's anticipated defenses were not so antagonistic that "the defense of one defendant would rely on arguing the other should be convicted." ECF 183 at 1. The defendants respectfully submit their reply below.

## ARGUMENT

**I.  The Conflict Between Ms. He's Right to a Speedy Trial and Dr. Brody's Right to Effective Preparation Warrants Severance.**

As the Court has acknowledged, unlike Dr. Brody, Ms. He remains in custody and desires the speediest possible trial, even if such a trial date is earlier than what is necessary for Dr. Brody's counsel to prepare a constitutionally adequate defense for their client. *See*, *e.g*., Nov. 6 Tr. at 6:12-16 ("Well, the defendant's in custody."); *id.* at 10:9-12 ("[T]his case is not going to take a lifetime to try . . . And especially, the defendant's in custody and the defendant's presumed to be innocent."); Dec. 4 Tr. at 4:5-11 ("Ruthia He is in custody. One defendant is in custody; one is not."); *id*. at 14:19-25 ("[W]e don't sit around and wait till Lawyer X . . .when they're available to try the case. I don't. And I especially don't if a co-defendant is in custody."); *id*. at 15:14-16 ("I'm not going to justify it on the basis of your calendar against a defendant in custody who is prepared to go to trial."); *id*. at 20:4-6 ("But here, I have a defendant in custody and that is of concern to me."); *id*. 27:2-5 (". . . we have a defendant in custody.").

The Government's solution is to propose a trial date in "May, June, or July 2025 (or a later date in 2025 if the Court deems that necessary based on sealed *ex parte* submissions by Defendant Brody's counsel)." ECF 183 at 4. The Government's solution, which is based almost entirely on Dr. Brody's right to prepare an adequate defense, takes insufficient account of Ms. He's equally important constitutional right to a speedy trial.

In its Opposition, the Government attempts to downplay the urgency of Ms. He's detention and wish for the speediest possible trial by relying on case law that is inapposite to and distinguishable from

the instant matter.  For instance, the defendants in many of these cases had caused the delay of their own trials by requesting multiple continuances, substituting counsel halfway through the proceedings, or resisting efforts to be tried in the United States—none of which apply to Ms. He.[1]  In fact, only one case cited by the Government in Section III(A)(1) of the Opposition (ECF 183 at 4-7) includes any discussion of a defendant's pretrial detention where the defendant was not the cause of delay by, for example, requesting a continuance.  *See United States v. Smith*, 494 F. Supp. 3d 772, 785 (E.D. Cal. Oct. 14, 2020) (ECF 183 at 6).  In that case, the court found that a nine-month pretrial custody period was "presumptively prejudicial," but delay of trial was justified specifically because of the unique risk posed by the COVID-19 pandemic in 2020 and the court's subsequent "inability to safely conduct a jury trial." *Id*.  (finding that delay was justified and imposed in good faith because "[t]he Court cannot hold a jury trial at the present time without putting the public, the parties, court staff and the attorneys at substantial risk").  Such extraordinary circumstances do not exist here and therefore should not warrant the denial of Ms. He's right to a speedy trial as she remains in custody.

> Dr. Brody has the right to a constitutionally adequate defense.  He should not be required to forgo his right to present the defense of his choice with counsel of his choosing to prepare for a trial on an unprecedented timeline for a case of this scope and complexity; nor does the law require him to do so.

---

[1] *See*, *e.g.*, *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding that the reasons for the delay, i.e., the "focal point of the [Sixth Amendment] inquiry," included numerous continuances granted at the defendant's request and the substitution of defendant's attorney halfway through the proceedings, neither of which apply to Ms. He); *United States v. Tanh Huu Lam*, 251 F.3d 852, 856-57 (9th Cir. 2001) (finding that the reasons for delay "rested squarely on the shoulders" of defendant's trial counsel, who requested every continuance in the case); *Page v. Lockyer*, 200 Fed. Appx. 727, 728 (9th Cir. 2006) (finding that defendant was responsible for the delay because defendant had requested every continuance); *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (finding that defendant was responsible for the delay because he "resisted all efforts to bring him to the United States" and "forc[ed] the government to run the gauntlet of obtaining formal extradition"); *United States v. Nance,* 666 F.2d 353, 360 (9th Cir. 1982) (relating to a delay of only five months between indictment and trial, which Ms. He has already surpassed in pretrial detention); *United States v. Annerino,* 495 F.2d 1159, 1163 (9th Cir. 1974) (finding that delay was caused by co-defendant counsel's unavailability due to an unforeseeable external circumstance, i.e., a heart attack, which differs from the reasons in the instant case); *United States v. Moheb*, No. 22-CR-00132 (JSW), 2022 WL 3215003, at *3 (N.D. Cal. Aug. 9, 2022) (finding that delay was caused by the unavailability of co-defendant's counsel, which does not apply to Ms. He or Dr. Brody's counsel).

