WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
mschachter@willkie.com
sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE**<br><br>DATE: September 9, 2025<br>TIME: 2:00PM<br>Courtroom 6—17th Floor<br>Hon. Charles R. Breyer |

# TABLE OF CONTENTS


Page

INTRODUCTION ....................................................................................................1

ARGUMENT ........................................................................................................1

I. THE GOVERNMENT'S FIRST MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................1

II. THE GOVERNMENT'S SECOND MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................1

III. THE GOVERNMENT'S THIRD MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................2

IV. THE GOVERNMENT'S FOURTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................3

V. THE GOVERNMENT'S FIFTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................4

A. The Government Fails Even To Attempt To Meet Its Threshold Burden Of Proof For Rule 801(d)(2)(e) ....................................................5

B. The Proffered Statements Fail On Their Face To Meet Rule 801(d)(2)(e)'s "In Furtherance" Requirement. ..........................................7

VI. THE GOVERNMENT'S SIXTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................9

VII. THE GOVERNMENT'S SEVENTH MOTION IN LIMINE SHOULD BE DENIED ....................................................................................................11

VIII. THE GOVERNMENT'S EIGHTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................12

IX. THE GOVERNMENT'S NINTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................12

X. THE GOVERNMENT'S TENTH MOTION IN LIMINE SHOULD BE DENIED. ....................................................................................................13

XI. THE GOVERNMENT'S ELEVENTH MOTION IN LIMINE SHOULD BE DENIED ....................................................................................................14

XII. THE GOVERNMENT'S TWELFTH MOTION IN LIMINE SHOULD BE DENIED ....................................................................................................14

XIII. THE GOVERNMENT'S THIRTEENTH MOTION IN LIMINE SHOULD BE DENIED. ....14

XIV. THE GOVERNMENT'S FOURTEENTH MOTION IN LIMINE SHOULD BE DENIED. ....14

XV. THE GOVERNMENT'S FIFTEENTH MOTION IN LIMINE SHOULD BE DENIED....15

XVI. THE GOVERNMENT'S SIXTEENTH MOTION IN LIMINE SHOULD BE DENIED....15

CONCLUSION....15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl.-Pacific Constr. Co. v. NLRB*,
52 F.3d 260 (9th Cir. 1995) ....................10

*Fischer v. United States*,
603 U.S. 480 (2024)....................7, 8

*Henry v. Adventist Health Castle Med. Ctr.*,
970 F.3d 1126 (9th Cir. 2020) ....................4

*Interstate Circuit, Inc. v. United States*,
306 U.S. 208 (1939)....................11

*Jackson v. Fed. Express*,
No. CV1001760MMMCWX, 2011 WL 13268046 (C.D. Cal. May 11, 2011)....................3

*Merrick v. Farmers Ins. Grp.*,
892 F.2d 1434 (9th Cir. 1990) ....................4

*Pac. Steel Grp. v. Com. Metals Co.*,
No. 20-CV-07683-HSG, 2024 WL 4546317 (N.D. Cal. Oct. 22, 2024) ....................6

*Ruan v. United States*,
597 U.S. 450 (2022)....................6, 7, 14

*Stewart v. Wachowski*,
574 F.Supp.2d 1074 (C.D. Ca. 2005) ....................3

*United States v. Balwani*,
No. 5:18-CR-00258-EJD-1, 2022 WL 597040 (N.D. Cal. Feb. 28, 2022)....................3

*United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010) ....................4

*United States v. Brown*,
562 F.2d 1144 (9th Cir. 1977) ....................10

*United States v. Dimora*,
750 F.3d 619 (6th Cir. 2014) ....................12

*United States v. Garcia-Villanueva*,
855 F.2d 863 (9th Cir. 1988) ....................10

*United States v. Lara*,
Case No. 15-cr-00039, 2018 U.S. Dist. LEXIS 39281 (E.D. Cal. Mar. 8, 2018)....................12

