1
2
3
4

VALERY NECHAY, SBN 314752
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:     415-652-8569
E-Mail:        valery@nechaylaw.com

5
6

Attorney for Defendant
DAVID BRODY

7

8

9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

10

11

12

13

14

15

16

17

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID BRODY,

Defendant.

Case No. 24-CR-00329-CRB-2

**DEFENDANT DAVID BRODY'S
OPPOSITION TO GOVERNMENT
MOTIONS IN LIMINE NOS. 4, 5, 6,
7, 9, 10 AND 11**

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The Sixth Amendment guarantees every criminal defendant "a meaningful opportunity to
present a complete defense." *Crane v. Kentucky* (1986) 476 U.S. 683, 690.  The Federal Rules of
Evidence are designed to implement this guarantee by ensuring fairness, reliability, and the
ascertainment of truth. *General Elec. Co. v. Joiner* (1997) 522 U.S. 136, 150; Fed. R. Evid. 102.
The Rules are not intended to be wielded by the prosecution as a tool to hamstring the defense and
present a misleadingly incomplete case to the jury.

Here, the Government has filed sixteen motions in limine, which, taken together, represent a
coordinated and systematic effort to unlawfully skew the evidentiary record in its favor. Dkt. 319.  This
strategy, when viewed alongside the Government's expansive Federal Rule of Evidence 404(b) notices

1
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

(See Dkt. 318, 320), is not a neutral search for the truth but an attempt to construct a narrative of guilt by presenting a distorted version of the facts. The Government seeks to magnify any evidence it deems inculpatory while excising all exculpatory context, evidence of legitimate conduct, and any information that might challenge its simplistic theory of the case. This approach, if sanctioned by the Court, would fundamentally impair the defendants' constitutional rights.

Dr. Brody's opposition to the Government's motions rests on several grounds. First is the primacy of *mens rea*. The Government's case hinges on proving that the defendants acted with the specific, subjective intent to defraud and to distribute controlled substances without a legitimate medical purpose. Dkt. 1, at ¶¶ 55, 74, 78. The Supreme Court's decision in *Ruan v. United States*, 597 U.S. 450 (2022) establishes that the Government bears the burden of proving that a physician-defendant subjectively knew or intended that his or her conduct was unauthorized. *Id*., at 454. Consequently, evidence of legitimate medical care, good faith efforts at compliance, and adherence to industry norms is not, as the Government contends, improper "character" evidence; it is direct, intrinsic evidence that negates the central element of the charged offenses.

Second is the critical importance of context. The Government's attempt to introduce cherry-picked statements and excerpts of conversations while excluding the surrounding exculpatory remarks runs afoul of the fundamental fairness principles embodied in the Rule of Completeness, Federal Rule of Evidence 106. The jury must be allowed to hear the whole story, not just the prosecution's curated highlights.

Third, the Government's motions are built on an inaccurate and premature assumption: that a single, unified conspiracy existed between two defendants who, as the defense will show, had different roles, responsibilities, and, most importantly, intentions. The existence of mutually antagonistic defenses fundamentally undermines the Government's ability to rely on theories of agency and co-conspirator liability to attribute the statements of any one person to both defendants.

Ultimately, the Government's evidentiary motions seek to create an impermissible asymmetry. They propose to use Rule 404(b) as a sword to introduce a litany of alleged "bad acts"—many of which are unrelated to the charges—while simultaneously using Rules 401, 403, and 404 and a mechanicalistic application of the hearsay rule as a shield to block any and all evidence of exculpatory statements, legitimate conduct, good faith, or pertinent traits of character. This Court should reject the

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

1  Government's attempt and ensure that the jury is presented with a complete and balanced factual record

2  from which it can properly determine the truth.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **I.    OPPOSITION TO MOTIONS IN LIMINE NOS. 9, 10, AND 11 SEEKING THE EXCLUSION OF ADMISSIBLE EVIDENCE REBUTTING FRAUDULENT INTENT**

5       The Government's motions to exclude evidence of legitimate medical care (MIL #9), good

6  character (MIL #10), and commonplace industry practices (MIL #11) misapprehend the central issue in

7  this case.  The Indictment charges conspiracies to distribute controlled substances "not for a legitimate

8  medical purpose" and to commit healthcare fraud, both of which are specific-intent crimes.  Dkt. 1, at

9  ¶¶ 55, 74, 78.  The Government must therefore prove beyond a reasonable doubt that the defendants

10 acted knowingly, willfully, and with the subjective intent to violate the law.  *See Ruan v. United States*,

11 *supra*, 597 U.S. at 460 (regarding 21 U.S.C. § 841(a)); *United States v. Troisi*, 849 F.3d 490, 494 (1st

12 Cir. 2017) (regarding 18 U.S.C. §§ 1347, 1349).  Evidence that speaks directly to the defendants' state

13 of mind, their good faith, and their understanding of their professional and legal obligations is therefore

   not only relevant; it is essential to a fair trial.

