CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

RAVI T. NARAYAN (CABN 331858)
Acting Chief, Criminal Division

LORINDA I. LARYEA (DCBN 997696)
Acting Chief, Fraud Section

JACOB FOSTER (CABN 250785)
Acting Chief
EMILY GURSKIS (VABN 85973)
Assistant Chief
Fraud Section, Criminal Division

    1400 New York Ave NW
    Washington, D.C. 20005
    Telephone: (202) 514-2000
    FAX: (202) 514-3708
    Jacob.Foster@usdoj.gov
    Emily.Gurskis@usdoj.gov

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7234
    Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 24-329-CRB |
| Plaintiff, | GOVERNMENT'S MOTION TO PRECLUDE DEFENDANT HE FROM ASSERTING AN ADVICE OF COUNSEL DEFENSE |
| v. | |
| RUTHIA HE, A/K/A/ RUJIA HE, and DAVID BRODY, | |
| Defendants. | |

The United States respectfully moves this Court to exclude Defendant Ruthia He from asserting an advice-of-counsel defense at trial. Defendant He filed her notice of intent to assert an advice-of-counsel defense on September 15, 2025, Ex. A, the last day that the Court permitted such notice to be given (ECF No. 286 at 25:22-27:11). Defendant He's notice of advice-of-counsel, however, is defective because its notice of the subject matter being waived as part of Defendant He's advice-of-counsel defense is unduly narrow, with hair-splitting designations of the subject matter being waived like "Done's organization under a friendly PC structure pursuant to a Master Services Agreement Drafted between May and August 2020" and "Done's panel pay model memorialized in clinician contracts drafted in October 2020 and revised in September 2021." *See* Ex. A. Contrary to Defendant He's notice, her various "subject matter" waivers suggest that the subject matter of the attorney advice she wants to rely on for an advice-of-counsel defense is the broader subject matter of Done's compliance with laws, rules, and regulations regarding the prescribing of controlled substances, including via an online telehealth platform. By meticulously narrowing the subject matter over which she will waive privilege, Defendant He is transparently attempting to introduce advice-of-counsel favorable to her defense while withholding from disclosure attorney-client privileged records on the same subject matter (compliance with laws, rules, and regulations regarding the prescribing of controlled substances), unfairly prejudicing the government by denying the government the attorney-client records needed to meet this defense.

The government first raised this issue by letter to the Defendants in January and, in May, the government filed a prior motion requesting that the defendants be compelled to provide notice of their intent to assert an advice-of-counsel defense in advance of trial, (ECF No. 268). In that motion, the government explicitly flagged that the Ninth Circuit has held that an advice-of-counsel defense requires the implicit waiver of attorney-client privilege related to the subject matter of the defense, and that the defendants cannot selectively rely on advice of counsel favorable to their defense and shield from disclosure advice unfavorable to their defense. (ECF. No. 268 at 8 (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)); *Chevron*, 974 F.2d at 1162 ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."). Defendant did not

GOV. MOT. TO PRECLUDE AOC DEFENSE    1
24-CR-329 CRB

dispute this proposition, instead focusing on timing and rejecting the Government's contention that a last-minute disclosure would risk disruption of the proceedings and unfairness. But, in her notice, Defendant He appears to have risked just that, selectively waiving the privilege and seeking to shield communications that bear directly on her good faith. This is particularly unfair because the Government filed a *motion in limine* on this very topic on July 29, arguing that "if a Defendant falls short of presenting a full advice-of-counsel defense, and thus avoids the affirmative obligations such a defense places upon its proponent, Defendant should not be permitted to elicit testimony concerning statements attorneys may have made," and that "[i]n order to employ the defense, Defendant must waive any applicable privileges relating to her [] relationships with counsel." ECF No. 319 at 4. Defendant He did not substantively oppose this motion. ECF No. 334 at 1. If Defendant He is not willing to accept the scope of the waiver that results from an advice-of-counsel defense, she should not be allowed to rely on this defense at trial.

