WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
  kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
  mschachter@willkie.com
  sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S TRIAL BRIEF CONCERNING THE COURT'S SEPTEMBER 9, 2025 ORAL RULING REGARDING PERCIPIENT WITNESSES AND THE EXPECTED TESTIMONY OF GOVERNMENT WITNESS PATRICK SCHOENECKER** |

1   Ms. He files this brief in order to apprise the Court, in advance, of an objection that she may need to raise during the testimony of Government witness Patrick Schoenecker, who is expected to testify as the Government's fourth witness, on either Monday or Tuesday.

On September 9, 2025, during the Pretrial Conference, the Court considered and ruled upon the scope of permissible percipient witness testimony. Ms. He sought a ruling that would limit certain percipient fact witness testimony to the witness's factual experience but which would not permit the witness to offer the jury an explanation of the personal opinions that led the witness to act or speak as they did—unless the Government complied with its expert opinion obligations under Rule 16. On this point, the Court disagreed with Ms. He and ruled that a percipient fact witness could explain *why* they acted as they did or said what they said. *See* Ex. A (Tr. at 34:1-35:3 (The Court: "Witness[ ] testif[ies] X, Y, Z. . . .[If asked] why did you say that? Why did you do that? It comes in. It comes in with a cautionary instruction. ….it's coming in to explain what this witness thought when this witness said X, Y, Z. . . .So that's how I handle it.")

Government witness Schoenecker is a nurse-practitioner in Minnesota who never worked at Done. He never met or interacted with Ms. He or Dr. Brody, in any respect. Instead, in January 2021, with <u>18 months</u> of experience as a Psychiatric-Mental Health Nurse Practitioner, he applied, via the job website "Indeed," to practice on Done's telehealth platform. He interviewed with a Done recruiter named Sydney Jimenez and "was offered a second-round interview" but "declined." Ex. B (Gov't Report of Interview, Nov. 15, 2023).

Schoenecker was interviewed by the Government in November 2023. The following is the complete description of what he told the Government, in November 2023, about his interview with Done:

> Schoenecker stated that he interviewed with Sydney Jimenez via video conference. Schoenecker asked Jimenez questions about the testing Done conducted to assess an ADHD diagnosis but couldn't get answered.

1

DEFENDANT RUTHIA HE'S TRIAL BRIEF CONCERNING THE COURT'S SEPTEMBER 9, 2025 ORAL RULING REGARDING PERCIPIENT WITNESSES AND THE EXPECTED TESTIMONY OF GOVERNMENT WITNESS PATRICK SCHOENECKER
Case No. 3:24-cr-00329-CRB

Schoenecker stated [to the Government, in 2023] that it was "sketchy" that they would not give an answer on testing. Schoenecker stated that at Nystrom and Associates [the practice where he began working *after* his January 2021 interview with Done] patients were assessed by a PHD in Neuropsychology and screened with CPT tests and TOVA assessments before a diagnosis with ADHD was made. Schoenecker stated that at Nystrom, patients would also undergo urinalysis testing and get an EKG done before determining a treatment plan.

Schoenecker stated that Done said it was still formulating its testing plan. Schoenecker stated that he was concerned they existed without a testing plan in place. Schoenecker stated that he was offered a second-round interview, but he declined due to the inadequate testing.

Ex. B. In other words, Schoenecker's interactions with Done were as follows:

- He interviewed with a Done recruiter in January 2021.
- During that interview, he asked questions about the testing Done performed to assess an ADHD diagnosis but could not get answers to his questions.
- The Done recruiter told him that Done was still formulating its testing plan.
- Schoenecker was offered a second round interview but he declined because he was concerned that Done did not have a testing plan in place.

Given the Court's September 9 Ruling, Ms. He agrees that the testimony described in the bullet points above is all fair game (although of questionable relevance). What is not fair game is for Schoenecker to testify about the testing practices at his current practice, since he only began working at his current practice *after* his interview with Done and they did not serve as the basis for his decision to decline a second interview. Moreover, the Government has hired Dr. Goodman to opine about the "standard of care" for ADHD; if the Government seeks to bolster Dr. Goodman's testimony by eliciting information about the practices of random psychiatrists' offices in Minnesota, it opens the door to the defense calling equally-random clinicians from around the United States to testify about their personal practices and this will be an extraordinarily long trial.

2

DEFENDANT RUTHIA HE'S TRIAL BRIEF CONCERNING THE COURT'S SEPTEMBER 9, 2025 ORAL RULING REGARDING PERCIPIENT WITNESSES AND THE EXPECTED TESTIMONY OF GOVERNMENT WITNESS PATRICK SCHOENECKER
Case No. 3:24-cr-00329-CRB

Also out of bounds is testimony from Schoenecker regarding his opinion of various Done policies **which Government agents have since described to him on multiple occasions in 2023 and during the summer of 2025,** but which were **not** described to him in 2021 during his January interview. *See* Ex. B, Ex. C (July 21, 2025 Interview Summary); Ex. D (September 23, 2025 Interview Summary). The interview memoranda disclosed to the defense from the Government demonstrates that over the past two years, Government agents have consistently interviewed Schoenecker as if they were vetting a potential expert, meaning they have taken the liberty to inform him of Done's "policies" and "practices" (articulated and described using the Government's particular "gloss" on what the practices and policies were) and sought his opinion on these "practices," even though *none* of those policies or practices were described to Schoenecker during his actual 2021 interview with Done and thus, none could have served as the basis for his decision to decline a "second-round" interview. Testimony from Schoenecker about purported "practices" he only learned about through Government agents or perhaps public news articles but which were not described to him during his 2021 interview is classic "expert opinion" testimony and must be precluded.

Dated:  September 28, 2025                    WILLKIE FARR & GALLAGHER LLP

                                              By:    */s/* Michael S. Schachter
                                                     Koren Bell
                                                     Michael S. Schachter
                                                     Steven J. Ballew

                                                     *Attorneys for Defendant*
                                                     RUTHIA HE