WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
mschachter@willkie.com
sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S OPPOSITION TO GOVERNMENT'S MOTION TO QUASH** |

The Government's motion, *see* Dkt. 417, to quash the Subpoena to K.C., the mother of patient N.C., is rife with mischaracterizations of the case history as to K.C.'s expected testimony, the Government's conversations with defense counsel, and Defendant's intended use of K.C.'s testimony. As such, the Court should deny the Government's motion to quash the Subpoena for the following reasons.

***First***, the Government is incorrect that the defense needed Court approval to issue the Subpoena at issue; it is well established that subpoenas that require production of materials at trial do not.[1] The *Nixon* subpoena requirements for *pretrial* document production do not apply to a subpoena, such as that at issue, which seeks documents solely for production at trial. *See United States v. Nixon*, 418 U.S. 683, 702 (1974) (specifying that "[e]nforcement of ***pretrial*** duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues") (emphasis added). By extension, the Government's citation to N.D. Cal. Criminal Local Rule 17-2 is inapposite. (Mot. to Quash, ECF No. 417 at 8:17–24). N.D. Cal. Criminal Local Rule 17-1 authorizes Defendant to issue the subpoena using Form CAND 89A, as Ms. He did here:

> A party seeking to compel the appearance of a witness to testify at a criminal proceeding pursuant to Rule 17(a) or (b) of the Federal Rules of Criminal Procedure, or a party seeking to compel the appearance of a witness to testify and bring documents to a criminal proceeding pursuant to Rule 17(c), must utilize form CAND 89A, "SUBPOENA TO

[1] *See, e.g.*, *United States v. Jenkins*, 895 F. Supp. 1389, 1396 (D. Haw. 1995) ("The first sentence of Rule 17(c) clearly places the issuance of subpoenas *duces tecum* returnable at trial under the provisions of Rule 17(a) and 17(b) governing the issuance of trial subpoenas *ad testificandum*."); *United States v. Gel Spice Co.*, No. 80-cr-650, 1983 U.S. Dist. LEXIS 15425, at *11 (E.D.N.Y. Jul. 15, 1983) ("Materials produced pursuant to a subpoena may be provided at trial or prior to trial. A subpoena returnable on the day of trial may be issued without leave of court. . . . However, it is within the discretion of the trial court whether or not to order production of subpoenaed materials prior to trial.") (internal citations omitted); *United States v. Garg*, No. 21-cr-45-JCC, 2024 WL 37047, at *1 ("Under Federal Rule of Criminal Procedure 17(c)(1), 'a subpoena may order the witness to produce any books, papers, data or other objects the subpoena designates.' However, 'leave of court is required for a *pretrial* subpoena under Rule 17(c)(2) in criminal proceedings.'") (alterations and citations omitted) (emphasis added).

> TESTIFY IN A CRIMINAL CASE." Forms are available at the Court's website: cand.uscourts.gov.

N.D. Cal. Crim. L.R. 17-1; *see* Dkt. 417 at 14-22 (Subpoena to K.C.).

***Second***, the Government already agreed to the scope of the Subpoena. Although the Government makes much ado about the timing and breadth of the Subpoena, the fact is that the Government not only knew about the Subpoena in advance (and Defendant's intended cross examination of the evidentiary failures in K.C.'s purported testimony since July), but even negotiated and agreed to a subpoena that would have been *wider* in scope than the one issued. Specifically, on September 23, 2025, Defendant's counsel, Michael Schachter, emailed counsel for the Government explaining: "[a]s [defense counsel] mentioned to the Court yesterday, the Government's decision to call the three parents puts [us] in the uncomfortable position of needing to subpoena them for records relating to their relationships with and observations of their children." Ex. 1. Mr. Schachter then requested the Government "facilitate service of these subpoenas" to prevent the already "difficult process" from becoming "more unpleasant" through the use of a regular process server. *Id.* Counter to the Government's present show of empathy with subpoenaed witnesses calling the Government in a "confused and distressed state," *see* Dkt. 417 at 8, the Government *refused* to facilitate service to its own witnesses in order to reduce their "distress." The Government apparently also decided against providing its witnesses with advance notice of the defense's intention to subpoena them, which also would have reduced the "confusion and distress[]" that the Government now complains about. Ex. 1. Moreover—and perhaps more importantly—in its correspondence with defense counsel, the Government specifically requested that defense counsel revise the subpoenas to the following:

