# Exhibit A

Volume 20

Pages 4360 – 4558

United States District Court

Northern District Of California

Before The Honorable Charles R. Breyer

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 10-0642 CRB |
| ) | |
| Joseph Carozza, Christopher ) | |
| Napoli, and Daniel Johnson, ) | |
| ) | **JURY TRIAL** |
| Defendants. ) | |
| _____) | |

San Francisco, California
Friday, November 9, 2012

**Reporter's Transcript of Proceedings**

**Appearances:**

For Plaintiff:          Melinda Haag
                        United States Attorney
                        450 Golden Gate Avenue, Box 36055
                        San Francisco, California  94102
                  **By: Kirstin M. Ault, Esquire
                        Tracie L. Brown, Esquire
                        Assistant United States Attorneys**

For Defendant:
Christopher Napoli:     Sugarman & Cannon
                        44 Montgomery Street, Suite 2080
                        San Francisco, California  94104
                  **By: Christopher J. Cannon, Esquire
                        Bonnie Chan, Esquire**

(Appearances continued on next page.)

*Reported By:*          *Sahar Bartlett, RPR, CSR 12963*
                        *Official Reporter, U.S. District Court*
                        *for the Northern District of California*

| | | |
|---|---|---|
| 1 | **Appearances (continued):** | |
| 2 | For Defendant<br>Daniel Johnson: | Law Offices of Martin A. Sabelli |
| 3 | | 149 Natoma Street, Suite 300<br>San Francisco, California  94105 |
| 4 | By: | **Martin Antonio Sabelli, Esquire**<br>**David W. Fermino, Esquire** |
| 5 | | |
| 6 | For Defendant<br>Joseph Carozza: | Clarence Dyer & Cohen, LLP |
| 7 | | 899 Ellis Street<br>San Francisco, California  94109 |
| 8 | By: | **Josh Alan Cohen, Esquire**<br>**Nicole Howell Neubert, Esquire** |
| 9 | Also Present: | Jason Chin |
| 10 | | Brandon Bridgers<br>Government's DEA Special Agents |
| 11 | | Denise Oki |
| 12 | | Technical Support for the Government |
| 13 | | Kevin Morley<br>Technical Support for the Defense |

---oOo---

Case 3:24-cr-00429-CRB   Document 467-1   Filed 11/03/25   Page 52 of 200   4511
Case 3:24-cr-00429-CRB   Document 478-1   Filed 11/30/25   Page 154 of 200
**Charging Conference**

|  |  |
|---|---|
| 1 | instructions? |
| 2 | **THE COURT:** No, in terms of whether or not the rules |
| 3 | and regulations governing the conduct of physicians is |
| 4 | applicable and pharmacists is applicable to the -- to |
| 5 | Mr. Johnson as an example, who is neither a pharmacist nor a |
| 6 | physician. |
| 7 | And the answer very simply is, yes, of course it is. |
| 8 | Because under an aider and abettor theory, to assist a doctor |
| 9 | to commit a violation of whatever, for a pharmacist, whatever, |
| 10 | is a crime, assuming all the other things are proven. |
| 11 | Otherwise you would never have an aider or an abettor who is |
| 12 | not a practitioner. |
| 13 | So anyway, I just want to put that out, and you've |
| 14 | made your record, you can disagree with me.  But that's in my |
| 15 | view hornbook law.  I mean, it's that profound.  Hornbook law. |
| 16 | **MR. COHEN:** Your Honor, the reason that I am up here |
| 17 | is because it appears that this is the instruction where the |
| 18 | Court attempted to address the concern we raised about what it |
| 19 | means to act outside the usual course of professional practice |
| 20 | and not for legitimate medical purpose, as the Ninth Circuit |
| 21 | has explained that concept. |
| 22 | **THE COURT:** And I changed it, though.  I did |
| 23 | something that you wanted me to do.  Maybe it's not in this |
| 24 | one. |
| 25 | **MR. COHEN:** It looks like you modified the first |

1  sentence of the last paragraph to make clear that it is not
2  enough for the US to prove that a practitioner committed
3  malpractice, intentional or otherwise, for which we are of
4  course grateful.
5             **THE COURT:**  You don't have to be grateful.
6             Where -- what --
7             **MS. AULT:**  The last paragraph, Your Honor.
8             **MR. COHEN:**  The last paragraph of page 17.
9             **THE COURT:**  Okay.  Right.  Okay.
10            So let me read from ***Feingold*** because that's where I
11 took it from.
12            454 Federal Reporter 3rd, page 1010.  454 F.3d 1001
13 at 1010.
14            "We hold that an instruction is improper if it
15 allows a jury to convict a licensed practitioner under
16 Section 841(a) solely on a finding that he has committed
17 malpractice, intentional or otherwise.
18            "Rather, the District Court must ensure that the
19 benchmark for criminal liability is higher -- is the higher
20 showing that the practitioner intentionally has distributed
21 controlled substances for no legitimate medical purpose and
22 outside the usual course of professional practice."
23            **THE COURT:**  So that's what this says.
24            Counsel.
25            **MR. COHEN:**  It does, Your Honor, and the issue that

