WILLKIE FARR & GALLAGHER LLP
Koren Bell (SBN 268614)
  kbell@willkie.com
2029 Century Park East
Los Angeles, CA 90067
T: 310-855-3016
F: 310-855-3099

Michael S. Schachter (*Pro Hac Vice*)
Steven J. Ballew (*Pro Hac Vice*)
  mschachter@willkie.com
  sballew@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
T: 212-728-8102
F: 212-728-9102

Attorneys for Defendant
RUTHIA HE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHIA HE, A/K/A RUJIA HE, and DAVID BRODY,<br><br>Defendants. | CASE NO. 3:24-cr-00329-CRB<br><br>**DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21 U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME** |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 1. | The Court Should Give Its *Napoli*-based Malpractice Instruction. | 2 |
| 2. | The Standard is Conjunctive. | 3 |
| | a. *Ruan* Confirmed Ninth Circuit Precedent. | 4 |
| | b. *Ruan* Has Not Changed Any Other Circuit's Approach | 6 |
| | c. The Supreme Court Has Not Otherwise Addressed Whether the Authorization Clause is Conjunctive or Disjunctive. | 10 |
| 3. | The Modifiers "Legitimate" and "Usual" Should Be Removed | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gonzales v. Oregon*,
    546 U.S. 243 (2005) ................................................................................................... 3

*Ruan v. United States*,
    597 U.S. 450 (2022) ............................................................................................ *passim*

*United States v. Abovyan*,
    988 F.3d 1288 (11th Cir. 2021) ............................................................................. 8, 9

*United States v. Alghazouli*,
    517 F.3d 1179 (9th Cir. 2008) ............................................................................ 11, 12

*United States v. Armstrong*,
    550 F.3d 382 (5th Cir. 2008) ..................................................................................... 8

*United States v. Bek*,
    493 F.3d 790 (7th Cir. 2007) ..................................................................................... 7

*United States v. Belfiore*,
    2024 U.S. App. LEXIS 11311 (2d Cir. May 9, 2024) ............................................... 7

*United States v. Bothra*,
    2022 U.S. Dist. LEXIS 84971 .................................................................................. 8

*United States v. Chisholm*,
    2023 U.S. Dist. LEXIS 113956 (D. Alaska June 30, 2023) ...................................... 5

*United States v. Feingold*,
    454 F.3d 1001 (9th Cir. 2006) ....................................................................... 2, 3, 5, 10

*United States v. Heaton*,
    59 F.4th 1226 (11th Cir. 2023) ................................................................................. 9

*United States v. Kabov*,
    No. 19-50083, 19-50089, 2023 WL 4585957 (9th Cir. July 18, 2023) .................... 5

*United States v. Kahn (Kahn II)*,
    58 F.4th 1308 (10th Cir. 2023) ................................................................................. 9

*United States v. Keller*,
    142 F.4th 645 (9th Cir. 2025) (per curiam). ECF No. 483 .................................. 11, 12

*United States v. Keller*,
    No. 23-656 (9th Cir. 2025) ............................................................................................. 12

*United States v. Kraynak*,
    No. 4:17-CR-00403, 2022 WL 3161907 (M.D. Pa. Aug. 8, 2022), aff'd, No.
    22-2500, 2023 WL 4636419 (3d Cir. July 20, 2023) ...................................................... 6

*United States v. Lamartiniere*,
    100 F.4th 625 (5th Cir. 2024) ........................................................................................ 8

*United States v. Lubetsky*,
    2024 U.S. App. LEXIS 3367 (11th Cir. Feb. 13, 2024) ................................................. 8

*United States v. Moore*,
    423 U.S. 122 (1975) ................................................................................................ 10, 11

*United States v. Nelson*,
    383 F.3d 1227 (10th Cir. 2004) ..................................................................................... 9

*United States v. Oladipo*,
    2023 U.S. Dist. LEXIS 121268 (D. Mass. July 14, 2023) ............................................. 7

*United States v. Oppong*,
    2022 U.S. App. LEXIS 9475 (6th Cir. Apr. 8, 2022) ..................................................... 8

*United States v. Parasmo*,
    2023 U.S. Dist. LEXIS 15455 (E.D.N.Y. Jan 30, 2023) ............................................. 7, 8

*United States v. Parker*,
    145 F.4th 915 (8th Cir. 2025) ...................................................................................... 10

