IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

USA,

Plaintiff,

v.

RUTHIA HE, et al.,

Defendants.

Case No.  24-cr-00329-CRB

**ORDER RE MOTION TO DISMISS**

On November 18, 2025, a jury convicted Defendant Ruthia He on seven counts stemming from a conspiracy to distribute controlled substances through prescribers that worked with her digital health company, Done Global, Inc., and its affiliate medical professional corporation, Done Health P.C.  Dkt. 530.  When the Court denied Defendant's motion to dismiss the Indictment on January 8, 2025, the Court told the parties that it would issue a short opinion if there was a conviction.  The Court does so now.[1]

Defendant asked the Court to dismiss Counts 1 through 6 of the Indictment.  Mot. (dkt. 157).  For Counts 1 through 5, Defendant argues that the Indictment fails to sufficiently allege mens rea.  See id. at 6.  For Count 6, which is conspiracy to commit healthcare fraud, Defendant primarily contends that the Indictment does not allege a false statement or omission and that there is no alleged convergence between the target of deception and the party harmed.  Id. at 18–22.  These arguments are unavailing.

### A.    Counts 1–5

Defendant argues that Counts 1 through 5 must be dismissed as the Indictment fails

---

[1] The Court presumes familiarity with the facts and applicable law.

to allege that she knowingly and intentionally distributed controlled substances in an unauthorized manner.  See Mot. at 10–17.  In Ruan v. United States, the Supreme Court held that, at trial, the Government must prove "that a defendant knew or intended that his or her conduct was unauthorized."  597 U.S. 450, 467 (2022).  Because the Ninth Circuit has long required the Government to plead lack of authorization as an essential element in an indictment, Defendant asserts that a failure to adequately allege the requisite mens rea is fatal.  See Mot. at 14; see also United States v. King, 587 F.2d 956, 963 (9th Cir. 1978) (unauthorized distribution is an essential element).

For starters, the Court disagrees with Defendant's characterization of Ruan.  While Defendant is correct that pre-Ruan cases in the Ninth Circuit treated lack of authorization as an essential element, Ruan explicitly rejected that requirement.  The Supreme Court clarified that, "in a prosecution under the Controlled Substances Act, the Government need not refer to a lack of authorization (or any other exemption or exception) in the criminal indictment."  Ruan, 597 U.S. at 462.  Indeed, pursuant to the statute, the Government need not "disprove, at the outset of every Controlled Substances Act prosecution, every exception in the statutory scheme."  Id. at 464 (citing 21 U.S.C. § 885).

Nevertheless, Defendant points to two post-Ruan cases in the Ninth Circuit that she believes compel a different result.  Mot. at 10–11.  In United States v. Wells, the court found the indictment facially invalid as it did not include "the new element that Ruan added" as part of the Ninth Circuit's requirement for alleging lack of authorization.  672 F. Supp. 3d 1066, 1071 (D. Nev. 2023).  And in United States v. Spayd, the court similarly assumed that Ruan required mens rea as a "quasi-element" that "must be pled in the indictment."  627 F. Supp. 3d 1058, 1063 (D. Alaska 2022).  The Court declines to follow the courts' rationale.  Their decisions are not binding and, more importantly, misinterpret Ruan.  The Supreme Court specifically rejected lack of authorization as an element in the indictment and only required mens rea to be proved at trial, if a defendant presented authorization as a defense.  Ruan, 597 U.S. at 462–64.  Indeed, after this Court's initial denial of Defendant's motion, the Ninth Circuit has confirmed this Court's reasoning by

United States District Court
Northern District of California

United States District Court
Northern District of California

noting that "Spayd and Wells represent the minority view." United States v. Enriquez, 131 F.4th 940, 946 (9th Cir. 2025) (declining to extend Ruan to require negation of the safe harbor provision for the Anti-Kickback Statute in an indictment); see also United States v. Fletcher, 2023 WL 4097026, at *4 (E.D. Ky. June 20, 2023) ("If the United States need not reference Fletcher's lack of authorization in an indictment, then it logically follows that the United States is also not required to allege the associated mens rea—that he knowingly and intentionally acted in an unauthorized manner."); United States v. Goodman, 2023 WL 5672834, at *3 (E.D. Pa. Sept. 1, 2023) (same).  The Enriquez court also stated that "Congress saw it necessary to explicitly clarify that the government need not treat the authorization exception as an element it must plead in the indictment."  Id. at 945 n.5.  Accordingly, the Court denies Defendant's motion based on the legal framework established by Ruan.[2]

Even if Defendant's interpretation of Ruan was correct, the Court still finds the Indictment sufficient.  Defendant argues that the Indictment mostly describes her conduct as "causing" clinicians to issue unauthorized prescriptions—without reference to the requisite mens rea. Mot. at 14.  And where the Indictment does include mens rea, the allegations fail as a matter of grammar.