REPLY TO GOVERNMENT OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE
CR-24-329-CRB

1. *United States v. Messer*, 197 F.3d 330, 336 (9th Cir. 1999) (stating that provided the delay is reasonable, "[i]t is well established that an exclusion from the Speedy Trial Clock for one defendant applies to all codefendants"). This is especially so because Ms. He has not yet exercised her speedy trial rights, *see* ECF 23, 31, 40, 102, 130, 149, 166 (Ms. He exclusions of time), making trial a year from now or even eighteen months from now well within what is considered reasonable. *See United States v. Tanh Huu Lam*, 251 F.3d 852, 860 (9th Cir. 2001) (finding that where fourteen-and-a-half-month delay was in part attributable to defendant's exclusions of time, there was no speedy trial act violation), *United States v. Lonich*, 23 F.4th 881, 895 (9th Cir. 2022), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (stating that where defendant agreed to a trial date three years after case was indicted to effectively prepare, the *additional* seven-month delay caused by the filing of a superseding indictment did not violate his speedy trial rights) (emphasis added); *see also United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (finding that a 22-month delay "was not excessively long"). Moreover, while courts can consider a defendant's custodial status in assessing whether a speedy trial act violation has occurred, *Messer*, 197 F.3d at 338, the context here is different: Ms. He had the opportunity to be released but was remanded through her own malfeasance. *See* ECF 118, 119.

   Indeed, the development of a constitutionally adequate defense for Dr. Brody will require considerable time and resources, especially because he is not a typical physician nor is this a typical pill mill prosecution. Rather, Dr. Brody, by virtue of his Clinical President title, is in the position of having to defend his motive for creating the company, the company policies and practices at issue, the company's structure, his role at the company and the work he performed there apart from issuing refill prescriptions, his relationships with other Done employees, and his relationship with co-defendant He. Defending his case will be far more witness and document-intensive than if the charges flowed from a handful, or even thousands of allegedly unauthorized prescriptions. Dr. Brody, as detailed in his *ex parte* under seal declaration, would be deprived his right to present a constitutionally adequate defense with the effective assistance of counsel, were his trial to be set any earlier than December 2025. While he estimated a trial readiness date of December 2025 at the Court's request, it is too premature for him to

REPLY TO GOVERNMENT OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE
CR-24-329-CRB

4

evaluate when a trial date can be set.

A criminal defendant has a right to counsel who will "bear [their] skill and knowledge as *will render the trial a reliable adversarial testing process*." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (internal citation omitted). In order for counsel to satisfy this obligation, they must conduct an adequate investigation. *Strickland*, 466 U.S. at 690-91 ("[s]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on the investigation."). Where counsel do not have the time to adequately investigate and prepare for trial, a defendant's right to counsel is "an empty formality." *United States v. Verderame*, 51 F.3d 249, 252 (11th Cir. 1995) (reversing and remanding where trial court failed to give defense counsel adequate time to prepare for trial); *Gandy*, 569 F.2d at 1328 (same); *Schwarz v. United States*, 828 F. App'x 628, 632 (11th Cir. 2020) (unpublished) (vacating and remanding where trial court failed to give defense counsel, who immediately moved for more time, adequate time to prepare for trial where the discovery included three terabytes of data).