*United States v. Marrero*,
904 F.2d 215 (5th Cir. 1990) ....................12

*United States v. Miller*,
874 F.2d 1255 (9th Cir. 1989) ....................10

*United States v. Nazemian*,
948 F.2d 522 (9th Cir. 1991) ....................8

*United States v. Perez*,
658 F.2d 654 (9th Cir. 1981) ....................5, 6

*United States v. Saelee*,
51 F.4th 327 (9th Cir. 2022) ....................5

*United States v. Shaw*,
No. CR 14-00338(4)-SJO, 2018 WL 9649494 (C.D. Cal. Feb. 5, 2018) ....................6

*United States v. Williams*,
No. 3:13-CR-00764-WHO-1, 2017 WL 4310712 (N.D. Cal. Sept. 28, 2017) ....................9

*United States v. Young*,
463 F.2d 934 (D.C. Cir. 1972) ....................11

**Statutes**

18 U.S.C. § 1512 ....................7, 8

21 U.S.C. § 841 ....................7

**Other Authorities**

2 McCormick on Evid. § 274 (7th ed.) ....................10

2 Wigmore on Evidence § 285 (Chadbourn rev. 1979) ....................11

Fed. R. Evid. § 104 ....................3

Fed. R. Evid. § 404 ....................7

Fed. R. Evid. § 801 .................... *passim*

Fed. R. Evid. § 803 ....................10

**INTRODUCTION**

Ms. He opposes the sixteen motions *in limine* submitted by the Government on July 29, 2025, for the reasons discussed below. *See* ECF No. 319 ("Mot." or "Motion").

**ARGUMENT**

**I. THE GOVERNMENT'S FIRST MOTION IN LIMINE SHOULD BE DENIED.**

The Government's first motion *in limine* is unnecessary and premature and should be denied on those grounds. *See* Mot. at 2-3. Defense counsel is well-aware of the law concerning references in front of the jury to punishment and/or the length of a potential sentence. It has no intention of violating that law. Moreover, Ms. He does not agree that statements as vague as "this case has serious consequences for the defendant" during jury arguments should be precluded. *Id.* at 3. The Government did not cite, and Ms. He has not been able to find, *any* case where a court held that a general statement along those lines constituted inappropriate jury argument. *See generally id.* at 2-3. In fact, in defense counsel's experience, it is common for both the prosecutors and defense counsel, as well as the Court itself, to explain to the jury that their attention and focus is important precisely because the "consequences" of the jury's verdict matter. In any event, defense counsel fully intends to comply with the law and the Rules of Evidence during its jury addresses and should the Government have an objection to any particular statements, believes that the Government can raise the objection then, rather than asking the Court to issue premature, pre-emptive rulings, divorced from any context.

**II. THE GOVERNMENT'S SECOND MOTION IN LIMINE SHOULD BE DENIED.**

The Government's second motion *in limine* is contingent upon Defendants "fail[ing] to properly comply" with the Court's "advice of counsel" disclosure deadline of September 15, 2025. Mot. at 3-5. Ms. He has no intention of "failing to properly comply" with any Court-ordered deadline. *Id.* at 3. As such, the Court should deny this motion *in limine* as unnecessary and premature.

## III. THE GOVERNMENT'S THIRD MOTION IN LIMINE SHOULD BE DENIED

The Government's third motion *in limine* should be denied. *See* Mot. at 5-7. Ms. He has no intention of arguing that the Government's investigation or charging decisions were unduly influenced by the input of journalists, including those at the Wall Street Journal, Bloomberg, the New York Times, and the Washington Post, *id.* at 5, or arguing that "other individuals or entities should have been charged in a like manner as Defendants," *id*. at 6, and so these portions of the motion should be denied, as moot.

The Court, however, should not preclude Defendants from "presenting information to the jury about the absence of criminal charges against employees of Done's competitors, such as Cerebral and Ahead," *id*. at 5, because this evidence is directly relevant to contradicting the Government's "consciousness of guilt" evidence. In particular, the Government claims, for example, that it should be permitted to admit evidence that, after the end of the alleged drug-trafficking conspiracy charged in the Indictment, and in order to "evade arrest," Ms. He booked a one-way plane ticket back to Asia. *See* ECF. No. 316-4 Ex. Z at ¶ A (Government's July 29, 2025 supplemental 404(b) notice). Of course, on the day that Ms. He was scheduled to travel, she was contacted by Government agents, who "asked" her to stay in the country and she *agreed* to do so, so the Government's claim that she was somehow trying to "flee" does not make much sense to begin with. But, in refuting the Government's argument that the "reason" for Ms. He's travel was to evade arrest in the United States, it is important that Ms. He be able to demonstrate that in fact, she did *not* book her flight for this reason, because she did not think she was going to be arrested. Part of the reason for Ms. He's confidence on this point was the fact that she knew that similar telehealth companies to Done, including Cerebral, had, like Done, received grand jury subpoenas but *no one* from those companies had ever been arrested.