14 **A.    Opposition to Motion in Limine No. 9: To Preclude Evidence of Legitimate Medical Care or Other Good Conduct**

15      The Government seeks a sweeping order precluding the defense from "offering any evidence at

16 trial of specific acts of good conduct, including evidence of the provision of legitimate services by

17 Defendants."  Dkt. 319, p. 17, lines 23-24.  The Government argues such evidence is irrelevant and

18 constitutes improper character evidence under Federal Rule of Evidence 404, offered only to show a

19 "predisposition not to commit crimes."  Dkt. 319, p. 18, lines 17-18.  This argument is fundamentally

20 flawed because it mischaracterizes the purpose for which the evidence is offered and ignores the

21 controlling standard for criminal liability set forth in *Ruan*.

22      The defense does not offer evidence of legitimate medical care to argue that because the

23 defendants acted lawfully on some occasions, they must have acted lawfully on the specific occasions

24 charged in the Indictment.  Instead, this evidence is offered as direct proof that negates the elemental

25 requirement of criminal intent.  The Indictment alleges a sprawling, multi-year conspiracy and scheme

26 to defraud, the purpose of which was to "unlawfully enrich" the defendants by providing prescriptions

27 "that were not for a legitimate medical purpose."  Dkt. 1, ¶ 56.  The Government's theory is that the

   entire Done enterprise was a sham—a "straight up pill mill" designed to "make a lot of f*****

3

28 OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
   BRODY, 24-CR-00329

1    money" by pushing drugs. Dkt. 1, ¶ 72. Evidence that, during this same period and as part of the same

2    enterprise, the defendants also provided legitimate medical care, implemented or attempted to

3    implement compliance policies, and treated numerous patients appropriately is directly contrary to the

4    Government's charged theory of the case. It tends to prove that the defendants' subjective intent was to

5    operate a medical practice, not a criminal enterprise.

6    Indeed, the Government's reliance on *United States v. Ifediba*, 46 F.4th 1225 (11th Cir. 2022)

7    and *United States v. Murphy*, 2024 WL 4847755 (11th Cir., Nov. 21, 2024, No. 23-10781) is

8    misplaced. Dkt. 319, p. 18, lines 11-16; p. 19, lines 1-3. In *Ifediba*, the Eleventh Circuit upheld the

9    exclusion of "good-care evidence," reasoning that the government "conceded that his treatment of some

10   patients was legitimate. Thus, it was no defense that Ifediba lawfully treated some patients." *Ifediba*,
     *supra*, at 1238.

11   Here, however, the government makes no such concession. The government's theory is that the

12   entire Done enterprise was a criminal conspiracy designed to illegally distribute drugs and commit

13   healthcare fraud. They allege the company's fundamental policies were crafted to "cause prescribers to

14   write prescriptions for over 40 million pills of Adderall that were not for a legitimate medical purpose."
     Dkt. 319, p. 2, lines 13-14.

15   Similarly, the court's decision in *United States v. Murphy* to exclude the defense's "good care"

16   evidence was expressly premised on the fact that the government itself had already presented evidence

17   of the clinic's legitimacy. The Eleventh Circuit noted that "government witnesses testified about the

18   clinic's 'many aspects of good care,' including, for instance, its 'proper paperwork' on mental status, 'a

19   compilation of external records,' 'drug testing on the initial visit,' and warnings 'not to mix the pain

20   medications with alcohol.'" *United States v. Murphy*, et al. (11th Cir. 2024) (2024 WL 4847755 at

21   *11.) Because the jury was already aware that the clinic was not "entirely illegitimate," the court

22   concluded that additional defense testimony would not have cast the evidence in a "significantly"
     different light. *Id*., at *11.

23   Here, again, the government has made no such concession and instead seeks to exclude all

24   evidence of legitimate care, forcing the defense to counter a narrative that the entire Done enterprise

25   was, by its very nature, a fraudulent scheme. Furthermore, the concurring opinion in *Murphy* directly
     supports the admission of "good care" evidence in a case like this one. As Judge Jordan explained:

26              It seems to me, however, that where—as here—the government tries to
27              paint a medical clinic as a pill mill with hundreds of patients a day, the

28   4
     OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
     BRODY, 24-CR-00329

1
2
3
4
5
6
7

> defendants who ran the clinic are entitled to put on evidence that many of
> their patients received good care under medically-accepted standards. The
> government's insinuation is that if proper care is not being provided most
> of the time, then it is a fair inference that the prescriptions for the patients
> mentioned in the indictment were not legitimate. The defendants should be
> entitled to counter the impression the government is trying to convey. See,
> e.g., *United States v. Word*, 129 F.3d 1209, 1212–13 (11th Cir. 1997)
> (reversing conviction because the defendant "was not afforded the
> opportunity to present evidence to counter the government's argument" as
> the government's "trial strategy made this defense evidence highly
> significant").