## FACTUAL BACKGROUND

Defendants were indicted on June 12, 2024 for their respective roles in executing conspiracies to distribute controlled substances and commit health care fraud by operating a self-proclaimed "digital health company" called Done that paid prescribers to sign prescriptions for controlled substances, including amphetamine dextroamphetamine, a Schedule II controlled substance that is sold generically and under a variety of brand names, including Adderall. (ECF No. 1, ¶¶ 4, 50–51). Throughout the conspiracy, Defendants consulted with several attorneys known and unknown to the government regarding the conduct alleged in the Indictment. Defendant He and her company have provided the government with lists of at least twenty attorneys that Done communicated with during the conspiracy, including three in-house counsel and attorneys from numerous law firms, including Goodwin Procter; Hooper Lundy & Bookman; Wilmer Hale; Buchalter; Payne & Fears; and an attorney from venture capital firm Craft Ventures. Defendant He has produced some, but not all, of the advice she received from Goodwin Procter, and no documents from any firms.

On December 2, 2024, Defendants moved for severance of their joint trial, ECF No. 160, which this Court denied. ECF No. 211. In the motion to sever, Defendant He stated that she intends "to refute

the Government's allegations based on her reliance on the expertise of Dr. Brody and other clinicians *and advisors*." ECF No. 160 at 2 (emphasis added). Both defendants intimated reliance on a good-faith defense throughout the motion. Between these assertions, and the number of lawyers employed both in-house and as outside counsel to potentially advise on its business practices, the Government had reason to believe that Defendants may assert an advice-of-counsel defense to the charges in the Indictment, prompting the government to raise the issue by letter to the Defendants on January 7, 2025 and then subsequently move in May to compel the defendants to disclose in advance of trial whether they intended to rely on an advice of counsel defense. *See* ECF No. 268. In that motion, the government noted that because it was precluded from reviewing attorney-client communications, allowing the defendants to raise an advice-of-counsel defense for the first time close to trial would create unnecessary disruptions or delays at trial, as the government would have to conduct its own investigation into the factual basis for the defense, including interviewing attorneys, requesting and reviewing communications with those attorneys, permitting the filter team an opportunity to identify responsive privilege-asserted material that was previously withheld and release that to the government, and to litigate issues related to the scope of the waiver of the attorney-client privilege (as it is now being forced to do on the eve of trial in this current motion).

The Court granted the government's motion and ordered the defendants to provide notice of whether they intended to raise an advice-of-counsel defense by September 15, 2025. (ECF No. 286 at 25:22-27:11). Defendant He did so, and informed the government "that she intends to argue at trial that she relied on the advice of counsel based on communications" about the following subject matters:

> 1. Done's organization under a friendly PC structure pursuant to a Master Services Agreement drafted between May and August 2020;
> 
> 2. Done's implementation of a 30 minute initial appointment time;
> 
> 3. Federal guidance and regulations during the Public Health Emergency declared in or around March 2020, and state laws/regulations, regarding the minimum follow-up frequency;

GOV. MOT. TO PRECLUDE AOC DEFENSE       3
24-CR-329 CRB

4. Federal guidance during the Public Health Emergency declared in or around March 2020 regarding the use of asynchronous follow-up;

5. Done's panel pay model memorialized in clinician contracts drafted in October 2020 and revised in September 2021;

6. Done's response to [H.B.]'s's mother's request for her adult son's medical records; and

7. Done's termination of the following nurse practitioners who practiced on Done's platform

    a. [N.E.]

    b. [M.O.]

    c. [I.H.]

    d. [S.R.]

Ex. A. Defendant He expressly stated that she did not intend to raise an advice-of-counsel defense related to any other subject matter except those identified above and did not waive privilege over other subject matters. As part of her notice, Defendant He released communications related to the seven topics identified above, which were all exclusively with attorneys at Goodwin Procter. During the time frame of the charged conspiracy, however, Defendant He and Done consulted with in house counsel and a number of different outside counsel apart from Goodwin Procter, including: McDermott Will & Emery; Payne & Fears; Fenwick & West; Alston & Bird; Exemplar Law; Hooper Lundy & Bookman; Buchalter; Moxie Legal Strategies; Vanegas Law Group; Venable; Craft Ventures; and WilmerHale. Many of these law firms have practice areas relating to health care compliance, including Hooper Lundy & Bookman, whose website states that the firm's "primary focus has been to guide, support and defend health care providers and suppliers in our shared mission to create and maintain a viable and effective health care system." OUR FIRM – Hooper Lundy & Bookman, *available at* https://hooperlundy.com/our-firm/#overview_sec (last accessed Sept. 18, 2025).