> (1) communications relevant to the patients' medical status as related to their mental health and medical diagnoses for ADHD, if applicable; (2) communications between the subpoena recipient and the patient for the following time periods: December 1, 2020 – September 30, 2022 for [D.C]; **August 1, 2021 – March 31, 2023 for [K.C.]**; and July 1,

> 2020 – December 31, 2020 for [D.D.] [these time periods are based on 3 months prior to the patients' Done treatment through 3 months after the Done treatment except in the case of [D.D.]]; and (3) photos of the patients for the same time period.

Ex. 2 (emphasis added).

Finally, the Government asked Defendant's counsel:

> Would you agree to revise your subpoenas? **If not**, we intend to file a notice with the Court indicating our view that these subpoenas are overbroad, particularly given that none of these individuals are represented.

*Id.* (emphasis added).

Defendant's counsel *not only agreed*, but used the Government's proposed language and *further limited the date ranges*. Dkt. 417 at 14-22 (Subpoena to K.C.). Needless to say, defense counsel was surprised to see the Government file a motion to quash given this prior correspondence.

***Third***, while the Government may intend to call K.C. for the purposes of advancing its case, the defense seeks to elicit testimony and admit evidence that would advance *its own* case: to demonstrate that her son, N.C., would have presented "normally" to individuals outside of his family, such as Done practitioners, and that the ADHD medication assisted him in navigating his mental ailments. As much as the Government may like to imagine that its witnesses can *only* proffer evidence in the Government's favor, that is not how the adversarial process works. Defense counsel is not limited to using cross for the purposes of impeachment—rather counsel is permitted to use cross as an opportunity to admit evidence in support of the defense case. As such, the Government's arguments regarding the use of evidence for the "sole" purpose of impeachment are inapposite.

Moreover, it is plain that communications between K.C. and her son during the time period surrounding his treatment by Done , as sought in the Subpoena, are evidentiary and relevant. (Subpoena, Request 1.) K.C. is a Government identified witness who is testifying as to

the condition of her son and her opinions about the role Done and Adderall played in that condition. It is obvious enough that K.C.'s observations would be grounded at least in part in written communications between her and her son. Accessing those communications is critical to understanding whether her observations were grounded in fact or a product of hindsight bias. Additionally, the written communications themselves may serve as evidence of improvements in her son's condition and struggles with ADHD.

Likewise, communications between K.C. and others *about* her son during the time surrounding his treatment by Done, as sought in the Subpoena, are evidentiary and relevant. (Subpoena at Request 2.) These records would help demonstrate K.C.'s role in her adult's son's life—including as to what aspects of it she was or was not privy, which is not impeachment necessarily but will assist the jurors in assessing how much weight to assign to her testimony. Moreover, these communcations will capture K.C.'s real-time views about her son's condition, about Done, and about Done's prescribed treatment, which is relevant evidence given that her son's treatment serves as the basis for one of the substantive Controlled Substance Act counts in the Indictment. Nor may this be characterized as a fishing expedition: witness statements produced by the Government demonstrate that K.C. has already told Government agents that she was in "constant communication" with her son's doctors as well as with his friends, who purportedly contacted her to discuss her son's health.

///

///

The Court should deny the Government's motion and order K.C. to comply with the Subpoena.

Dated: October 6, 2025

WILLKIE FARR & GALLAGHER LLP

By: */s/ Koren Bell*
Koren Bell
Michael S. Schachter
Steven J. Ballew

Attorneys for Defendant
RUTHIA HE