1  that raises is what is the difference between intentional
2  malpractice or, frankly, malpractice, intentional or otherwise,
3  and the higher standard of acting outside the usual course and
4  for no legitimate medical purpose.  That is not an obvious
5  distinction.  It is going to be very difficult for the jury to
6  comprehend that on its own.
7           And what we had suggested is that the Court use the
8  further elucidation that **_Feingold_** has provided to explain the
9  difference and tell the jury what it means to actually act
10 outside the usual course of professional practice.
11          And what we had proposed is that the Court cite,
12 quote, "language that appears later to the effect that what it
13 means is a doctor has to act so far outside" -- I don't want to
14 misquote what we asked for -- "the language we propose is that
15 the Court tell the jury that a physician must have so wantonly
16 ignored the basic protocols of the medical profession that he
17 acted as a large scale drug-pusher, not as a physician, or
18 alternatively, as the Supreme Court explained it in the
19 Gonzalez versus Oregon decision from 2006 that a doctor used
20 his prescription writing powers as a means to engage in illicit
21 drug dealing and trafficking as conventionally understood."
22          **THE COURT:**  I think that's fine, I think I should
23 include that.
24          **MS. AULT:**  Your Honor, we disagree, because in both
25 cases, the Court was making a statement of law specific to the

1  acts of the -- or elucidating -- specific to the facts of those
2  cases.
3           Gonzalez versus Oregon is completely inapposite.
4  That case has nothing to do with what's going on here.
5           **THE COURT:**  But I sort of like that language.
6           You see, here is what Mr. Cohen is saying, and I
7  think that there's -- and I'm concerned about it because you
8  can't have a defendant, a doctor, convicted if he was careless,
9  if he committed malpractice, intentional or not.  He said,
10 look, I don't care what that rules of medicine are, I'm going
11 to give this person blah, blah, blah.  I'm going to chop off
12 the person's leg, I don't care, you know, all right, that's
13 malpractice.
14          But that's not what this case is about.  What this
15 case is about is essentially drug pushing.  That is to say, and
16 the last quote I thought really brought it home, it is that.
17 That's the line.
18          Let me tell the Government something:  If you
19 haven't proven that, you don't deserve to win.  I mean, you --
20 it's just not there.  You're trying a doctor, I'm not saying
21 doctor is a sacrosanct, you're trying an individual who was,
22 quote, "using his power as a doctor in a way that it was
23 entirely, in the Government's view, entirely inappropriate."
24          And what made it inappropriate was not the one or
25 two or three prescriptions that would constitute malpractice,

1  but was that volume of his activity over some period of time,
2  which demonstrated that it was not careless, that it was
3  intentional, and that it was so far outside the scope of the
4  purview of medical practice.
5         And so I'm of the opinion that if the jury returns a
6  verdict of guilty in this case, and I do not know what they'll
7  do, but if they do, I want to make sure they use the proper
8  standard.  I don't want there to be an argument down the line
9  that, you know, they had a hard time trying to figure out and,
10 gee, they wouldn't want to go to a doctor who -- treating
11 people this particular way and, boy, he was really careless and
12 so forth and so on.
13         You want to make sure that it's well outside the
14 scope of permissible practice.  And I think that you can put it
15 in conclusory terms, you know, acting within the scope, usual
16 course of practice, not malpractice, any of those terms, but
17 unless you add some definition to it, unless you put some legs
18 on it and lines on it and explain it, it's susceptible of a
19 mistake.  I don't want there to be a mistake.
20         And I'm not -- I don't believe for a moment the
21 Government thinks they can't prove it.  I mean, you take the
22 language of Mr. Cohen, the second part, the first part is using
23 words like "drug-pusher" and so forth, the problem is, you
24 know, everyone's got their own idea of a drug-pusher,
25 generally, they are found in UN Plaza, and we are not talking

```
 1  about that.  We are not talking about some guy who gets up in
 2  the middle of the night and has three pieces of crack and is
 3  selling it, or somebody who is importing drugs from Mexico and
 4  pushing them.  So drug-pusher, I don't like because it's too --
 5  even though the Court uses it in Feingold, it's just too
 6  evocative of all sorts of other indicia of clandestine,
 7  secretive, elicit conduct.
 8          This is not that.  This was not, quote, "hidden" in
 9  some sense.  You can argue it was concealed, but not in the
10  same sense a drug-pusher hides it, so that last thing, I like
11  that, what was that?
12          MR. COHEN:  "The Government must prove that the
13  practitioner" --
14          THE COURT:  What case are you talking that from?
15          MR. COHEN:  Gonzalez versus Oregon, 546 U.S. 243,
16  pin site 270, and the quote is that, "The practitioner used his
17  prescription writing powers as a means to engage in elicit drug
18  dealing and trafficking as conventionally understood."
19          MS. AULT:  And, Your Honor, we actually would be
20  fine with that if we took out the "as conventionally
21  understood" language because we believe, again, that brings up
22  the specter of the drug runners from Colombia or the guy
23  selling crack in UN Plaza.  That's not what we are talking
24  about here.  "As conventionally understood" doesn't mean --
25          THE COURT:  So read it without.
```

1       MS. AULT: It would be, "Used his prescription
2  writing powers as a means to the engage in elicit drug dealing
3  and trafficking."
4       THE COURT: I think it can go out.
5       MR. COHEN: Your Honor, it's the Supreme Court of
6  the United States that provided that information.
7       THE COURT: Sometimes they're wrong.  Was it
8  unanimous?  If they're unanimous, I'm quite certain it was
9  wrong.
10      MR. COHEN: Split decision.
11      THE COURT: Split decision, there is a possibility
12 that somebody's right.
13      But it was in a different context.  And the
14 Government's right in that, it was on the right to life, right?
15 Right to suicide, something like that, right to whatever it is.
16      Okay.  So I'll take out the last couple of words and
17 leave it as it is and put in the first part.
18      MR. COHEN: There were other -- two other lesser
19 issues relating to the definition of this crime that we thought
20 was appropriate for the Court to address.
21      One was the significance or insignificance of the
22 lack of an in-person examination, given the volume of testimony
23 that's been adduced on that.
24      And we propose what we believe is a fairly even way
25 of handling it, which is simply to advise the jury that they