*United States v. Patel*,
    2023 U.S. Dist. LEXIS 212098 (D. Nev. Nov. 28, 2023) .............................................. 5

*United States v. Pham*,
    120 F.4th 1368 (9th Cir. 2024) ................................................................................... 4, 5

*United States v. Rand*,
    2023 U.S. Dist. LEXIS 218784 (D. Nev. Dec. 7, 2023) ................................................. 5

*United States v. Sabean*,
    885 F.3d 27 (1st Cir. 2018) ............................................................................................ 7

*United States v. Siao*,
    2023 U.S. Dist. LEXIS 201837 (N.D. Cal. Nov. 9, 2023), *aff'd,* No. 24-1486,
    2025 WL 1009280 (9th Cir. Apr. 4, 2025) ..................................................................... 5

*United States v. Titus*,
    78 F.4th 595 (3d Cir. 2023) ........................................................................................ 6, 7

iii

DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21
U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME
Case No. 3:24-cr-00329-CRB

*United States v. Wexler*,
　　522 F.3d 194 (2d Cir. 2008)..........................................................................................7

**Statutes**

21 U.S.C. § 821........................................................................................................................11

21 U.S.C. § 841(a) ............................................................................................................. *passim*

21 U.S.C. § 871........................................................................................................................11

**Other Authorities**

21 C.F.R. § 1306.04............................................................................................................1, 8

iv

DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21
U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME
Case No. 3:24-cr-00329-CRB

Contrary to the Government's claim, nothing in *Ruan v. United States*, 597 U.S. 450 (2022), changed the well-established conjunctive standard that applies in this Circuit to a Controlled Substances Act (CSA) prosecution involving licensed medical professionals, or this Court's well-founded concern in *Napoli* about confusion over the dividing line between criminal and non-criminal conduct, which animated its jury instruction distinguishing between intentional malpractice and the higher benchmark required for criminal liability. Instead, *Ruan* simply *confirmed* this Circuit's precedent on the *mens rea* requirement of 21 U.S.C. § 841(a)—namely, that the requisite proof is *knowledge or intent* that the prescription was unauthorized, not merely that a prescription was in fact not authorized.

Ms. He therefore requests that this Court instruct the jury, as it did in *Napoli*, that "it is not enough for the United States to prove that a practitioner committed malpractice, intentional or otherwise; rather, the United States must prove that the physician used his prescription-writing powers *as a means to engage in illicit drug dealing and trafficking*." See Ex. A (*Napoli* Jury Instructions, ECF 1056, at 17) (quoting *United States v. Feingold*, 454 F.3d 1001, 1010 (9th Cir. 2006)) (emphasis added) (hereinafter "*Napoli*-based malpractice instruction")[1]; *see also* ECF 380 at 65. As this Court reasoned at the *Napoli* charge conference, in electing to charge the jury accordingly: "I'm concerned about it [the applicable language for the jury charge] because you can't have a defendant, a doctor, convicted … *if he committed malpractice, intentional or not…that's not what this case is about. What this case is about is essentially drug pushing*…If you haven't proven that, you don't deserve to win…." *See* ECF No. 478 at Ex. A (Tr. at 4512:14-19) (emphases added). So too here.

Ms. He further requests, in addition to the *Napoli*-based malpractice instruction and consistent with this Circuit's precedent and the tentative that the Court provided today, that the jury be instructed that the requisite proof is knowledge or intent to prescribe *both* "without a legitimate medical purpose" *and* "outside the usual course of professional practice," if the Court

---

[1] The *Napoli* instructions are reattached here to include pertinent portions missing from ECF 478 at Ex. A.

adopts the regulatory language in 21 C.F.R. § 1360.04(a) as providing the relevant standard for authorization under the Controlled Substances Act (CSA). *See* ECF No. 478 at 8-10.[2]

Ms. He also asks (and preserves her request for review) that the Court remove the terms "legitimate" and "usual" from the instructions. Eliminating these modifiers together with the *Napoli*-based malpractice instruction properly enforces the critical distinction between malpractice—"intentional or otherwise"—and the higher threshold for criminal liability. *See* ECF 478 at 5-8.

### 1. The Court Should Give Its *Napoli*-based Malpractice Instruction.

As Ms. He has explained, the dividing line between criminal and non-criminal conduct in this context is knowledge or intent to act as a drug dealer rather than a medical provider. *See* ECF 478 at 3-5. Thus, both the Ninth Circuit and this Court have held that that "the jury must make a finding of intent not merely with respect to distribution, but also with respect to the doctor's intent to act as a pusher rather than a medical professional." *Feingold*, 454 F.3d at 1008. This Court gave instructions to that effect in *Napoli* and it should do so again here. ECF No. 478 at Ex. A; *see also* ECF 380 at 65.