But Defendant seeks particularity at a threshold not required for indictments.  An indictment need only contain "the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend." United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)).  "The test for sufficiency of the indictment is 'not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'"

---

[2] Moreover, the Ninth Circuit's pleading requirement arose from the presumption that medical practitioners could legally dispense controlled substances.  See King, 587 F.2d at 964–65.  That presumption would not apply to Defendant, who is not a medical professional.  See United States v. Litwin, 2023 WL 5529516, at *3 (D. Nev. Aug. 28, 2023) ("[W]hen an individual is charged under § 841, 'knowingly and intentionally acting without authorization' is only an essential element when the individual's actions have a legitimate presumption of authorization to begin with.").

3

United States v. Awad, 551 F.3d 930, 935 (9th Cir. 2009) (quoting United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000)).  And "[a]n indictment must be read in its entirety and construed with common sense and practicality."  Id. at 936 (internal quotation marks omitted).

The Government's Indictment provides sufficient notice to Defendant.  The "Manner and Means" section, which Defendant takes issue with, describes how Defendant sought to carry out "the purpose and object of the conspiracy" by creating structures and policies that would result in prescriptions issued "not for a legitimate medical purpose in the usual course of professional practice."  Indictment (dkt. 1) ¶¶ 57–74 (alleging how Defendant persisted in her unlawful practices despite being aware of growing public awareness that her business was a pill mill).  Defendant argues that "[l]isting policies that allegedly 'caused' (but did not 'knowingly or intentionally' cause) Done Prescribers to issue unauthorized prescriptions does not, by itself, lead to an inference that the outcome was" Defendant's intent.  Mot. at 14.  Perhaps.  But the Indictment does contain more. Each count specifies the scienter requirement Defendant says is missing: Defendant conspired "to knowingly and intentionally distribute and dispense mixtures and substances containing a detectable amount of controlled substances, including amphetamine-dextroamphetamine and other stimulants, Schedule II controlled substances, not for a legitimate medical purpose in the usual course of professional practice."  See, e.g., Indictment ¶¶ 55, 76.

That language, too, is insufficient according to Defendant.  Defendant asserts that the "knowingly and intentionally" clause only modifies the verb that it immediately precedes and cannot reach the lack of authorization language.  Reply (dkt. 197) at 12–13 (citing United States v. Price, 980 F.3d 1211, 1218 ("knowingly" only applied to the immediately adjacent verb phrase)).  But if Defendant had the right reading, her motion would be dead on arrival because Ruan itself was based on the opposite being true.  The Court explicitly extended the general scienter provision to the lack of authorization clause because it held that "'knowingly' modifies not only the words directly following it, but

4

also those other statutory terms that 'separate wrongful from innocent acts.'" <u>Ruan</u>, 597 U.S. at 458–59.

Accordingly, when read in its entirety, the Indictment adequately alleges mens rea for the lack of authorization clause. The Indictment plainly states that Defendant knowingly and intentionally distributed controlled substances not for a legitimate medical purpose in the usual course of professional practice. In other words, the distribution without authorization was with the proper scienter. For these reasons, the Court rejected Defendant's motion as to these counts.

### B.    Count 6

Defendant asserts three arguments for why Count 6 should be dismissed: (1) Count 6 fails for the same reasons as Counts 1 through 5, (2) the allegations for health care fraud are lacking, and (3) the Indictment lacks convergence between the target of the fraud and health benefit programs. Mot. at 17–22. As discussed, the Court rejects Defendant's arguments as to Counts 1 through 5, so they cannot serve to defeat Count 6, too. Defendant's next two arguments also fail.

### 1.    Sufficiency

Defendant contends that the Indictment fails to address particular false statements that demonstrate she agreed to defraud a health care benefit program. Mot. at 18. Not so. As the Government points out, the Indictment comprehensively covers Defendant's efforts to issue invalid and unnecessary prescriptions that were then used by pharmacies to submit false claims to insurers so they would cover drug costs. Opp'n (dkt. 186) at 13–14; Indictment ¶¶ 58–74 (describing how fraud on the insurers caused them to pay drug costs in order to keep subscribers on the Done platform).

Defendant counters that implicit representations such as illegitimate prescriptions causing the submission of false claims are insufficient to allege health care fraud. Mot. at 19–20. Defendant rests her argument on an unpublished case from New Jersey, <u>United States v. Mattia</u>, 2024 WL 2834154 (D.N.J. June 2, 2024). There, the court reasoned that implicit false statements via illegitimate prescriptions were not sufficient

United States District Court
Northern District of California

misrepresentations. <u>Mattia</u>, 2024 WL 2834154 at \*7. The Court disagrees. Fraudulent representations need not be express to be fraudulent. <u>United States v. Woods</u>, 335 F.3d 993, 998 (9th Cir. 2003) (fraudulent statements can be misleading and deceptive while not literally false).