Dr. Brody needs adequate time to effectively prepare for a document-heavy case of this complexity. Even in exercising diligence, his defense team cannot proceed to trial on a case with 11 terabytes of discovery, including millions of relevant emails and slack messages, 2 *outstanding* terabytes of discovery from Ms. He's electronic devices, an *unknown quantity of outstanding* company documents, 150 witnesses interview reports, and more than 60 noticed government witnesses, ECF 187, ex. 6, on Ms. He's timeline. Dr. Brody also anticipates litigating his entitlement to documents in accord with the discovery protocol, ECF 144, which will take a minimum of four months. And while Dr. Brody appreciates the Court's indication that it will require the government to narrow its case,[2] this does not relieve his counsel of the duty to investigate and identify exculpatory material from within a tremendous body of material, develop impeachment information from his same pool, and conduct defense witness interviews beyond those produced by the government. Indeed, aspects of Dr. Brody's defense will

---

[2] For instance, it will help if government were to circumscribe the number of prescriptions at issue (particularly with respect to the conspiracy count), delineate the alleged fraudulent misrepresentations, and identify to whom it refers in place of vague references to actions taken by "Done."

REPLY TO GOVERNMENT OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE
CR-24-329-CRB

operate independently of the government's presentation, and in accord with the tenants of *Strickland*, counsel have a duty to investigate to present the defense of Dr. Brody's choosing.[3]

The time Dr. Brody requests is reasonable and consistent with the time afforded other defense attorneys around the country who are defending healthcare fraud cases with the complication of discovery protocols. In fact, Dr. Brody has not identified any comparable case that has proceeded to trial less than approximately seventeen months after the filings of charges, even where some defendants were in custody. In *United States v. Weaver*, 19-CR-527-ODW (C.D. Cal. 2019), the indictment issued on September 11, 2019. ECF 1. One of the defendants was remanded to custody after violating the conditions of her bond on July 10, 2020, ECF 193, and the trial is presently set for March 18, 2025—more than five years after the case was charged, ECF 606. In *United States v. Carver,* 22-CR-80022-DSL (S.D. Fla. 2022), the indictment issued on February 24, 2022, ECF 23, one of the defendants was held in custody, ECF 251, and his case was not tried until nearly seventeen months later, on July 10, 2023, ECF 690. *See also*, *United States v. Blackman,* 23-cr-20271-DSL, ECF 1, 131 (S.D. Fla. 2023) (defendants not in custody, indictment issued 6/27/23, case set for trial on 5/520/25); *United States v. Hansen*, 21-cr-00063-DLB, ECF 1, 239 (E.D. Ky. 2021) (defendants not in custody, indictment issued 11/18/21, trial held on 6/17/24). In line with these cases, Dr. Brody requests that he be afforded a reasonable amount of time to subject the government's case to a reliable adversarial testing process.

## II. Without Severance, Ms. He and Dr. Brody will be Prejudiced by their Mutually Antagonistic Defenses

The government opposes severance on the grounds that Ms. He's and Dr. Brody's defenses are not irreconcilable. The government specifically contends that a jury could believe the defenses of both

---

[3] Dr. Brody files the declaration of his counsel *ex parte* under seal, as it reveals sensitive trial strategy that should not be disclosed to the government or co-defendant counsel. Such *ex parte* sealed filings are appropriate in a motion seeking severance. *See, e.g.,* Order re Severance of Trials, *United States v. Holmes*, 5:18-cr-00258-EJD, ECF 362 (N.D. Cal. March 20, 2020)(granting severance after defendant submitted sealed affidavit disclosing trial strategy); *United States v. Carona*, No. SA CR 06-224-AG, 2008 WL 1970221, at *1, *3 (C. D. Cal. May 2, 2008) (granting severance after *in camera* review of defendant's "declaration describing the nature of the testimony which she would seek to present in her defense").

REPLY TO GOVERNMENT OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE
CR-24-329-CRB

defendants, thereby acquitting them both. ECF 183 at 16. But there is no doubt that Ms. He and Dr. Brody will have mutually antagonistic defenses at trial, with each arguing that he or she was intentionally deceived by the other. Every time the government describes Ms. He as a corporate dictator who impermissibly crafted and enforced clinical policies intended to maximize profits at the cost of patient care, Dr. Brody's counsel will agree, turning him into a second prosecutor into the case against Ms. He. And even where the government may not be so inclined, Dr. Brody's defense anticipates presenting documentary and testimonial evidence establishing that Ms. He targeted him from the outset, preyed on his vulnerabilities, concealed her true intentions and unlawful conduct, undercut his efforts to implement patient-first policies, cultivated a toxic company culture intended to silence any who opposed her agenda, and obstructed justice to protect herself. In this way, Dr. Brody's defense is contingent on the jury concluding that Ms. He should be convicted of the offenses alleged by the government, as she conspired with others in the company against Dr. Brody.