If the Government does not plan to introduce consciousness of guilt evidence, Ms. He will not need to make this argument, but to the extent that the Government opens the door, the Court should not preclude Ms. He from defending herself against the Government's incorrect assertions about her state of mind. Thus, the Court should not issue any preclusion order at this time.

## IV. THE GOVERNMENT'S FOURTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's fourth motion *in limine*, to admit the statements of "myriad" Done "employees" as "agent" admissions, pursuant to Federal Rule of Evidence 801(d)(2)(D), should be denied. *See* Mot. at 7-8. FRE 801(d)(2)(d) requires the proffering party to show, "by substantial evidence, (1) that an agency relationship . . . existed, (2) that [the declarant's] statements were made during the course of that relationship, and (3) that the statements concerned matters within the scope of [the declarant's] agency." *Stewart v. Wachowski*, 574 F.Supp.2d 1074, 1095 (C.D. Ca. 2005) ("The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence.") (citation omitted); *Jackson v. Fed. Express*, No. CV1001760MMMCWX, 2011 WL 13268046, at *11 n.108 (C.D. Cal. May 11, 2011) (sustaining hearsay objection to statements offered under FRE 801(d)(2)(C)-(D) because the proponent failed to meet its burden to demonstrate that the declarant made the statement within the scope of an agency relationship).

The Government has failed to meet this burden. As an initial matter, the Government has not identified for the Court any of the "employees" or any of the "statements" that it is asking the Court to admit. *See generally* Mot. In other words, it is impossible for the Court to grant the Government the relief it seeks, because it is impossible for the Court to determine that the "statements" at issue—whatever they are—satisfy FRE 801(d)(2)(d)'s standards.

In any event, the Government is simply wrong when it argues that statements of "myriad" Done medical providers constitute "agent" statements that can be admitted against Ms. He. Mot. at 7. The federal Rule is not so broad that "any" statement by "any" employee is automatically admissible against the head of company. *See United States v. Balwani*, No. 5:18-CR-00258-EJD-1, 2022 WL 597040, at *25 (N.D. Cal. Feb. 28, 2022) (holding "Balwani's position at the top of Theranos' organizational chart alone is insufficient to establish the admissibility of statements made by any of the 160-plus employees working in Theranos' lab" under 801(d)(2)(D) and deferring ruling on Government's MIL to "admit statements by Theranos employees" as agent

admissions "pending the Government's establishment of the necessary foundation for the evidence it seeks to introduce").

Furthermore, the medical providers that worked at Done were not employees but rather *independent contractors* of Done Health, P.C.—a company that Ms. He held zero ownership in—and, as the Ninth Circuit has held, "unlike employees, *independent contractors are not ordinarily agents*." *United States v. Bonds*, 608 F.3d 495, 503 (9th Cir. 2010) (excluding statements from athletic trainer who took Barry Bond's urine samples for steroid testing because he "was an independent contractor, rather than an employee"); *see also Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1440 (9th Cir. 1990) (excluding statements because proponent "did not establish that the [declarants] were 'agents' of the [party opponent] as opposed to independent contractors; nor did [the proponent] show that [the declarants'] statements . . . concerned a matter within the scope of their agency"); *see also* Declaration of Koren Bell ("Bell Decl."), Ex. D (exemplar contract of a Done medical provider).