8    *United States v. Murphy*, *United States v. Murphy*, et al. (11th Cir. 2024)

9

10    Here, likewise, the government should not be permitted to allege that the entire Done business

11    model was a criminal scheme and simultaneously argue that evidence showing legitimate aspects of

12    that same business model is irrelevant.  Because the government has put the legitimacy of the entire

    operation at issue, the defense must be allowed to present evidence on that very point.

13    Notably, and ironically, the Government has given notice that it intends to introduce evidence of

14    Dr. Brody's prescribing practices at Contra Costa Health, *which is unaffiliated with Done*, in order to

15    prove Dr. Brody's knowledge, state of mind, and absence of mistake.  See Dkt. 320, p. 3.  However,

    utilizing such evidence is fundamentally inconsistent with the government's argument that evidence of

16    legitimate medical care that occurred within the charged enterprise is somehow irrelevant.

17    If the government believes Dr. Brody's conduct at an entirely separate entity is probative of his

18    intent at Done, then it has conceded the very principle it seeks to deny Dr. Brody.  It is a matter of basic

19    evidentiary fairness that if the government can use "other acts" as a sword to prove inculpatory intent,

20    the defense must be allowed to introduce evidence of other, legitimate acts—*especially those from*

21    *within the very same operation*—to prove an exculpatory one.  The government has opened the door,

    and it cannot now demand that it be closed only to the defendants.

22

23    **B.    Opposition to Motion in Limine No. 10: To Preclude Evidence of Good Character**

    The Government moves to preclude the defendants from presenting evidence of their good

24    character, such as their family background, community service, or religious faith, arguing such

25    evidence is irrelevant and serves only as an improper appeal for jury sympathy or nullification.  Dkt.

26    319, pp. 19-20.  This motion is impermissibly overbroad and misconstrues the plain text of Federal

27    Rule of Evidence 404(a)(1).

28
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

Rule 404(a)(2)(A) explicitly provides an exception to the general bar on character evidence, allowing a defendant in a criminal case to "offer evidence of the defendant's pertinent trait." In a case built entirely on allegations of conspiracy, fraud, and dishonesty, character traits for honesty and law-abidingness are quintessentially pertinent. Evidence that a defendant has a strong reputation in the community for being an honest and law-abiding person is admissible circumstantial evidence that he or she is less likely to have engaged in the complex, multi-year scheme of deceit and illegality alleged in the Indictment. This is not an invitation for the jury to disregard the law; it is an invitation for the jury to consider all relevant evidence when determining whether the Government has met its burden of proof on the element of intent.

It should also be noted that the Government's motion is particularly disingenuous when viewed in light of the Government's own 404(b) notice. The Government has given notice of its intent to introduce a vast array of alleged "bad acts" evidence, including Dr. Brody's unrelated tax and mortgage issues for the stated purpose of proving "motive, knowledge, and intent." See Dkt. 319. This alleged evidence creates an inference that all tax and/ or mortgage deficiencies fall squarely on Dr. Brody's shoulders, while failing to provide the court with salient information such as the fact that he actually shares those financial obligations with his wife and therefore, reasons for nonpayment or deficiencies implicates her role and employment in those household family obligations. Opening the door on this issue will lead to the likelihood of confusing the jury on unrelated, highly contested, and unresolved financial issues. Additionally, it will cause require the testimony of numerous financial parties of interest such as Dr. Brody's wife, tax attorneys, and other financial entity representatives, while unnecessarily expanding the scope of the trial, in order to thoroughly challenge these false and misleading claims and insinuations.

Again, this strategy reveals the Government's true aim: to conduct a one-sided character assassination because they lack adequate evidence on the merits to secure a conviction that satisfies the high burden in this case. It seeks to use Rule 404(b) as a sword to admit any and all evidence that might paint the defendants in a negative light, while simultaneously twisting Rule 404(a) to use it as a shield against any countervailing positive character evidence. This proposed evidentiary imbalance should be rejected. The defendants must be permitted to present evidence of their pertinent character traits for honesty and law-abidingness to rebut the Government's narrative of deceit and criminality.

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

1

2

**C.      Opposition to Motion in Limine No. 11: To Preclude Suggestions that Conduct Was Commonplace**

3

The Government seeks to prohibit the defense from suggesting that their conduct was

4

"commonplace" in the telehealth industry, arguing that such evidence is irrelevant and tantamount to

5

arguing that a crime is not a crime if everyone is doing it.  Dkt. 319, p. 21, lines 17-25.  Once again, the

6

Government mischaracterizes the purpose of this evidence.  It is not offered to excuse or justify the

7

alleged conduct, but to provide critical context for the jury's assessment of the defendants' subjective

criminal intent.

8

The charges in this case arise from conduct that occurred in the nascent, rapidly evolving, and

9

often chaotic world of telehealth during the unprecedented COVID-19 Public Health Emergency.  Dkt.

10

1, ¶ 50.  The regulatory landscape was in flux, and industry practices were developing in real time.