GOV. MOT. TO PRECLUDE AOC DEFENSE      4
24-CR-329 CRB

## LEGAL STANDARD

To assert an advice-of-counsel defense, a defendant must establish the foundational prerequisites, namely: (1) waiver of the applicable attorney-client privilege, (2) demonstrating that there was a full disclosure to her attorney of all material facts, (3) and that she relied in good faith on the specific course of conduct the attorney recommended. *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010). Furthermore, because an advice-of-counsel defense "is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent," the Ninth Circuit has previously affirmed a good-faith jury instruction as replacing the need to have an advice-of-counsel jury instruction. *Id.* at 540 (quoting *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961)).

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see id.* at 1162–63 ("[T]o the extent that Pennzoil claims that its tax position is reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it received."); *see also Salazar v. Driver Provider Phoenix LLC*, 2022 U.S. Dist. LEXIS 96884, at *7; 2022 WL 1747811 (D. Ariz. May 31, 2022) ("Defendant's assertion of the advice of counsel defense has waived both the attorney-client privilege and work product protection for documents falling within the subject matter of the waiver."). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."). Thus, defendants cannot, as Defendant He has done here, selectively rely on advice of counsel favorable to their defense and shield from disclosure advice unfavorable to their defense. *See Chevron*, 974 F.2d at 1162 ("The privilege which protects attorney-client communications may not be used both as a sword and a shield."); *Handgards, Inc., v. Johnson & Johnson*, 413 F. Supp. 926, 929

1  (N.D. Cal. 1976) ("[A] party may not insist on the protection of attorney-client privilege for damaging

2  communications while disclosing other selected communications because they are self-serving.").

3   As the Third Circuit has noted, "There is an inherent risk in permitting the party asserting a

4  defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client

5  privilege as to that advice," *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995), as

6  Defendant He has sought to do in her notice. Defendant He "should not be permitted to define

7  selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of

8  the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would

9  undermine the very purpose behind the exception to the attorney-client privilege at issue here –

10 fairness." *Id.*; *see also Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 564 (S.D. Fla.

11 2001) ("The advice of counsel defense cannot be limited to the counsel and advice of the Defendants'

12 choosing. Rather, when the advice of counsel defense is raised, the party raising the defense must

13 permit discovery of any and all legal advice rendered on the disputed issue.").

14  Thus, defendants do not unilaterally control the scope of the waiver. *See In re Om Group Sec.*

15 *Litig.*, 226 F.R.D. 579, 591 (N.D. Ohio 2005) ("If the court concludes the privilege has been waived, it

16 must then determine the scope of the waiver. The waiver applies to the rest of the communications on

17 the same subject matter. . . . Ultimately, the scope of the waiver must be based upon the facts of each

18 case; and the court must be guided by fairness concerns."). Where a defendant seeks to limit the scope

19 of a waiver, a court may nevertheless order that the waiver is broader than that claimed by the

20 defendant if fairness requires a broader scope. *See In re Actos Antitrust Lit.*, 628 F. Supp. 3d 524, 534-

21 36 (S.D.N.Y. 2022) (finding that defendant's attempt to limit waiver to attorney-client communications

22 on regulations relating to patents at issue was impermissibly narrow and would prejudice the plaintiff

23 by allowing defendant to use privilege as both a sword a shield, and ordering that the scope of the

24 waiver be broadened).

25  Courts in the Ninth Circuit have noted that "[t]here is no bright-line test for determining the

26 'subject matter' of a waiver." *MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 U.S. Dist. LEXIS

27 86390, at *7; 2010 WL 2925390 (N.D. Cal. July 26, 2010). "A court ultimately must be guided by 'the