The Government has not only conceded—but originally proposed an instruction for § 841(a) here—that "[i]t is not enough for the United States to prove that a practitioner committed malpractice, intentional or otherwise." ECF 380 at 60: 13-14. Although the Government does not, and cannot, dispute that premise, it now claims that the Court's *Napoli* instruction is "unnecessary" on the theory that *Ruan*'s clarification of the *mens rea* standard sufficiently ensures that defendants will not be convicted for malpractice. *See* ECF No. 483, at 7:17-28. Not so. *Ruan*

---

[2] On the issue of the *mens rea*, however, the Court's tentative altered the *Napoli* language which required proof of an agreement to distribute controlled substances "by means of a prescription issued by a physician not for a legitimate medical purpose and not in the usual course of professional practice and *knowing and intending* that the distribution was by means of a prescription issued by a physician not for a legitimate medical purpose and not in the usual course of professional practice." *See* Ex. A at 19 (emphasis added). The placement of the italicized *mens rea* language is now required by *Ruan* as well as *Feingold* to ensure that the jury find that the defendant knew or intended that the prescription was unauthorized, not merely that a prescription was in fact not authorized.

merely confirmed the *mens rea* requirement of § 841(a) in this Circuit. *Cf. Ruan*, 597 U.S. at 454 ("We hold that the statute's 'knowingly or intentionally' *mens rea* applies to authorization.") *with Feingold*, 454 F.3d at 1008 ("[T]he jury must make a finding of *intent* not merely with respect to distribution, but also with respect to the doctor's intent to act as a pusher rather than a medical professional.") (emphasis added); *id.* at 1010. Consequently, nothing has changed since *Feingold* about the risk that the jury will confuse the criminal prohibition with a negligence standard—especially in a case like this one. This Court's "concern[]" that "you can't have a defendant, a doctor, convicted … if he committed malpractice, intentional or not…[w]hat this case is about is essentially drug pushing" remains the same live and pressing issue that it was at the time of *Napoli*. *See* ECF No. 478 at Ex. A (Tr. at 4512:14-19).

Moreover, Ms. He is not, as the Government claims, attempting to create "drug dealing" as a separate element of proof. ECF No. 483 at 5:10-13. Rather, the purpose of the *Napoli*-based malpractice instruction is to give effect to the fact that the CSA "bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood," but does not "regulate the practice of medicine [more] generally." *Gonzales v. Oregon*, 546 U.S. 243, 270 (2005); *see also Ruan*, 597 U.S. at 458 (explaining that "authorization plays a 'crucial' role in separating innocent conduct—and, in the case of doctors, socially beneficial conduct—from wrongful conduct"). Since it is undisputed that intentional malpractice is *not* the governing standard, and this is a case rife with potential confusion on that issue, the jury should be expressly instructed to that effect, just as this Court did in *Napoli*.

    **2.  The Standard is Conjunctive.**

The CSA criminalizes the distribution of controlled substances "except as authorized." 21 U.S.C. § 841(a). Ninth Circuit precedent provides that in a CSA case, proof that a defendant issued "unauthorized" prescriptions requires proof of knowledge or intent to prescribe "outside the usual course of professional practice *and* without a legitimate medical purpose." *Feingold*, 454 F.3d at 1008.

The Government claims that *Ruan*, 597 U.S. at 450, supports a disjunctive reading of § 841's authorization requirement. *See* ECF No. 380 at 47:7-19; *see also* ECF No. 483 at 10:14-12:28. That is simply wrong. As the Government itself acknowledges, "*Ruan* did not directly address the disjunctive versus conjunctive issue"—and therefore could not even purport to overrule well-established Ninth Circuit precedent on this issue. *See* ECF No. 380 at 47:17.

The question presented in *Ruan* concerned only the statute's *mens rea* requirement. *Ruan*, 597 U.S. at 454 ("The question before us concerns the state of mind that the Government must prove to convict these doctors of violating the statute."). And the holding in *Ruan* was confined to that specific question. *See id*. ("We hold that the statute's "knowingly or intentionally" *mens rea* applies to authorization."). Accordingly, longstanding Ninth Circuit precedent on the *mens rea* requirement of § 841(a) was only confirmed by the Court's decision.