A prescription inherently comes with the representation that it is issued pursuant to the medical judgment of a practitioner. That is why courts have held that illegitimate prescriptions can form the basis of health care fraud. <u>See, e.g.</u>, <u>United States v. Anderson</u>, 67 F.4th 755, 770 (6th Cir. 2023) (evidence sufficient for health care fraud conviction where invalid prescriptions to pharmacies were billed to insurers); <u>cf.</u> <u>United States v. Shubaralyan</u>, 428 F. App'x 685, 686 (9th Cir. 2011) (sufficient evidence for health care fraud conviction where fraudulent prescriptions were submitted for reimbursement). Moreover, <u>Mattia</u> itself was later reversed by the Third Circuit, which held that implicit misrepresentations in invalid prescriptions were sufficient in an indictment. <u>United States v. Mattia</u>, 157 F.4th 305, 311 (3d Cir. 2025).

### 2.    Convergence

Defendant also argues that the Indictment fails to allege convergence between the conspirators' fraud and the insurers' loss of money. Mot. at 21–22. Convergence is a requirement in mail and wire fraud cases to demonstrate that the victim of the fraud "was deprived of money or property." <u>United States v. Ali</u>, 620 F.3d 1062, 1070 (9th Cir. 2010). Here, Defendant asserts that the Indictment only refers to misrepresentations made to pharmacies, not the health care benefit programs that lost money paying for drugs. Mot. at 21.

For starters, Defendant does not provide any authority to support her contention that convergence is applicable in <u>health care fraud</u> cases. And the Court is not aware of any cases applying it. Nevertheless, even assuming convergence is applicable, the Court disagrees with Defendant that the Indictment is deficient.

The Indictment plainly shows a connection between Defendant's fraud on insurers and their loss. The Government alleges that Defendant and her co-conspirators sought to

6

defraud insurers by submitting illegitimate prescriptions to pharmacies who dispensed drugs and then got insurers to cover the cost.[3]  Indictment ¶ 71.  According to the Indictment, the conspiracy required fraud on both pharmacies and insurers to be effective. To keep subscription fees flowing, Defendant would need pharmacies to dispense drugs to Done members and then have insurers to help with the cost.  See id.  Indeed, it would limit the profits of the conspiracy if insurers did not cover drug costs.  At bottom, the Indictment demonstrates that alleged victims—insurers—lost money.

Defendant cites United States v. Holmes for the proposition that there can be no convergence if there is an intermediary for the fraud.  Reply at 19.  In that case, the court determined there was no convergence for a segment of victims because some who were duped into getting blood tests did not pay for them—their insurance companies did. United States v. Holmes, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *17–18 (N.D. Cal. Feb. 11, 2020).  Accordingly, there was "divergence between the intent to defraud and the harm suffered" as "non-paying patients did not suffer a monetary harm."  Id. at *18. But crucially, the indictment did "not allege insurance companies were defrauded.  It [did], however, allege that insured patients were defrauded."  Id. at *19.  There, intermediaries for fraud did not enter the equation because the insurers were never treated as victims in the prosecution.  Moreover, the Court is persuaded by courts outside the Ninth Circuit that have affirmed convictions where a defendant did not directly bill an insurer or even profit from the scheme to defraud.  See, e.g., Anderson, 67 F.4th at 770–71 (rejecting the argument that the "conviction was improper because it was the pharmacies, not [the defendant], that billed Medicare and Medicaid"); United States v. Webb, 655 F.3d 1238, 1258 (11th Cir. 2011) (health care fraud where a defendant prescribed "controlled substances for other than legitimate medical purposes, and [had] pharmacies submit claims for reimbursement to health insurers on the basis of his prescriptions").

Accordingly, the Court denied the motion as to Count 6.

---

[3] As discussed, the Court determines that illegitimate prescriptions are implicit misrepresentations that can give rise to health care fraud.

### C.   Grand Jury Material

Under Federal Rule of Criminal Procedure 6(e), a court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To "gain access to grand jury materials, a defendant must show 'that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" United States v. Ramirez, 807 F. Supp. 3d 1086, 1110 (C.D. Cal.) (quoting United States v. Giraud, 795 F. Supp. 3d 560, 606 (D.N.J.), aff'd, 160 F.4th 390 (3d Cir. 2025)), reconsideration denied, 812 F. Supp. 3d 1011 (C.D. Cal. 2025). Defendant asks this Court for grand jury transcripts and instructions because she believes the Government improperly instructed the grand jury on the proper mens rea standard for lack of authorization. Mot. at 22–23.

But the Court does not view the authorization clause as an essential element under Section 841—especially for a non-practitioner. See Litwin, 2023 WL 5529516 at * 4 (denying disclosure of grand jury material as mens rea for authorization was not an essential element). And in any event, as discussed, the Indictment adequately covered mens rea for authorization. Consequently, the grand jury was properly instructed and Defendant failed to meet her burden under Rule 6(e).

**IT IS SO ORDERED.**

Dated: April 3, 2026

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California