In the same vein, Ms. He intends to point the finger at Dr. Brody. ECF 160 at 4. She will demonstrate that she relied on Dr. Brody, a decorated physician, and other experts with the medical background, training, and experience she lacked, to ensure that Done's policies were consistent with the exercise of clinicians' independent professional judgment to issue prescriptions lawfully during the period of the alleged conspiracy. It is not just that Ms. He intends not to defend Dr. Brody's prescribing or policy decisions. Ms. He will look to leverage the Government's position that his prescriptions—including the two specifically alleged to be unlawful in Counts 2 and 5—were in fact unauthorized, and that the Done policies he recommended or approved resulted in his violating his Hippocratic Oath, to demonstrate her corresponding lack of requisite knowledge or intent that Dr. Brody or any other clinician would issue prescriptions without a medical purpose and outside the course of their ordinary professional practice. In this way, Ms. He anticipates that she will seek to align herself with the Government's case against Dr. Brody in order to underscore the fatal deficiencies in the proof as to her.

Where mutually antagonistic defenses are set forth as in the present case, the Ninth Circuit has acknowledged that "in order to zealously represent his client, each codefendant's counsel must do

everything possible to convict the other defendant" which results in an "extra prosecutor," who is not bound by the same rules that apply to the government. *Tootick*, 952 F.2d at 1082. The troubling consequences of defending against an "extra prosecutor" should not minimized. The "opening statements can become a forum in which gruesome and outlandish tales are told about the exclusive guilt of the 'other,'" unchecked by the government even if they are later unsubstantiated by the evidence. *Id.* The "cross-examination of the defendant's witnesses provides [the codefendant with] further opportunities for impeachment and the ability to undermine the defendant's case" thereby turning the codefendant's case "into a separate forum in which the defendant is accused and tried." *Id.* Relatedly, the "cross-examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant or to help rehabilitate a witness that has been impeached." *Id.* And of course, "evidence having the effect of exonerating one defendant implicitly indicts the other" forcing each defendant to defend against not only the government's case against him, but also "the negative effects of the codefendant's case." *Id*. As such, Ms. He and Dr. Brody expect nothing short of a blood bath in a joint trial. Especially where it is untenable for the jury to believe Ms. He maliciously undercut Dr. Brody's attempts to implement clinically-sound policies, while also believing that she reasonably relied on Dr. Brody's clinical expertise and decision to implement policies not in contravention to the law. *Cf. United States v. Zafrio*, 506 U.S. 534, 542-43 (1993) (Stevens ,J. concurring) (stating that defenses were not mutually antagonistic where the jury could have acquitted all defendants), *United States v. Throckmorton*, 87 F.3d 1069, 1072 (1996) (holding that defenses were not mutually exclusive where one defendant argued insufficiency of the evidence and the other argued he was a confidential informant), *United States v. Cheeves*, 2010 WL 1260808 at *3 (March 29, 2010) (Breyer, J.) (holding that defenses were not mutually antagonistic because the jury could have found a third party guilty of the alleged offense and defendants' defenses did not present a "zero-sum game"), *United States v. Anderson*, 36 Fed. App'x 325, 326 (9th Cir. 2002) (unpublished) (holding that a jury could have determined that both defendants lacked the requisite *mens rea*).

    Additionally, while critical discovery remains outstanding, Dr. Brody is already aware of

documents that he will seek to introduce at trial that exculpate him and inculpate Ms. He.  Dr. Brody further anticipates that Ms. He will move to exclude these documents. *Zafrio*, 506 U.S. at 539 ("a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial").

## CONCLUSION

Based on the foregoing authorities and arguments, Ms. He and Dr. Brody respectfully request that this Court grant their motion for severance.

Respectfully submitted,

Dated:   December 27, 2024

HICKEY & CHUNG LLP
TAMARA CREPET LAW

By:   _____/s/_____
Naomi Chung
Brendan Hickey
Tamara Crepet

Attorneys for Defendant
DAVID BRODY


WILLKIE FARR & GALLAGHER LLP

By:   _____/s/_____
Koren Bell
Michael S. Schachter
Steven J. Ballew
Michael Morizono

*Attorneys for Defendant*
*RUTHIA HE*

REPLY TO GOVERNMENT OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SEVERANCE
CR-24-329-CRB