In 2020, the Ninth Circuit considered whether a medical professional—a surgeon—who was identified as an independent contractor in contractual documents constituted an "agent" of the medical center where he worked. *See Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1130 (9th Cir. 2020). The Ninth Circuit confirmed that the surgeon was *not* an "agent" of the medical center, because among other reasons, his contract described him as an independent contractor, he did not receive any benefits, he was free to see patients at other locations and did not receive a uniform salary. *Id.* The Done provider contracts demonstrate these *same* characteristics, including clear language confirming that the providers are "independent contractors," do *not* receive any benefits, and are free to practice medicine and to see patients in other locations. *See* Bell Decl., Ex. D at 1, § B; *see also id.* at §10(a)-(c). Because the professionals who worked at Done were *not* "agents" of Ms. He, the Government's motion should be denied.

## V. THE GOVERNMENT'S FIFTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's fifth motion *in limine*, in which it asks the Court to batch-admit more than 110 purported co-conspirator "statements," pursuant to Federal Rule of Evidence

801(d)(2)(e), should be denied. *See* Mot. at 8-14. At a minimum, the Government's request is wildly premature: the Government did not even attach its list of "statements" to its brief and certainly has not provided the Court with the actual documents and emails from which these statements were pulled—meaning that the Government appears to be asking the Court to simply admit, sight unseen, a vast swath of controversial evidence, based solely on the Government's "assurance" that the "statements" satisfy Rule 801(d)(2)(e)'s requirements. That is improper. The Court cannot grant the Government's request without abdicating its own independent responsibilities to evaluate and ensure that only competent and admissible evidence is presented to the jury.

### A. <u>The Government Fails Even To Attempt To Meet Its Threshold Burden Of Proof For Rule 801(d)(2)(e)</u>

First, as the Government concedes, a statement of a purported co-conspirator is admissible against a defendant *only* if the Government can show—by a preponderance of the evidence—that: (1) a conspiracy existed at the time of the statement; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy when the hearsay statement was made; and (3) the statement was made in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *United States v. Perez*, 658 F.2d 654, 658 (9th Cir. 1981) (emphasis added) ("Federal Rule of Evidence 801(d)(2)(E) requires proof of three elements: (1) that the declaration be in furtherance of the conspiracy; (2) that the declaration be made during the course of the conspiracy; and (3) that there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant with it"). It is, as the Government admits, the Government's burden to prove each of these requirements, with respect to each and every "statement" that it wishes to admit under this Rule.

Further, the Government must prove "a *prima facie* case" establishing the existence of a conspiracy and the defendant and declarant's membership in the conspiracy at the time each statement was made "through the introduction of *substantial independent evidence other than the contested hearsay*." *Perez*, 654 F.2d at 658 (emphasis added); *see also United States v. Saelee*, 51 F.4th 327,

342 (9th Cir. 2022) ("[T]he Government must produce some independent evidence which, viewed in light of the coconspirator statements, *establishes the requisite connection between the accused and the conspiracy*.") (emphasis added). Likewise, the "Ninth Circuit has 'strictly construed' the 'in furtherance' requirement.'" *Pac. Steel Grp. v. Com. Metals Co.*, No. 20-CV-07683-HSG, 2024 WL 4546317, at *2 (N.D. Cal. Oct. 22, 2024) (collecting cases). A generalized and non "statement-specific" argument as to admissibility is insufficient to sustain the Government's burden. *See*, *e.g.*, *United States v. Shaw*, No. CR 14-00338(4)-SJO, 2018 WL 9649494, at *2 (C.D. Cal. Feb. 5, 2018) (because the "Government must demonstrate, by a preponderance of evidence, that . . . the statement was made in furtherance of the conspiracy," simply providing "several examples of cases where courts have admitted statements made 'in furtherance of' conspiracies, in order to demonstrate that Court's interpret this requirement broadly"—without actually contending "that the co-conspirators statements at issue [in the defendant's case] were made in furtherance of the [] conspiracy"—fails to meet this burden).

The Government has not even attempted to meet its burden here as to any of the Rule's three requirements. Its Motion does not address *a single one* of the actual "statements" that it asks the Court to admit, much less present a proffer of proof that would satisfy the Rule's three requirements with respect to each of these 110+ statements. *See generally* Mot. Indeed, it does not even attempt to *argue*—much less attempt an *evidentiary showing* "through the introduction of substantial independent evidence other than the contested hearsay"—that a conspiracy existed and the declarant and Ms. He were members of the conspiracy at the time that any of the 110+ "statements" was made. *Perez*, 654 F.2d at 658. Instead, the Government offers only a general "summary" of its conspiracy "theories," without mention of a single date or citation to a single piece of evidence. *See* Mot. at 13 ("Summary of the Conspiracies"). To the extent that the Government hopes that the Court will simply "accept" that its assertion that these conspiracies "existed" for purposes of admitting statements under Fed. R. Evid. 801(d)(2)(E), the Court should decline to do so.