11

Evidence that Done's practices were similar to those of its competitors—including companies like

12

Cerebral and Ahead, which the Government acknowledges but chose not to charge—is highly relevant

13

to whether the defendants *subjectively knew* their actions were illegal.  Dkt. 319, p. 5, lines 9-10.  It

14

tends to show that they believed they were operating within the bounds of emerging industry norms,

which directly negates the willful and knowing mental state the Government is required to prove.

15

The Ninth Circuit's decision in *United States v. Lindsey*, 850 F.3d 1009 (9th Cir. 2017),

16

provides an applicable analogy.  In that case, involving allegations of mortgage fraud, the court held

17

that while evidence of an individual lender's negligence was not a defense, "Evidence of general

18

lending standards in the mortgage industry... is admissible to disprove materiality."  *Id*., at 1019.  The

19

court recognized that what is considered a "material" falsehood can be informed by what is standard

20

practice in a given industry.  Similarly, here, what a person *subjectively believes* to be lawful in a

medical industry governed by standards of care rather than specific statutes can be informed by the

21

standard practices of their peers.

22

If a particular method of patient intake or a specific prescription protocol was common among

23

telehealth platforms at the time, it is far less likely that a defendant employing that method subjectively

24

understood it to be part of a criminal conspiracy.  Excluding this evidence would force the jury to

25

evaluate the defendants' conduct in a vacuum.  It would prevent them from understanding the

26

environment in which the defendants were operating and would unfairly inhibit their ability to assess

the defendants' state of mind.  Such evidence is not offered to prove a legal justification, but to

27

disprove a required element of the crime: subjective knowledge of illegality.  It is therefore relevant

7

28

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

1  under Rule 401 as its probative value in shedding light on the defendants' intent is not substantially

2  outweighed by any potential for confusion.

3  **II.    OPPOSITION TO MOTIONS IN LIMINE NOS. 6 AND 12 SEEKING TO DEPRIVE THE JURY OF THE FULL CONTEXT NECESSARY TO MAKE A FAIR AND**

4  **RELIABLE DETERMINATION OF THE FACTS**

5  The Government's trial strategy is to control the narrative by presenting the jury with a carefully

6  curated and incomplete version of the evidence.  Motions in Limine Nos. 6 and 12 are designed to

7  achieve this goal by excluding the defendants' own exculpatory statements and any evidence regarding

8  the conduct of the alleged "victims" (subscribers, insurers, and pharmacy benefit managers) of the

9  healthcare fraud scheme.  Granting these motions would allow the Government to present misleadingly

10  tailored snippets of evidence, depriving the jury of the full context necessary to make a fair and reliable

   determination of the facts.

11  **A.    Opposition to Motion in Limine No. 6: To Exclude "Self-Serving Hearsay**

12  **Statements by Defendants"**

13  The Government moves to exclude all of the defendants' own out-of-court statements made to

   the press, to Done subscribers, to investors, and to their own employees or potential employees,

14  labeling them as "self-serving" and "inadmissible hearsay."  Dkt. 319, p. 14, lines 11-18.  It argues that

15  under Federal Rule of Evidence 801(d)(2)(A), only the Government can offer a defendant's statement,

16  and that the Rule of Completeness does not render otherwise inadmissible hearsay admissible and does

17  not apply to unrecorded oral statements.  Dkt. 319, p. 15, lines 20-22.  This argument, however, relies

18  on an outdated and narrow interpretation of those rules which prioritizes formalism over the

19  fundamental fairness required to prevent the jury from being misled.

20  The core purpose of the Rule of Completeness is to avoid the distortion that occurs when

   statements are taken out of context.  In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988), the

21  Supreme Court explained that the Federal Rule of Evidence 106 is designed to prevent a party from

22  making use of a portion of a document "such that misunderstanding or distortion can be averted only

23  through presentation of another portion."  *Id*., at 172.  While the Ninth Circuit in *United States v.*

24  *Ortega*, 203 F.3d 675 (9th Cir. 2000), held that the text of Rule 106 at the time limited its application to

25  written and recorded statements, that view is no longer tenable.

26  A 2023 amendment to Rule 106 explicitly extended its reach to cover *all* statements, including

27  oral ones, and clarified that completing evidence may be admissible over a hearsay objection if fairness

28
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

requires.  According to the Advisory Committee Notes to the 2023 amendment, at paragraph (1), "the amendment provides that **if the existing fairness standard requires completion, then that completing statement is admissible over a hearsay objection**."  As explained in paragraph (2), "**Rule 106 has been amended to cover all statements, including oral statements that have not been recorded**."  These Advisory Committee Notes provide guidance and insight as to how to apply Rule 106 to the case at hand.  *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014) ("As the explanatory notes are contemporaneously drafted by the same entity charged with drafting the rules, they are a particularly reliable indicator of legislative intent.); *United States v. Saeteurn*, 504 F.3d 1175, 1180 (9th Cir.2007) ("We look to Advisory Committee Notes when interpreting a federal rule for 'guidance and insight.'").

Here, if the Government introduces a defendant's allegedly inculpatory remark, fairness demands that the defense be permitted to introduce the exculpatory explanation that immediately followed, lest the jury be left with a fundamentally distorted impression of what was said.