28
GOV. MOT. TO PRECLUDE AOC DEFENSE   6
24-CR-329 CRB

subject matter of the documents disclosed, balanced by the need to protect the frankness of the client disclosure and to preclude unfair partial disclosures." *SNK Corp. of Am. v. Atlus Dream Entertainment Co.*, 188 F.R.D. 566, 571 (N.D. Cal. June 4, 1999); *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) (noting that there is no bright-line test for determining what constitutes the subject matter of a waiver and that courts must "weigh the circumstances of the disclosure, the nature of the legal advice sough, and the prejudice to the parties of permitting or prohibiting further disclosures"). Fairness is the guiding principle in determining the scope of the waiver, along with the context in which waiver occurs. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182-83 (2nd Cir. 2000). Where a defendant raises advice of counsel in the judicial setting, the Second Circuit has found that "a broad waiver would be appropriate," in contrast to inadvertent disclosure or extrajudicial waiver (*e.g.*, publication of a tell-all book about the defense of a high-profile defendant). *Id.* at 183; *see also Loguidice v. McTiernan*, 2018 U.S. Dist. LEXIS 142503, at *23-24; 2018 WL 4011584 (S.D.N.Y. Aug. 22, 2018) (noting that if "it were the case that defendant did not rely on the advice of counsel as part of an affirmative defense, the Court likely would have stopped its analysis [on the scope of waiver] here, and limited the scope of waiver solely to this advice," before determining that the scope of defendant's waiver was broader given the nature of the defense they asserted).

Just as the party asserting privilege has the burden of establishing it, that party "also bears the burden of demonstrating it has not been waived." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009). But "[b]ecause unfairness to the party seeking disclosure plays a central role in determination of the scope of the subject matter waiver, that party must demonstrate the specific prejudice it would suffer in the absence of the waiver." *Bank Brussels Lambert v. Credit Lyonnais (Suisse)*, 1995 U.S. Dist. LEXIS 14808, at *15; 1995 WL 598971 (S.D.N.Y. Oct. 11, 1995).

## ARGUMENT

Defendant He's notice of her intent to assert attorney-client privilege impermissibly narrows the scope of the subject matter waived by assertion of the advice of counsel defense, underscoring why appellate courts do not permit a party seeking to assert the advice of counsel defense "to define

selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery." *Glenmede Trust Co*, 56 F.3d at 486. Instead, each of the seven hyper-specific subject matter topics that Defendant He notices all point to Defendant He relying on the advice of counsel defense for a broader subject matter—Done's compliance with laws, rules, and regulations regarding the prescribing of controlled substances, including the prescribing of controlled substances through an online platform and operating a business that oversees practitioners with authority from the DEA to prescribe controlled substances. In other words, Defendant He appears to wants to argue that she consulted with attorneys on the seven subjects she noted as part of a good faith defense to show that she was compliantly operating Done which was subject to these laws, rules, and regulations relating to the prescribing of controlled substances, and that she therefore did not harbor the intent or knowledge to cause Done and its providers to issue unauthorized prescriptions. However, He has not met the basic prerequisites the Ninth Circuit requires for her to assert such an advice-of-counsel defense even on these narrow topics. Namely, she has not demonstrated that there was full disclosure to her attorney of all material facts— indeed, her unwillingness to provide the government with other privileged communications on related topics with other attorneys suggests that she may have withheld information from Goodwin—or that Defendant He followed in good faith the specific course of conduct the attorney recommended. *See Bush*, 626 F.3d at 539–40.

Moreover, while wanting to rely on the advice of counsel for her defense, however, Defendant He seeks to foreclose the government from obtaining other privileged communications on this same subject matter by claiming she only waived privilege on the specific topics she wants to introduce. Given the meticulous drafting of Defendant He's notice, the government can only assume that the advice of counsel on other topics related to Done's compliance with laws, rules and regulations relating to the prescribing of controlled substances actually undercut her defense that she operated Done in good faith.

A few examples expose the unfair hair-splitting nature of Defendant's position. For example, Defendant seeks to waive "Done's organization under a friendly PC structure pursuant to a Master