Indeed, as discussed below, *no court of appeals has interpreted Ruan to alter Circuit precedent on the requirement of proof in the conjunctive or to permit disjunctive proof where it did not before*. This Court therefore should instruct the jury, consistent with this Circuit's precedent and *Napoli*, that conjunctive proof is required. That is especially so because the Government's contrary interpretation—under which "legitimate medical purpose" and "usual course of professional practice" would impose two freestanding, alternative routes to liability—would lower the burden of proof and risk criminalizing intentional malpractice, which the Government agrees is an impermissible predicate for a conviction. *See* ECF 380 at 60: 13-14 ("It is not enough for the United States to prove that a practitioner committed malpractice, intentional or otherwise").

        **a.**     ***Ruan* Confirmed Ninth Circuit Precedent.**

The Government suggests that *Ruan* supports its disjunctive construction because the district court in that case had given a disjunctive instruction. *See* ECF No. 483 at 11:14-17. But the Supreme Court simply did not address the conjunctive/disjunctive question, as the Government concedes. ECF No. 380 at 47:17; ECF No. 483 at 11:12. The Government nonetheless observes that *Ruan* characterized the prongs as "objective criteria" that define "the scope of a doctor's

4

DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21
U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME
Case No. 3:24-cr-00329-CRB

prescribing authority." *Ruan*, 597 U.S. at 467; *see also* ECF No. 380 at 47:15-19; ECF No. 483 at 11:12-14. But that statement—which referred to *both* "legitimate medical purpose" and "usual course" of "professional practice" (*Ruan*, 597 U.S. at 467)—does nothing to suggest a disjunctive standard.

It is thus unsurprising that the Ninth Circuit has not changed its approach in the wake of *Ruan*. *See* ECF 380 at 54-55. To the contrary, just last year, well after the holding in *Ruan*, the Ninth Circuit reaffirmed that the Government is required to prove both prongs. In *United States v. Pham*, 120 F.4th 1368 (9th Cir. 2024), the defendant sought to withdraw his guilty plea, claiming that it did not comport with *Ruan's* requirement that he knowingly issued "unauthorized" prescriptions. *See id.* at 1369-70. The Ninth Circuit disagreed, finding that the guilty plea included admissions by the defendant of knowledge as to "*the elements that made his prescriptions not authorized*: he knew the prescriptions were not for a legitimate medical purpose, *and* he knew he was not acting in the usual course of medical practice." *Id.* at 1371-72 (emphases added).

Moreover, since *Ruan*, the Circuit has repeatedly and uniformly upheld instructions that require the Government to prove that both prongs of the authorization test were violated.[3] The Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, which

---

[3] *See, e.g., United States v. Siao*, 2023 U.S. Dist. LEXIS 201837, at *17, 22-26 (N.D. Cal. Nov. 9, 2023), *aff'd,* No. 24-1486, 2025 WL 1009280, at *1 (9th Cir. Apr. 4, 2025) (finding no plain error in giving instruction that "unauthorized manner" means "that the distribution of the controlled substance was outside of the usual course of professional practice *and* without a legitimate medical purpose" and finding that "nothing in *Ruan* directly overrul[ed] *Feingold*."); *United States v. Kabov*, No. 19-50083, 19-50089, 2023 WL 4585957, at *14-15 n.7 (9th Cir. July 18, 2023) (finding proper the district court's instructions, "consistent with *Feingold*, that the government was required to prove the distribution was *both* 1) 'outside the course of professional practice,'. . . *and* 2) 'without a legitimate medical purpose.'") (emphasis added); *United States v. Rand*, 2023 U.S. Dist. LEXIS 218784, at *4 (D. Nev. Dec. 7, 2023) (elements of distribution of a controlled substance by a doctor that Government must prove properly stated, in relevant part, as "not for a legitimate medical purpose *and* outside the usual course of professional practice"); *United States v. Patel*, 2023 U.S. Dist. LEXIS 212098, at *8-9 (D. Nev. Nov. 28, 2023) (finding *Ruan* satisfied by defendant's admission in his plea agreement that he acted "outside the usual course of professional practice *and* not for a legitimate medical purpose"); *United States v. Chisholm*, 2023 U.S. Dist. LEXIS 113956, at *6 (D. Alaska June 30, 2023) (*Feingold's* articulation of the standard is "not inconsistent with *Ruan*" and the "law in the Ninth Circuit has not meaningfully changed.").