This is particularly true given the striking premise of this case—that Ms. He, a non-doctor, "caused" independent contractor practitioners to issue prescriptions in violation of their medical

judgment and ethical duties through her workplace policies—in the face of *Ruan v. United States*, which affirmed the imperative of a defendant's culpable *mens rea* to avoid punishing innocent and socially-desirable conduct. 597 U.S. 450, 458-459 (2022) (holding that proof of *intent* to issue an unauthorized prescription was necessary "to separate wrongful from innocent [acts]" under § 841 in light of the well-established presumption that medical practitioners act lawfully: "we expect, and indeed usually want, doctors to prescribe the medications that their patients need"). The flawed corporate recklessness premise of the Government's case calls into question its ability to meet its burden of proof under Fed. R. Evid. 801(d)(2)(E) as a threshold matter—that a conspiracy to violate the Controlled Substances Act (or the derivative health care fraud conspiracy) even existed and that the declarant and Ms. He were members of the at-issue conspiracy at the time that any of the 110+ "statements" was made.

**B. <u>The Proffered Statements Fail On Their Face To Meet Rule 801(d)(2)(e)'s "In Furtherance" Requirement.</u>**

Further, with respect to many of the statements on the Government's "list," the Court could *never* conclude that they are admissible as co-conspirators statements made "in furtherance" of the at-issue conspiracies, as Rule of Evidence 801(d)(2)(e) requires.

As an initial matter, the Government appears to take a far broader view of what, as a legal matter, constitutes the charged offenses than the law itself actually permits—not just as to the core Controlled Substances Act charges, as noted above, but also as to the obstruction conspiracy charge too. As described in more detail in Ms. He's objection to the Government's Rule 404(b) Notice, the Government has a mistaken view about what actually constitutes "obstruction" under 18 U.S.C. § 1512(c) as a matter of law. *See* ECF No. 318 at 3-4 (explaining *inter alia* that neither "placing Done's assets [and] operations … beyond the reach of the Grand Jury" nor "concealing [] ongoing control of Done"—the two broad acts the Government expressly states an intention to offer as evidence that Defendant He "conspired to obstruct justice" in violation of Count VII—constitute "obstruction" under 18 U.S.C. § 1512(c) because the purported conduct does not involve "records, documents, objects" or other evidentiary "things' 'used' in an 'official proceeding,'" as *Fischer v.*

*United States*, 603 U.S. 480, 490-92 (2024) confirmed the statute requires). That same legally mistaken premise appears here. The Government lists over ten purported co-conspirator "statements" that cannot possibly constitute statements in "furtherance" of the alleged conspiracy to violate 18 U.S.C. § 1512(c) that is charged in Count VII because the at-issue conduct does not constitute obstruction as a matter of law. To take one example, included on the Government's list of co-conspirator "statements" are purported statements made by Ms. He and Done employee Yue Wang, regarding Done's plans to expand various business operations in China, rather than in the United States. Those statements cannot have been made in "furtherance" of the alleged conspiracy to violate 18 U.S.C. § 1512(c) because the expansion of business operations in Asia is not conduct that "impair[s] the availability or integrity of records, documents, objects," or other "things used" by the grand jury. *See Fischer*, 603 U.S. at 490-92.

Second, it is well-established that "[m]ere conversations between co-conspirators, or merely narrative declarations among them, are not made 'in furtherance' of a conspiracy"—in order to be considered "in furtherance, *the statements must further the common objectives of the conspiracy*." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (emphasis added). Yet, the Government has proffered a host of statements that cannot possibly be "in furtherance" due to the timing of the statement, including because many of them appear to *post-date* the at-issue conspiracies. And it has done so without even referencing the pertinent dates, much less articulating any explanation of how these proffered statements plausibly meet the "in furtherance" requirement.