Beyond the Rule of Completeness, many of the statements the Government seeks to exclude are independently admissible under other rules.  Federal Rule of Evidence 803(3) provides a hearsay exception for a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) …"  This exception is critical in a specific-intent case.  For example, Dr. Brody's defense theory is that he consistently advocated for patient-first clinical policies but was overruled by Ms. He.  His contemporaneous statements to colleagues or in company communications expressing this intent are not offered to prove that his policies were, in fact, good.  They are offered as direct, non-hearsay evidence of his state of mind at the time, which is a material fact in issue.  To exclude such statements would be to deny him the ability to present the most direct evidence of his lack of criminal intent.

Finally, some statements may not be hearsay at all because they are "verbal acts" or are offered for their effect on the listener.  *U.S. v. Pang* (9th Cir. 2004) 362 F.3d 1187, 1192 (out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay); *U.S. v. Rider* (9th Cir. 2013) 528 Fed.Appx. 740 (the challenged testimony was not hearsay; it was properly admitted to show its effect on the listener, rather than the truth of the matter asserted).

Here, an instruction from a defendant to an employee regarding a compliance measure is not offered to prove the truth of the compliance measure's efficacy, but to prove that the instruction was given, which is probative of the defendant's intent to comply with the law.  The Government's motion for a blanket exclusion of all "self-serving" statements is improper and should be denied.  The

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

admissibility of each statement must be determined in context at trial, with the principle of ensuring the jury is not misled by the Government's selective presentation of evidence.

**B.      Opposition to Motion in Limine No. 12: To Preclude Blaming Done Subscribers, Insurers, and Pharmacy Benefit Managers**

The Government seeks to preclude the defense from "blaming" Done subscribers, insurers, and Pharmacy Benefit Managers (PBMs) for the defendants' alleged criminal conduct, arguing that victim negligence is not a defense to fraud.  Dkt. 319, p. 22, lines 6-25.  The Government correctly states the law on this point, citing the Ninth Circuit's holding in *United States v. Lindsey*, *supra*, 850 F.3d 1009. However, the Government's motion once again mischaracterizes the purpose for which the defense would offer this evidence.

The defense does not intend to argue that the negligence of an insurer excuses the defendants' fraud.  Rather, the conduct of these sophisticated corporate "victims" is directly relevant to proving that the Government cannot meet its burden on the essential elements of materiality and intent to defraud for the healthcare fraud conspiracy charged in Count Six.

A misrepresentation is "material" only if it has a "natural tendency to influence, or is capable of influencing," the decision of the decision-making body to which it was addressed.  *United States v. Milheiser*, 98 F.4th 935, 940 (9th Cir. 2024).  The decision-makers here were not unsuspecting individuals, but massive, sophisticated PBMs and insurance companies with their own complex algorithms, fraud detection units, and claims adjudication processes.  Evidence that these entities were aware of Done's business model, its advertising, and its prescribing patterns, yet continued to process and pay millions of dollars in claims over a period of years, is highly probative of whether the specific practices the Government now labels as fraudulent were actually material to their payment decisions. A jury could reasonably infer that if these practices were truly material to the payors, they would have ceased reimbursement long before they did.

This evidence is also directly relevant to the defendants' subjective intent to knowingly and willfully execute a scheme or plan to defraud a health care benefit program my means of materially false or fraudulent representations.  *See* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.128A (2010 ed., approved Dec. 2019).  If the defendants were operating in a manner that was transparent to the payors, and those payors continued to reimburse Done for its services, it undermines the Government's claim that the defendants intended to defraud them.  The

defendants' belief that their business model was acceptable to the payors—a belief reinforced by each paid claim—negates the specific intent to defraud.

In fact, the *United States v. Lindsey* decision itself contains the exception that defeats the Government's motion. While barring evidence of *individual* lender negligence, the Ninth Circuit explicitly held that "[e]vidence of general lending standards in the mortgage industry... is admissible to disprove materiality." *United States v. Lindsey*, *supra*, 850 F.3d at 1019. In the context of this case, the payment policies and adjudication practices of major PBMs and commercial insurers *are* the "general industry standards." Evidence of how these entities handled claims from Done and other telehealth companies is therefore admissible under the very precedent the Government cites.

Excluding this evidence will allow the Government to present a sanitized and unrealistic narrative in which sophisticated corporate actors are portrayed as passive, gullible victims, rather than as active market participants whose conduct provides essential context for the defendants' actions and state of mind.