GOV. MOT. TO PRECLUDE AOC DEFENSE     8
24-CR-329 CRB

Services Agreement drafted between May and August 2020." But as the Indictment alleges (ECF No. 1 ¶ 58) and the jury will hear, Done's organization under this structure was designed to "conceal and disguise the scheme" by creating the false appearance that Defendant He was not owning, controlling, and operating the clinical practice (in violation of laws that prohibit non-clinicians from doing so), when, in fact, she was in charge of clinical operations. Thus, it would be unfair to allow Defendant to suggest that her consultation with lawyers on the organization of the PC demonstrates good faith compliance with the law without allowing the government discovery into what she told – and, perhaps more importantly, did not tell – *all* of her attorneys about her involvement with clinical practices, including hiring, firing, patient screening, the length of initial appointments, medication trials, follow-up appointments, and any other clinical matters related to Done. This is particularly true because it appears that Defendant He was seeking legal advice on behalf of Done Health, nominally owned by Defendant Brody, so any interaction that she had with attorneys seeking advice that pertained to the operations of Done Health (and anything she told, or did not tell, her attorneys about the structure that relationship) is relevant to her good faith. Further, some of the communications that Defendant He produced to the government states that Done Health could not classify nurse practitioners as independent contractors with Done Health because "California has very tough laws on whether an individual can be considered an independent contractor." Defendant He's knowledge that, under California law, she (and even Defendant Brody, the purported PC owner), could not manage the clinical practices of nurses if classified as independent contractors (as she did later classify them on paper, but not observe in reality) is similarly relevant to her good faith in observing compliance with Done's organization and controlled substances laws. But the fact that Defendant has not clearly waived on this subject (and likely many other relevant issues that the government cannot yet conceive of) deprives the government of the ability to test her defense.[1]

---

[1] The government also notes that this legal advice is inconsistent with a position that Defendant He has taken in this litigation in opposing the Government's *Motion in Limine* Number 4, which seeks to admit statements of workers at Done pursuant to the well-established agent/employee exception to the hearsay rule. FRE 801(d)(2)(d). In opposing the motion, Defendant He took the position that "the medical providers that worked at Done were not employees but rather *independent contractors* of Done Health, P.C.," (ECF No. 334 at 3), without disclosing that her litigation position is inconsistent with the
(footnote cont'd on next page)

Similarly, Defendant seeks to waive only as to "Federal guidance and regulations during the Public Health Emergency declared in or around March 2020, and state laws/regulations, regarding the minimum follow-up frequency," but the Government knows – as a result of a Risk Mitigation Report that was leaked to the media over which Done did not assert privilege – that Done's former Chief Medical Officer made both Defendants aware of other "serious[]" legal risks with the practice, including that "prescribers have been refilling stimulant prescriptions routinely without a license in the state of the patient."  The former Chief Medical Officer recommended that the "Goodwin Proctor Law Firm" should document a legal opinion on this practice that should be followed "immediately" and made Defendant He responsible for implementing the practice.  What happened or didn't happen?  The Government does not know because it has not asked the former Chief Medical Officer (or any of Done's attorneys) about this issue because it is privileged.  But it would be unfair and confuse the jury for Defendant He to suggest that she had good faith in her efforts to comply with controlled substances laws without allowing the Government discovery into the full scope of legal advice given to her on these issues.  Further, Defendant He makes a request to selectively waive privilege for four nurse practitioners that were terminated but not others, which, if anything, raises even *more* suspicion about those not on this list.  Did He similarly seek counsel for other nurse practitioners and receive unfavorable advice?  Fairness demands that if Defendant He is going to defend against controlled substances charges by arguing that she engaged in good faith reliance on legal counsel, the Government needs access to the full scope of advice to understand what other communications may undermine the veracity of her assertion.

This is particularly so given that Done's privilege log reflects that Done had attorney communications with at least ten different law firms apart from Goodwin Procter (the sole source of the documents Defendant He has released), including law firms specializing in health care compliance. Without a proper waiver, the government is unfairly prejudiced in its prosecution of this case, as it cannot fully test the good faith defense that Defendant He is raising.  Relatedly, overly narrow subject

---

legal advice of at least one of her lawyers (and likely others, if the full scope of the advice was disclosed).  This is a further reason for the Court to grant the *motion in limine*, in addition to the reasons discussed in ECF Nos. 319 and 349 (at pp. 3-7).

matter waivers impede the government in responding to an advice of counsel defense because they preclude the government from investigating the absence of attorney client communications on the subject matter implicated in Defendant He's good faith defense.