post-dates *Ruan*, also endorses the conjunctive approach. *See id.* at § 12.4 cmt. (9th Cir. Comm. On Model Crim. Jury Instructions 2025). Specifically, the Comment cites *Pham* for the proposition that "a defendant's 'admission that he prescribed controlled substances with intent to act outside the usual course of professional practice and without a legitimate medical purpose' was an admission to the 'requisite knowledge of the elements that made his prescriptions not authorized,'" thus identifying "outside the usual course of practice" *and* "without a legitimate medical purpose" as the constituent parts of a finding that a defendant acted without authorization. *Id.* (quoting *Pham*, 120 F.4th at 1370-71).

Despite all of this authority, the Government urges this Court to chart a new course, asserting that the Ninth Circuit "has not considered the [conjunctive versus disjunctive] issue in light of the [Supreme] Court's decision in *Ruan*." ECF No. 380 at 50:17-19. In so doing, the Government effectively asks this Court to assume that the Ninth Circuit repeatedly affirmed challenged instructions without meaningfully considering their implications. But the fact is that *Ruan* simply did not alter the Circuit's preexisting conjunctive proof requirement, which remains controlling precedent—as the Government effectively concedes in acknowledging that *Ruan* did not address this question. ECF No. 380 at 47:17; ECF No. 483 at 11:12.

### b. *Ruan* Has Not Changed Any Other Circuit's Approach

Because *Ruan* did not address whether the Government must prove knowledge or intent that a medical provider *both* lacked a "legitimate medical purpose" *and* acted outside the "usual course of professional practice," or convert those criteria into alternative paths to liability, across the Circuits, the treatment of those criteria as conjunctive or disjunctive remains consistent with pre-*Ruan* practice. *See* ECF No. 380 at 54-57. Moreover, the Government's claim that "overwhelming authority from other Circuits supports the disjunctive" is also incorrect. *See* ECF 483 at 12.

The Third and Seventh Circuits, like the Ninth, have consistently required the Government to prove lack of authorization in the conjunctive. The Third Circuit, for example, upheld as consistent with *Ruan* jury instructions that required the Government to prove the defendant

6

"knowingly or intentionally distributed controlled substances outside 'the usual course of professional practice *and* not for a legitimate medical purpose.'" *United States v. Titus*, 78 F.4th 595, 602 (3d Cir. 2023) (internal quotation marks omitted and emphasis added). This treatment mirrors the circuit's pre-*Ruan* approach.[4]

The Seventh Circuit, too, has maintained its pre-*Ruan* approach of requiring conjunctive proof. For example, in *United States v. Hofschulz*, the Seventh Circuit cited to pre-*Ruan* authority and held that the "district judge carefully crafted" its instruction requiring proof that the defendants dispensed "'the controlled substance outside the usual course of professional medical practice, *and* not for legitimate medical purpose.'" 105 F.4th 923, 929 (7th Cir. 2024) (citing *United States v. Kohli*, 847 F.3d 483, 489–90 (7th Cir. 2017)). In so holding, the Seventh Circuit found that this standard is "an accurate statement of the law and fully compliant with *Ruan*." *Id*.[5]

Other circuits have reached the same conclusion and have declined to treat *Ruan* as altering their conjunctive articulation of the standard. In the First and Second Circuits, the Government's burden has been described in conjunctive terms both before and after *Ruan*, with courts after *Ruan* citing pre-*Ruan* authority and continuing to describe the standard in the conjunctive. *See, e.g.*, *United States v. Oladipo*, 2023 U.S. Dist. LEXIS 121268 at *18 (D. Mass. July 14, 2023)

---

[4] *See United States v. Kraynak*, No. 4:17-CR-00403, 2022 WL 3161907, at *3 (M.D. Pa. Aug. 8, 2022), aff'd, No. 22-2500, 2023 WL 4636419 (3d Cir. July 20, 2023) (quoting pre-*Ruan* decision in the same case holding that "the Government must prove four things: (1) that [defendant] distributed a mixture or substance containing a controlled substance; (2) that he distributed the controlled substance outside the usual course of professional practice and not for a legitimate medical purpose; (3) that he distributed the controlled substance while knowing or intending that the distribution was outside the usual course of professional practice and not for a legitimate medical purpose; and (4) that the controlled substance was the substance identified in the indictment" and stating that the earlier holding "*comports with the Supreme Court's recent conclusion in* Ruan") (emphasis added).