Likewise, it is well-established that statements that have the "ultimate effect" of "thwart[ing]" the conspiracy's objectives are certainly not admissible under Fed. R. Evid. 801(d)(2)(E). *See Nazemian*, 948 F.2d at 529. Yet, the Government proffers scores of examples of statements which would have "thwarted" the alleged conspiracies' objectives, including those in which various medical Done providers confirm that they have "preserved" patient medical records, or are working "fix the mess" around patient care issues, and myriad communications between an alleged co-conspirator and a *non-conspirator*, where the fact and substance of the exchange refutes any claim that

the communication was "in furtherance" and, to the contrary, makes clear that the exchange would have undermined the conspiracy. Once again, the Government fails to articulate any explanation, and asks that the Court simply batch-admit the proffered statements based solely on the Government's "assurance" that the "statements" satisfy Rule 801(d)(2)(e)'s requirements.

In short, the Government's fifth motion *in limine* is premature, given the Government's failure to even attempt to satisfy its burden, and the Court should not admit *any* statements under Fed. R. Evid. 801(d)(2)(E) until the Government adheres to its obligations and Ms. He has a chance to respond to the Government's actual arguments, about the specific statements for which it seeks admission.[1] *See United States v. Williams,* No. 3:13-CR-00764-WHO-1, 2017 WL 4310712, at *6 (N.D. Cal. Sept. 28, 2017) (denying admission of purported co-conspirator statements because the "government must isolate each statement it seeks to introduce and establish how each statement furthers the objectives of the conspiracy" and it has yet to meet that burden.").

## VI. THE GOVERNMENT'S SIXTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's sixth motion *in limine*—in which it asks the Court to preclude Defendants, under the hearsay rules, from offering any of their own statements into evidence—should be denied. Mot. at 14-16. No statement is inherently hearsay. Whether or not a statement is hearsay *depends upon what use the offeror intends the fact-finder to make of it*. Where the statement is not offered to prove "the truth of the matter asserted," but for some other purpose, it is not hearsay under Federal Rule 801, which limits excludable hearsay to those out of court statements being offered to prove "the truth of the matter asserted." *See* Federal Rule of Evidence 801. Thus, when a declarant's out-of-court statements are offered not for the truth of the matter asserted, but instead to demonstrate the declarant's *state of mind*—or, for example, to demonstrate that the declarant had or conveyed certain information, a general practice of behavior, or the effect of the words on the listener—those statements are not hearsay and thus are not excludable under the rule against hearsay.

---

[1] To the extent that the Government uses its Reply brief to make, for the first time, the statement-by-statement showing that should have been included in its Motion, Ms. He respectfully requests permission to file a sur-reply responding to those arguments.

The Ninth Circuit explained this principle in *United States v. Garcia-Villanueva*, 855 F.2d 863, at *2 (9th Cir. 1988), where it stated that "out of court statements may be admissible not for their truth, but instead as circumstantial evidence of the declarant's state of mind" and that same holding is reaffirmed throughout this Circuit's precedents. *See, e.g., United States v. Brown*, 562 F.2d 1144, 1148 (9th Cir. 1977) (where statements made by defendant are offered to "show [declarant's] state of mind," rather than for their truth, they are not excluded by the rule against hearsay); *Atl.-Pacific Constr. Co. v. NLRB*, 52 F.3d 260, 263 (9th Cir. 1995) ("an out of court statement may be admitted as circumstantial evidence of the declarant's state of mind"). Thus, statements by the defendant or made to the defendant can be admissible as non-hearsay if offered for a non-hearsay purpose.