## III. OPPOSITION MOTIONS IN LIMINE NOS. 4 AND 5 SEEKING TO THE WHOLESALE ADMISSION OF STATEMENTS BY ANY AND ALL DONE EMPLOYEES OR INDEPENDENT CONTRACTORS

The Government's case relies on a conspiracy theory that treats Done as a monolithic criminal enterprise and attributes the acts and statements of any employee or alleged co-conspirator to both defendants interchangeably. Motions in Limine nos. 4 and 5 seek pre-trial rulings that would cement this flawed narrative by allowing the wholesale admission of vicarious statements under agency and co-conspirator theories. These motions are premature and legally unsupportable in light of the factual disputes regarding the defendants' respective roles and the existence of a single, unified agreement. The defense theory, as articulated in the previously filed joint motion for severance (Dkt. 160), posits that the defendants had mutually antagonistic goals, a fact that fundamentally undermines the prerequisites for both Federal Rule of Evidence 801(d)(2)(D) and 801(d)(2)(E).

### A. Opposition to Motion in Limine No. 4: To Admit Statements by Done and Done Employees and Agents

The Government requests a blanket ruling that all statements by Done employees and independent contractors are admissible against both defendants as statements of an agent under Federal Rule of Evidence 801(d)(2)(D). Dkt. 319, p. 7, lines 5-8. The basis for this motion is the assertion that

11
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

the defendants exercised "total control" over Done, thereby making every worker their "agent." Dkt. 319, p. 7, lines 12-15. This request for a global, pre-trial determination is improper.

Whether an agency relationship exists is a preliminary question of fact for the Court which first requires proof under Federal Rule of Evidence 104(a) and (b). This is a particularly fact-intensive inquiry when it involves independent contractors, as many of the Done prescribers were classified. Dkt. 319, p. 7, lines 19-20. The Ninth Circuit, in *United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010), identified "the extent of control exercised by the [principal]" as the "essential ingredient" in the analysis. *Id*., at 505. The Government cannot establish this control on a global basis through a motion in limine. The defense is entitled to an individualized inquiry for each declarant and each proffered statement to determine (1) if an agency relationship existed with each defendant, and (2) if the specific statement was made "on a matter within the scope of that relationship." *See* Fed. R. Evid. 801(d)(2)(D).

This inquiry is further complicated, and rendered unsuitable for a pre-trial ruling, by the defendants' antagonistic defenses. Dr. Brody's defense will be that Ms. He owned, controlled, and operated Done, that she intentionally misled him about corporate policies, and that she pursued a profit-driven agenda contrary to his patient-care objectives. Dkt. 160, p. 4, line 4 – p. 5, line 2. If the evidence supports this theory, then a Done employee who was acting under Ms. He's exclusive direction to implement a profit-maximizing policy that Dr. Brody opposed was acting as *her* agent, not Dr. Brody's. That employee's statements in furtherance of Ms. He's agenda cannot be vicariously attributed to Dr. Brody under Federal Rule of Evidence 801(d)(2)(D), as he was not the principal in that relationship. The Government's motion improperly assumes a unified principalship that is the central point of dispute in the case. The Court cannot resolve this factual dispute before hearing the evidence, and therefore, the motion should be denied as premature.

**B.     Opposition to Motion in Limine No. 5: To Admit Statements of Defendants' Co-Conspirators**

Similarly, the Government's motion to admit co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E) improperly asks the Court to find, by a preponderance of the evidence, the existence of a conspiracy before a single witness has testified. Dkt. 319, p. 8, lines 16-22. This is particularly inappropriate where, as here, the defense will present substantial evidence that no such unified conspiracy ever existed between the defendants.

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

1       The foundational requirement for admissibility under Federal Rule of Evidence 801(d)(2)(E) is

2   the existence of a conspiracy—an agreement or a "joint venture" to accomplish an unlawful purpose.

3   *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir.), cert. denied; *United States v. Spencer*, 415 F.2d

4   1301, 1304 (7th Cir., 1969).  The defense theory directly undermines this premise.  The defendants'

5   defenses are mutually antagonistic.  If Ms. He's defense is to blame Dr. Brody's clinical judgment, and

6   Dr. Brody's defense is that Ms. He deceived him and prioritized profits over patients; their interests

7   were not aligned; they were diametrically opposed.  Evidence of a disagreement and conflicting

    motives is proof that there was no meeting of the minds or shared unlawful objective between them.

8       This lack of a unified agreement also defeats the rule's "in furtherance" requirement.  Fed. R.

9   Evid. 801(d)(2)(E).  In determining whether a statement is made "in furtherance of" a conspiracy, the

10  court looks to the declarant's intent in making the statement, not the actual effect of the statement.

11  *United States v. Zavala–Serra*, 853 F.2d 1512, 1516 (9th Cir.1988).  To be "in furtherance" a statement

12  must advance a common objective of the conspiracy or set in motion a transaction that is an integral

    part of the conspiracy.  *U.S. v. Williams (*9th Cir. 1993) 989 F.2d 1061, 1068.

13      Here, if Ms. He and Dr. Brody were pursuing separate and conflicting goals, then a statement by

14  an employee intended to advance Ms. He's profit motive could not have been "in furtherance" of a joint

15  conspiracy that included Dr. Brody, whose alleged goal was proper patient care.  The statement would

16  only further one faction's goals within a dysfunctional enterprise, not the goals of a unified conspiracy.