Defendant He's half-hearted waiver is a paradigmatic use of the attorney-client privilege as a sword and shield, and the Court should reject Defendant He's attempt to so limit the contours of her advice of counsel defense and rule, consistent with other courts that have found the "subject matter" for similarly situated defendants to be the broader (and correct) subject matter of compliance with laws, rules, and regulations governing the prescribing of controlled substances. *See United States v. Carver*, 2023 U.S. Dist. LEXIS 156599, at *6-8; 2023 WL 5916561 (S.D. Fl. Aug. 1, 2023) (finding that the subject matter of an advice of counsel defense in a health care fraud case was defendants' "compliance with health care laws, rules, and regulations in the running of the business operations described in the Superseding Indictment."), *adopted by United States v. Dougherty*, 2023 U.S. Dist. LEXIS 154638; 2023 WL 5620715 (S.D. Fla. Aug. 31, 2023).

Moreover, because Defendant He has raised this defective notice so close to the trial date, she should be precluded from raising an advice-of-counsel defense. As early as January 2025, the government requested that the defendants provide notice of whether they intend to assert the advice of counsel defense. (ECF No. 268 at 3). And in May 2025 when the government moved to compel the defendants to disclose whether they intended to raise an advice of counsel defense, the government noted that the Ninth Circuit's opinion in *Chevron* prohibited a defendant from selectively choosing what advice of counsel they wanted to rely and anticipated that there would be litigation on this issue mid-trial if the defendants were not required to provide early notice. (*Id.* at 7). Defendant He never opposed, questioned, or otherwise disputed this basic proposition. Nor did she oppose the government's *motion in limine* on this issue. But after seeking to delay notice as long as possible notwithstanding the government's unusually early disclosure of witness and exhibit lists, Defendant He has generated a need for this pretrial litigation by providing the meticulously drafted subject matter waivers in her notice.

GOV. MOT. TO PRECLUDE AOC DEFENSE     11
24-CR-329 CRB

A defendant serious about asserting an advice of counsel defense would have done so more straightforwardly, as the defendant did in *United States v. Patel*, 9:19-cr-80181 (S.D. Fla.).[2] *See* Ex. B, Acknowledgement of Waiver of Attorney-Client and Work Product Privilege in *Patel* (waiving attorney-client privilege relating to the subject matter of the allegations in the indictment, including compliance with anti-kickback statute; compliance with laws, statutes, and regulations relating to billing Medicare for cancer genomic testing; and money laundering). That Defendant He has not done so shows that she is not asserting the advice of counsel defense in good faith, and she should be excluded from unfairly using the attorney-client privilege as a shield and sword. *See Columbia Pictures Tel. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (holding that when a party argued he engaged in conduct based on the advice of counsel but refused to answer questions regarding relevant communications with counsel until the eleventh hour, the district court was within its discretion to preclude the party from invoking the advice-of-counsel defense).

## CONCLUSION

For the foregoing reasons, the government requests that the Court preclude Defendant He from introducing an advice of counsel defense given her defective subject matter waivers and insufficient disclosures of attorney-client communications that are related to the actual subject matter of her attorney client defense—Defendant He's compliance with laws, rules, and regulations relating to the prescribing of controlled substances.

---

[2] In addition to Defendant He's gamesmanship on the definition of the subject matter waiver, Defendant He has not yet executed a proper written waiver – or responded to the government's request for the same – and the government understands that Done has previously taken the position that Defendant He cannot on her own waive Done's privilege. These procedural defects in the waiver may prevent counsel who has advised Defendant He or Done on the waived subject matters from communicating with the government about Defendant He's advice-of-counsel defense, as counsel may be reluctant to disclose privileged communications without a legally sufficient waiver. As noted above, Defendant He has had unusually early disclosure of the government's witness and exhibit list and theories of the case, and months to secure the waivers necessary to assert the advice-of-counsel defense. Her want of prosecution of the advice-of-counsel defense on procedural grounds is further reason to exclude the defense entirely and prevent time-intensive eve-of-trial litigation.

| | |
|---|---|
| DATED: September 19, 2025 | Respectfully submitted, |
| | |
| | CRAIG H. MISSAKIAN<br>United States Attorney |
| | |
| | LORINDA I. LARYEA<br>Acting Chief, Fraud Section<br>U.S. Department of Justice |
| | |
| | */s/ Emily Gurskis*<br>JACOB FOSTER<br>Acting Chief, Health Care Fraud Unit<br>EMILY GURSKIS<br>Assistant Chief<br>Department of Justice<br>Criminal Division, Fraud Section |
| | |
| | KRISTINA GREEN<br>Assistant United States Attorney<br>Northern District of California |