[5] In *United States v. Bek*, 493 F.3d 790, 798 (7th Cir. 2007), a pre-*Ruan* case, the jury was instructed in the disjunctive. However, Bek did not challenge that framing either at trial or in the court of appeals. *Id*. Moreover, in addressing his sufficiency challenge, the Seventh Circuit pointed to evidence which "satisf[ied] the criminal standard," including that his conduct was "for other than a legitimate medical purpose" and "outside the course of professional conduct," suggesting both prongs were sufficiently proven. *Id.* at 799.

(articulating standard in conjunctive and quoting the pre-*Ruan* case of *United States v. Sabean*, 885 F.3d 27, 46 (1st Cir. 2018)); *compare United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008) (pre-*Ruan*, describing the Government's burden as proof the defendant caused distribution "other than for a legitimate medical purpose" *and* "not in the usual course of medical practice") with *United States v. Parasmo*, 2023 U.S. Dist. LEXIS 15455, at *58-59 (E.D.N.Y. Jan 30, 2023) (finding no error where instruction required finding that defendant "knowingly and intentionally prescribed the controlled substances outside the bounds of professional medical practice *and* not for a legitimate medical purpose" as "[t]his is precisely what *Ruan* commands.") (emphasis added).[6]

The Sixth Circuit has also required conjunctive proof since *Ruan*. In *United States v. Sadrinia*, it addressed a sufficiency challenge and, quoting *Ruan*, explained that "the government was required to prove beyond a reasonable doubt that [the defendant] knew his prescriptions were unauthorized—meaning that they lacked 'a legitimate medical purpose' *and* were outside 'the usual course of professional practice.'" 134 F.4th 887, 893 (6th Cir. 2025) (quoting *Ruan*, 597 U.S. at 454) (emphasis added). The court analyzed the trial evidence separately for each prong. *Id*.[7]

---

[6] At times, the Second Circuit treats the two phrases interchangeably or as evidentiary bellwethers rather than two distinct elements. *See*, *e.g.*, *United States v. Belfiore*, 2024 U.S. App. LEXIS 11311, at *4 (2d Cir. May 9, 2024) (citing *Ruan* for the proposition that the Government can prove intent "through circumstantial evidence, including by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice'") (internal quotations omitted). This does nothing to advance the Government's argument, however, as the Second Circuit has not held that *Ruan* requires a disjunctive interpretation.

[7] The Sixth Circuit has at various times read 21 C.F.R. § 1306.04's "legitimate purpose" and "usual course of professional practice" prongs in the disjunctive, conjunctive, and as synonymous phrases, but this muddled practice significantly predates *Ruan* and is not binding on this Court. *See United States v. Bothra*, 2022 U.S. Dist. LEXIS 84971, at *7-13 (collecting cases); *see also United States v. Oppong*, 2022 U.S. App. LEXIS 9475, at *5 (6th Cir. Apr. 8, 2022) (no clear error in instructing jury in the disjunctive when Oppong did not object to the instructions at trial, the Supreme Court had not reached the issue, and Sixth Circuit authority was mixed).

The cases cited by the Government on the other side of the divide only confirm that Ninth Circuit precedent remains untouched by *Ruan* because *Ruan* did not alter preexisting law on the conjunctive/disjunctive question. *See* ECF No. 483 at 12:10-13:1. The Fifth and Eleventh Circuits have long endorsed a disjunctive reading. *See, e.g.*, *United States v. Lamartiniere*, 100 F.4th 625, 642-43 (5th Cir. 2024) (*Ruan* did not overrule Fifth Circuit precedent using disjunctive language); *United States v. Lubetsky*, 2024 U.S. App. LEXIS 3367, at *3 (11th Cir. Feb. 13, 2024) (finding it remains bound by its holding in *United States v. Abovyan*, 988 F.3d 1288, 1308 (11th Cir. 2021), that the test is disjunctive). And these Circuits have found that *Ruan* addressed the *mens rea* requirement, rather than the "prongs" of the authorization requirement. ECF No. 380 at 55:15-28, 56:1-5; *see Lamartiniere*, 100 F. 4th at 638-42 (finding that *Ruan* was concerned only with the "*mens rea* requirement" of § 841(a)(1) and holding that because *Ruan* did not "unequivocally overrule" the Fifth Circuit's definition of "authorization," as previously described in *United States v. Armstrong*, 550 F.3d 382 (5th Cir. 2008), it did not have the authority under the Fifth Circuit's "rule of orderliness" to "overturn" or "depart" from *Armstrong*'s disjunctive instruction on "authorization"); *United States v. Heaton*, 59 F.4th 1226, 1239, 1241, n. 17 (11th Cir. 2023) (finding that *Ruan* was concerned only with the "*mens rea*" of Section 841(a)(1) and holding that because *Ruan* was not "clearly on point" with respect to the Eleventh Circuit's disjunctive instruction on authorization, as previously set forth in *Abovyan*, 988 F.3d at 1308, the *Abovyan* instruction remained "binding" precedent on the *Heaton* panel).