Separately, Federal Rule of Evidence 803(3) also provides that statements of a declarant's then-existing state of mind are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. *See United States v. Miller*, 874 F.2d 1255, 1264 (9th Cir. 1989) ("Under Rule 803(3), hearsay is admissible if it is a statement of "the declarant's then existing state of mind (or) emotion . . . (such as intent, plan, motive, design, (or) mental feeling . . .)."). The Rule 803(3) exception exists because there is often "no better way to prove a relevant mental or physical condition than through the statements of the individual whose condition is at issue." 2 McCormick on Evid. § 274 (7th ed.). While courts "have tended to lump together arguably hearsay statements asserting the declarant's state of mind with those arguably nonhearsay statements that tend to prove state of mind circumstantially, applying a general exception to the hearsay rule," in fact, "many of these statements could be treated as nonhearsay" too. *See id.*

This entire case hinges on the Defendants' intent and knowledge and understanding. It will be impossible for the jury to properly assess the Government's allegations without the defense being able to offer evidence for permissible purposes, including state of mind, as expressly contemplated by the Federal Rules of Evidence and the Ninth Circuit's precedents. The Court should deny the Government's Motion.

## VII. THE GOVERNMENT'S SEVENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's seventh motion *in limine* should be denied. *See* Mot. at 16. It is premature. Defense counsel has not settled on the arguments that will be advanced at the conclusion of trial. It is certainly possible that counsel will wish to argue that (i) the Government bears the burden of proof; and (ii) where the facts demonstrate that there is a witness who would naturally be expected to be able to corroborate the Government's allegations, if they were true, the Government's decision not to call this witness tends to suggest that the Government's allegations are false. *See United States v. Young*, 463 F.2d 934, 943 (D.C. Cir. 1972) (in the "case where each side has the physical capacity to locate and produce the witness, and it is debatable which side might more naturally have been expected to call the witness, there may be latitude for the judge to leave the matter [of whether an inference can be drawn from witness's absence] to debate without an instruction, simply permitting each counsel to argue to the jury concerning the "natural" inference of fact to be drawn"); *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939) (the "production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse"); 2 Wigmore on Evidence § 285 (Chadbourn rev. 1979) ("The failure to bring before the tribunal some circumstance, document or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party."). The time for the Government to raise issues with this or any other line of argument is at the charge conference following trial, not pre-trial via motion *in limine*. For these reasons, the Government's seventh motion *in limine* should be denied.

## VIII. THE GOVERNMENT'S EIGHTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's eighth motion *in limine* is contingent upon Defendants "fail[ing]" to adhere to discovery obligations. *See* Mot. at 16-17. Ms. He has no intention of "failing" to adhere to her obligations. As such, the Court should deny this motion *in limine* as unnecessary and premature.

## IX. THE GOVERNMENT'S NINTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's ninth motion *in limine*—in which it seeks to bar Defendants from offering evidence concerning Done's "provision of legitimate services"—should be denied. *See* Mot. at 17-18. The case law cited by the Government is entirely inapplicable to this case. *See generally id.* at 18. In *those* cases, the defendants were charged with illegal conduct in connection with particular and specific conduct—filing, in *one particular year*, a false tax return; overcharging *certain* clients for medical services, etc.—but wished to show that on many other occasions, they had behaved lawfully. *United States v. Lara*, Case No. 15-cr-00039, 2018 U.S. Dist. LEXIS 39281, at *3 (E.D. Cal. Mar. 8, 2018); *United States v. Marrero*, 904 F.2d 215 (5th Cir. 1990). The courts did not permit defendants to present such evidence because it was irrelevant, as "prior good acts" generally "may not be used to show a predisposition not to commit crimes." *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014).

Here, however, the Government has alleged that Done was a purported "pill mill" and that Defendants, through their development of "policies" and procedures, "conspire[d] to provide Done members/[patients]," *writ large*, "with prescriptions for Adderall and other stimulants that were not for a legitimate medical purpose" and issued outside "the usual course of professional practice." Ind. at ¶¶ 56, 72. The Government's theory is *not* that Defendants unlawfully conspired with respect to *specific* patients, but rather that their unlawful conduct was wide-spread and pervasive, infecting the legitimacy of the business and the prescriptions issued pursuant to policies that "caused" licensed practitioners to act as drug dealers rather than medical professionals. Indeed, as the Government's motion *in limine* states, parroting the Indictment's *writ large*

allegations at the same time that it asks the Court to preclude Ms. He from responding to accusations that:

> Done marketed easy access to Adderall, spending over $42 million on social media advertisements claiming that members could easily obtain Adderall for a monthly subscription fee. *Id.* ¶ 61. Defendants recruited doctors and nurse practitioners who were not overly concerned about prescribing Adderall to drug-seeking patients and crafted policies that made it difficult for conscientious prescribers to provide legitimate care, like instructing prescribers to prescribe Adderall to patients who did not satisfy baseline prescribing criteria and mandating that initial patient encounters take less than 30 minutes. *Id.* ¶¶ 62, 65. Defendants also instituted policies that discouraged follow-up encounters with Done members. *Id.* ¶ 68.
>
> *Collectively, these policies caused prescribers to write prescriptions for over 40 million pills of Adderall that were not for a legitimate medical purpose in the usual course of professional practice*. *Id.* ¶¶ 50, 65. Defendants obtained over $100 million in revenue from the scheme, including $14 million from government health programs and commercial insurers based on the submission of false and fraudulent claims. *Id.* ¶¶ 50, 71.

Mot. at 2 (emphasis added).

The Government cannot have it both ways. Given the Government's decision to indict the case in this manner, and unlike the cases cited in the Government's brief, evidence demonstrating that Done's "provision of legitimate services" (including that many of the Done patients who were prescribed ADHD medication did in fact suffer from ADHD) is squarely relevant, as that evidence directly refutes the Government's allegations that Ms. He conspired to issue prescriptions that had "no legitimate medical purpose" or were prescribed outside "the usual course of professional practice," and by extension, conspired to commit health care fraud by deceiving insurers into paying for these prescriptions. The Government's motion *in limine* should be denied.

## X. THE GOVERNMENT'S TENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's tenth motion *in limine* should be denied as premature and unnecessary, as defense counsel is familiar with the rules of evidence concerning character evidence and intends to comply with them. *See* Mot. at 19-21.

## XI. THE GOVERNMENT'S ELEVENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's eleventh motion *in limine* should be denied. *See* Mot. at 21-22. One of the key issues at the upcoming trial is whether Ms. He "knew" or "intended" that Done's medical providers would prescribe ADHD medication "with no legitimate medical purpose" and "outside" the "usual course of professional practice." *Ruan*, 597 U.S. at 454. Evidence that the patient and prescribing practices at Done were "commonplace" is relevant to demonstrating that the practices and policies implemented at Done were "within the usual course of professional practice" and/or why Ms. He believed that they were. Indeed, given that there are no "rules" as to what constitutes the "course of usual professional practice," the question of what is "outside" or "inside" the course of "usual" practice is a determination that the jury will be tasked with making. Given that, Ms. He cannot possibly be precluded from introducing evidence that the same practices and policies employed at Done were "commonplace" in the industry. For these reasons, the Government's eleventh motion *in limine* should be denied.

## XII. THE GOVERNMENT'S TWELFTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's twelfth motion *in limine* should be denied as moot, as Ms. He has no intention of arguing that a victim's "negligence" constitutes a defense to the Government's charges. *See* Mot. at 22-23.

## XIII. THE GOVERNMENT'S THIRTEENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's thirteenth motion *in limine* should be denied as moot, as Ms. He has no intention of making a "political prosecution" argument to the jury at trial. *See* Mot.at 23.

## XIV. THE GOVERNMENT'S FOURTEENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's fourteenth motion *in limine* should be denied as moot, as Ms. He has no intention of arguing that the "issue for the jury to decide" is whether the Government "could have employed different investigative techniques."

## XV. THE GOVERNMENT'S FIFTEENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's fifteenth motion *in limine* should be denied as moot, as Ms. He has no intention of "denigrating government agencies or existing law."

## XVI. THE GOVERNMENT'S SIXTEENTH MOTION IN LIMINE SHOULD BE DENIED.

The Government's sixteenth motion *in limine* should be denied as premature and unnecessary, as defense counsel is familiar with the rules of evidence, including impeachment procedures, and intends to comply with them.

## CONCLUSION

For the foregoing reasons, the Court should deny each of the Government's Motions *in limine*.

Dated: August 19, 2025

WILLKIE FARR & GALLAGHER LLP

By: */s/ Koren Bell*
Koren Bell
Michael S. Schachter
Steven J. Ballew

*Attorneys for Defendant*
RUTHIA HE