17  Given this outcome-determinative factual dispute over the very existence of an agreement between the

    defendants, it would be error for the Court to make a preliminary finding that a conspiracy existed.

18
19      The proper course in this particular case is to deny the motion and defer any ruling on the

    admissibility of alleged co-conspirator statements unless and until sufficient competent evidence has

20  been presented.  *C.f. Bourjaily v. U.S.* (1987) 483 U.S. 171, 172.  Only then, after hearing the scope of

21  the evidence regarding the defendants' relationship and their respective roles and intentions, can the

22  Court make a fully informed determination as to whether the Government has met its burden under

23  Federal Rule of Evidence 104(a) and (b).

24      **C.      The Court Should Also Reject the Government's One-Way Mirror Approach to
              Co-Conspirator Statements**

25      In its motion, the Government argues that Federal Rule of Evidence 801(d)(2)(E) is a one-way

26  street available only to the prosecution.  The argument is based on a rigidly technical reading of the

27  rule's text, which states that such statements must be "offered against an opposing party."  Dkt. 319, p.

                                          13
28  OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
    BRODY, 24-CR-00329

1   12, lines 26-27.  Because the United States was not a member of the alleged conspiracy, the

2   Government contends, a co-conspirator's statement cannot be offered against it, and therefore the

3   defense is barred from introducing any such statements, even if they are exculpatory.   Dkt. 319, p. 13,

4   lines 1-3.

5         The Government's position in this regard, while textually clever, is substantively untenable and

6   would create a profoundly unfair trial dynamic.  The Government's theory for admitting these

7   statements in the first place is rooted in agency—that co-conspirators are agents for one another, and

8   their statements are reliable enough to be treated as vicarious admissions of the defendant.  See *U.S. v.*

9   *Fleishman* (9th Cir. 1982) 684 F.2d 1329, 1339 (impliedly overruled on other grounds in *U.S. v.*

10  *Ibarra-Alcarez* (9th Cir. 1987) 830 F.2d 968, 973).  The Government cannot simultaneously vouch for

11  the inherent reliability of this category of evidence when it is inculpatory, only to declare it

    presumptively unreliable and inadmissible the moment it becomes exculpatory.  Such a position is not a

12  search for the truth; it is a search for a conviction at any cost.

13        **D.     Constitutional Protections Trump Mechanical Application of Hearsay Rules**

14        The Sixth Amendment's guarantee of a meaningful opportunity to present a complete defense

15  and the Fifth Amendment's Due Process Clause prevent the mechanistic application of evidentiary

16  rules in a way that defeats the ends of justice.  *Gable v. Williams* (9th Cir. 2022) 49 F.4th 1315, 1329.

17  The United States Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S. 284 (1973) is on

    point.  In *Chambers*, the Court held that a state's hearsay rule, which prevented the defendant from

18  introducing a third party's reliable confession to the crime, could not be applied in a way that denied

19  the defendant a fair trial.  *Id*., at 302.  The Court found that where evidence is critical to the defense and

20  bears "persuasive assurances of trustworthiness," its exclusion violates due process.  *Id*.

21        That is precisely the situation here.  If the Government successfully proves that a particular

22  declarant is a co-conspirator whose statements were made in furtherance of the conspiracy, it has, by

23  definition, established the context and reliability of those statements for the court.  It cannot then be

    permitted to argue that exculpatory statements made by the *same declarant* in the *same context* are

24  suddenly too unreliable for the jury to hear.  To allow the Government to introduce a co-conspirator's

25  statement that says, "The plan is to proceed," while excluding a statement from the same conversation

26  where the declarant says, "but Dr. Brody told us not to," would present the jury with a fundamentally

    distorted and misleading version of the facts.

27

28
    OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
    BRODY, 24-CR-00329

1     This principle is also embodied in the Rule of Completeness, Federal Rule of Evidence 106.

2   The rule exists to prevent a party from creating a misleading impression by introducing only a selected

3   portion of a statement.  If the Government offers an inculpatory snippet of a co-conspirator's

4   conversation, fairness and the pursuit of truth demand that the defense be allowed to introduce the

5   remainder of that conversation to place the snippet in its proper, and potentially exculpatory, context.

6   Ultimately, the Government's attempt create such one-way hearsay exceptions for itself is a critical

7   component of its broader trial strategy.  It seeks to use the rules of evidence not as a tool for ensuring a

8   fair and reliable trial, but as a weapon to hamstring the defense and present a carefully curated narrative
    of guilt.

9   ## IV.   OPPOSITION TO MOTION IN LIMINE NO. 7: TO PRECLUDE ARGUMENT
10              REGARDING FAILURE TO CALL A PARTICULAR WITNESS

11          Without citing authority, the Government's Motion in Limine no. 7 seeks to improperly curtail

12   the scope of the defense's closing argument and intrude upon the jury's exclusive function as the finder

13   of fact.  Dkt. 319, p. 16, lines 17-23.  By asking the Court to preclude any comment on the

14   Government's failure to call a particular witness, the Government is attempting to insulate its case from

15   legitimate scrutiny and prevent the jury from drawing natural and reasonable inferences from the

16   evidence—and the lack thereof.  The Government argues that because the defense can subpoena any

17   witness, no negative inference should be drawn if the Government chooses not to call a witness from its

    own list.  Dkt. 319, p. 16, lines 20-23.   This argument ignores both the practical realities of a criminal

18   trial and controlling Ninth Circuit precedent.