The Tenth Circuit's approach has also remained unchanged. In *United States v. Kahn (Kahn I)*, the Tenth Circuit, following precedent in *United States v. Nelson*, 383 F.3d 1227 (10th Cir. 2004), articulated the authorization standard in the disjunctive, permitting proof of a violation by showing either that the physician acted outside the usual course of professional practice or that the physician acted without a legitimate medical purpose. *See* 989 F.3d 806, 822 (10th Cir. 2021). The Supreme Court considered *Kahn I* alongside *Ruan*, where the Court found that the jury instructions issued by the district court improperly advised the jury regarding the *mens rea* requirement of § 841(a). *United States v. Kahn (Kahn II)*, 58 F.4th 1308, 1311 (10th Cir. 2023).

On remand, the *Kahn II* court explained that the jury instructions were flawed because "without a legitimate medical purpose" was to be assessed from the physician's subjective perspective, while "outside the usual course of professional practice" was articulated purely as an objective standard. *Id*. at 1316. Because the jury could have convicted under either theory, and *Ruan* forbids conviction under § 841(a) based solely on objectively unauthorized conduct, the instructions were invalid. *See id*. at 1316-17. The Tenth Circuit continued to discuss the authorization standard in the disjunctive but required proof of knowledge and intent with respect to each prong. *See generally Kahn II*. Accordingly, *Ruan* did not alter the Tenth Circuit's use of the disjunctive standard either.

At bottom, although the Fifth, Tenth, and Eleventh Circuits permit disjunctive proof, no court has found that *Ruan* requires it. Rather, *Ruan*'s holding is limited to the applicable *mens rea* requirement, and the post-*Ruan* decisions that apply a disjunctive standard simply adhere to prior circuit precedent in that regard. These out-of-circuit decisions have no bearing on this case.

Moreover, the Government's assertion that *Ruan* requires a disjunctive standard is inconsistent with the position it has taken in at least one other post-*Ruan* case. *See*, *e.g.*, *United States v. Parker*, 145 F.4th 915, 919 n.2 (8th Cir. 2025) (jury was instructed on the conjunctive and the Government did not challenge that instruction so court took no position on whether the terms "legitimate medical purpose" and "in the usual course of professional practice" should be considered in the conjunctive or disjunctive). For all of these reasons, there is no basis for this Court to deviate from Ninth Circuit precedent.

     **c.  The Supreme Court Has Not Otherwise Addressed Whether the Authorization Clause is Conjunctive or Disjunctive.**

Finding no support in *Ruan* or cases applying it, the Government attempts to recast the Supreme Court's holding in *United States v. Moore*, 423 U.S. 122 (1975), as addressing criminal liability under § 841 solely in terms of "professional practice." ECF No. 380 at 47:20-25, ECF No. 483 at 11:22-12:5. But as the Supreme Court explained in *Ruan*, "the question in *Moore* was whether doctors could *ever* be held criminally liable under § 841." *Ruan*, 597 U.S. at 466. *Moore*

10

DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21
U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME
Case No. 3:24-cr-00329-CRB

did not decide the precise contours of the authorization standard. And in any event, *Moore* predates decisions like *Feingold*, which expressly discussed *Moore* in the context of reaching its holding on the requisite conjunctive jury instruction—thereby leaving no doubt that the Ninth Circuit effectively rejected the Government's interpretation of the Supreme Court's decision. *See Feingold*, 454 F.3d at 1008; *id.* at 1010 ("The [Supreme] Court … described § 841(a) as prohibiting 'the significantly greater offense of acting as a drug 'pusher.' These statements suggest that the *Moore* Court based its decision not merely on the fact that the doctor had committed malpractice, or even intentional malpractice, but rather on the fact that his actions completely betrayed any semblance of legitimate medical treatment.") (quoting *Moore*, 423 U.S. at 138).