19          A "missing witness" inference is permissible, and argument regarding it is proper when the

20   uncalled witness is "peculiarly within the power of the other party," and "an inference of unfavorable

21   testimony from an absent witness is a natural and reasonable one." *U.S. v. Leal-Del Carmen*, 697 F.3d

22   964, 974 (9th Cir. 2012).  This standard is not limited to witnesses who are legally unavailable to the

23   defense via subpoena.  It also encompasses witnesses who, due to their relationship with the

    Government, are not "equally available" in any practical sense. *See U.S. v. Caccia*, 122 F.3d 136, 139

24   (2d Cir. 1997).  This category clearly includes confidential informants, cooperating witnesses who have

25   entered into plea agreements with the Government, and lead case agents.  These witnesses are aligned

26   with the prosecution, and the defense cannot be expected to call them and vouch for their credibility.  If

27   the Government builds its case around the actions of such a witness but then fails to call that witness to

    testify, the jury is entitled to wonder why, and the defense is entitled to ask them to do so.

28
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

1    More fundamentally, the Government's motion asks the Court to usurp the jury's role. The

2    Ninth Circuit has explicitly warned against this type of judicial interference. In *United States v.*

3    *Ramirez*, 714 F.3d 1134 (9th Cir. 2013), the court held that a trial judge "improperly inserted itself into

4    the jury room and interfered with the jury's role as a factfinder" by instructing jurors to disregard any

5    uncertainty about why the prosecution failed to call a key witness. *Id*. at 1139. The court recognized

6    that jurors are entitled to draw common-sense inferences from the evidence presented, and that includes

     drawing inferences from puzzling evidentiary gaps. *Id*. at 1138.

7    Here, the Government bears the burden of proving its case beyond a reasonable doubt. If it fails

8    to present testimony from a witness who would logically be expected to have crucial information—for

9    example, a patient who was allegedly prescribed stimulants without a legitimate medical purpose but

10   who might have testified that the medication was medically necessary and beneficial—that failure is a

11   legitimate subject for argument. To forbid the defense from pointing out such a gap in the

12   Government's proof would unfairly lighten the prosecution's burden and hamstring the defense's

13   ability to argue that the Government has failed to meet it. The motion must be denied, and the defense

14   should be permitted to make any arguments in summation that are based on a fair view of the evidence

     presented and the reasonable inferences that can be drawn from it.

15   **V.   CONCLUSION**

16   The Government's Motions in Limine, when analyzed collectively, reveal a clear strategy to

17   obtain a conviction not by presenting a complete and truthful account of the facts, but by engaging in a

18   form of evidentiary gerrymandering. The Government seeks to draw the boundaries of admissible

19   evidence in such a way that only its narrative of guilt can be heard, while any evidence of good faith,

20   exculpatory context, or reasonable doubt is silenced before it can ever reach the jury. This approach is

21   capricious and antithetical to the truth-seeking function of a criminal trial and would, if permitted,

     violate the defendants' fundamental right to present a complete defense.

22   The motions to exclude evidence of legitimate medical care, good character, and commonplace

23   industry practices (MIL #9, #10, #11) are an attempt to nullify the Supreme Court's mandate in *Ruan v.*

24   *United States* by preventing the defendants from presenting the very evidence that is most probative of

25   their subjective intent. The motions to exclude the defendants' own statements and the conduct of the

26   alleged "victims" (MIL #6, #12) are designed to allow the Government to present a misleadingly

     incomplete story, free from the clarifying and often exculpatory context that fairness and the Rule of

27

28
OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329

Completeness require.  The motions for blanket admission of agent and co-conspirator statements (MIL #4, #5) ask the Court to prematurely resolve the central factual disputes of the case—the nature of the defendants' relationship and the existence of a unified criminal agreement—before hearing any evidence, and to do so in a one-sided manner that suppresses the truth.   Finally, the motion to restrict closing argument (MIL #7) is an improper attempt to shield the Government's case from legitimate scrutiny and to interfere with the jury's role as the ultimate arbiter of the facts.  For these reasons, the Court should deny the Government's Motions in Limine numbers 4, 5, 6, 7, 9, 10, 11, and 12.

Dr. Brody reserves the right to submit further briefing and/or argument in opposition to the remainder of the Government's motions in limine.

Dated: August 19, 2025

Respectfully Submitted,

_____

VALERY NECHAY
Attorney for Defendant
DAVID BRODY

OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE NOS. 4, 5, 6, 7, 9, 10 AND 11
BRODY, 24-CR-00329