The Government also mischaracterizes *Moore*. Although the Court there focused on the "usual course of professional practice," *Moore*, 423 U.S. at 124, it also explained that Congress was "particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels," as the Ninth Circuit underscored in *Feingold*. *Id.* at 135. That understanding necessarily puts at issue whether the drug was distributed for a legitimate medical purpose. In addition, the jury instructions in *Moore* required a finding that Moore distributed methadone "*other than in good faith for detoxification* in the usual course of a professional practice and in accordance with the standards of medical practice generally recognized and accepted in the United States." *Id*. at 138-39 (emphasis added). *Moore* therefore does not support the Government's position either.

### 3. The Modifiers "Legitimate" and "Usual" Should Be Removed

In addition to urging this Court to adopt the *Napoli*-based malpractice instruction, and the Ninth Circuit's conjunctive construction of the legal standard (as the Court's tentative does), Ms. He also requests (and preserves for review her request) that the Court remove the terms "legitimate" and "usual" from the instructions. *See* ECF 478 at 5-8.

In making that request, Ms. He explained that although the Ninth Circuit has approved of instructions containing those modifiers, they are not found in the relevant statutory provisions; the regulation does not state that it defines authorization for purposes of § 841; and the words

11

"legitimate" and "usual" may confuse the jury and dilute the Government's burden of proof. *See* ECF 478 at 5-8. In addition, Ms. He explained that both the Ninth Circuit and "the Supreme Court [have] made clear … that a criminal conviction for violating a regulation is permissible only if a statute explicitly provides that violation of that regulation is a crime," *United States v. Alghazouli*, 517 F.3d 1179, 1184 (9th Cir. 2008)—but Section 841 does not expressly state that the scope of the criminal prohibition may be determined by regulation. *See* ECF No. 478 at 6.

The Government responds that Ms. He's argument is "directly contrary" to the Ninth Circuit's recent decision in *United States v. Keller*, 142 F.4th 645, 655-59 (9th Cir. 2025) (per curiam). ECF No. 483 at 8:13-15. But *Keller* rejected a defendant's distinct contention that the "charges against him violated the nondelegation doctrine," 142 F.4th at 650, because the statute failed to provide an "intelligible principle" for the Attorney General to apply, *id.* at 656. The Ninth Circuit reasoned that the Attorney General had been delegated authority to issue regulations under 21 U.S.C. §§ 821 and 871; that the authority was sufficiently "clear and bounded" to satisfy the intelligible principle requirement; and that no heightened intelligible principle standard applies to "regulations relating to criminal penalties." *Id.* at 658-649.

Although *Keller* upheld the use of § 1306.04(a) in a criminal prosecution against a nondelegation challenge, it did not address several of the arguments Ms. He makes here. In particular, it did not cite or discuss *Alghazouli* or the principle that Congress must be clear if it intends for the violation of a regulation to constitute a crime. *See Keller*, 142 F.4th at 656-659; *but see* Appellant's Reply Br. at 13-14, *United States v. Keller*, No. 23-656 (9th Cir. 2025) (relying on cases applying this principle). Nor did *Keller* address Ms. He's argument that the words "legitimate" and "usual" could confuse the jury and dilute the Government's burden of proof because they are evocative of a civil medical care standard to a lay jury. *Keller* thus does not preclude Ms. He's request here.[8] In any event, to the extent the Court views *Keller* as foreclosing

---

[8] Nor does *Ruan* support the Government's argument, as it briefly suggests. *See* ECF No. 483, at 8-9. The *Ruan* majority simply "assume[d], as did the courts below and the parties, that a prescription is 'authorized' and therefore lawful if it satisfies" the standard in § 1306.04(a). *Ruan*, 597 U.S. at 455.

12

DEFENDANT RUTHIA HE'S REPLY RE: APPLICABLE LEGAL STANDARD FOR 21 U.S.C. §§ 841(a), 846 AND REQUESTED JURY INSTRUCTIONS RE: SAME
Case No. 3:24-cr-00329-CRB

Ms. He's argument that the jury instructions should not include the words "legitimate" and "usual," Ms. He respectfully preserves this argument for further review.

Dated:  November 8, 2025					WILLKIE FARR & GALLAGHER LLP


						By:	*/s/ Koren Bell*
							Koren Bell
							Michael S. Schachter
							Steven J. Ballew

							*Attorneys for Defendant*
							RUTHIA HE