United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA<br>Plaintiffs,<br>v.<br>RUTHIA HE, et al.,<br>Defendants. | Case No. 24-cr-00329 (CRB)<br>**ORDER SETTING RESTITUTION** |

Defendants were convicted of health care fraud in November of 2025. The Court now seeks to determine how to compensate the victims of that fraud. The government requests a restitution order of $5,507,382 based on four categories of fraudulent prescriptions established at trial. United States Memo. Regarding Restitution ("Rest. Memo.") (dkt. 742) at 1–2. The Defendants respond that the government's claim overreaches, not because it miscalculated the costs of the prescriptions, but because it failed to account for the portion of the prescriptions that would have been legitimate if the Defendants were acting legally. See generally Brody Opp'n (dkt. 746); He Opp'n (dkt. 747). In doing so, however, the Defendants ask too much of the government and of this Court. The Court thus ORDERS restitution in the amount of $5,507,382, with further briefing from the parties on the appropriate payment schedule.

## I. BACKGROUND

A jury found Defendants He and Brody guilty of conspiracy to distribute controlled substances, three counts of distribution of controlled substances, and conspiracy to commit health care fraud, while He was also found guilty of conspiracy to obstruct justice. Verdict (dkt. 530). The charges stemmed from Defendants' use of the online health company,

Done Health, Inc., to illegally distribute Adderall and other medications to patients without proper medical screening or treatment regimes. See Indictment (dkt. 1). The Court subsequently sentenced Defendant Brody to the Bureau of Prisons to a term of 24 months, with a fine of 1 million dollars, and Defendant He to the Bureau of Prisons to a term of 72 months, with a fine of 1 million dollars. See Sent'g for He (dkt. 652); Sent'g for Brody (dkt. 653).

Under the Mandatory Victim Restitution Act ("MVRA"), restitution is mandatory in health care fraud cases. United States v. Anieze-Smith, 923 F.3d 565, 572 (9th Cir. 2019). Restitution must be in the full amount of each victim's losses. 18 U.S.C. § 3664(f)(1)(A). This Court thus required the parties to meet and confer to determine the appropriate amount for restitution. July Hr'g Tr. at 109–10, 139. Having failed to come to a resolution, the parties submitted briefing on the issue. Rest. Memo.; Brody Opp'n; He Opp'n; United States Reply Regarding Rest. ("Reply") (dkt. 748).

The government argues that Defendants should be jointly and severally liable for restitution of $5,507,382 based on "how much insurers paid for the pills that the Court found to be illegally distributed." Rest. Memo at 1. They derive this figure from four buckets of illegal conduct:

- The $86,721 paid for the pills prescribed by Dr. Brody, who "blind" prescribed the pills to patients. Id.
- The $4,030,182 paid for pills provided by six providers who pleaded guilty to joining Defendants' conspiracy: Elizabeth Shapard, Erin Kim, Yina Cruz, Christopher Lucchese, Ginger Simor, and Katrina Pratcher, who largely "rubber stamped" prescriptions for upwards of 90% of all Done members and patients who had not had an appointment in over half a year. Id. at 1, 3–4.
- The $1,388,342 paid for pills "distributed to Done members who never had a single follow up appointment on the platform"—a practice contra to proper medical procedure. Id. at 1–2, 4.



United States District Court
Northern District of California

- And "the $2,137 paid for pills distributed to the 16 Done members whose medical records were reviewed by expert witness David Goodman." Id. at 2.

The government argues that the $5,507,382 in restitution is a conservative figure, adjusted down from the $12,397,160 that insurers paid for all pills distributed by Done, and tailored to focus on restitution for only those pills the trial established were illegally distributed. See Reply at 2.

Defendants do not contest the figures provided by the government. See also Brody Opp'n at 6. Instead, they respond that the Court needs more information before it can settle on an accurate restitution figure.[1] See id. at 1–2. Mainly, they argue that restitution awards must be based on the victim's actual losses, which requires distinguishing how many of Defendants' and their co-conspirators' prescriptions would have been medically justified. Id. at 9 ("The Court should determine whether a compliant evaluation, truthful authorization, appropriate prescribing, and required follow-up would have resulted in covered treatment for the patients and payments at issue.").

## II. LEGAL STANDARD

The MVRA requires courts to order restitution to "each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The government has the burden of demonstrating the amount of the loss by a preponderance of the evidence, 18 U.S.C. § 3664(e), and must show both that the defendant's actions "proximately caused the losses" and did so "in the amounts awarded," United States v. Tsosie, 639 F.3d 1213, 1222 (9th Cir. 2011). Courts have "a degree of flexibly" in assessing this evidence, United States v. Waknine, 543 F.3d 546, 556 (9th Cir. 2008) (internal quotation omitted), but they must set out their reasoning for their conclusions, Tsosie, 639 F.3d at 1221–22. Still, courts need only make "a reasonable estimate of the loss based on available information."

[1] Defendant He filed only a very brief opposition to the government's memorandum, focused primarily on a dispute with established Ninth Circuit precedent. See He Opp'n. For purposes of convenience, the Court will refer to Brody's opposition as representing the views of both Defendants, except where it is otherwise clear that their interests diverge.

United States District Court
Northern District of California

United States v. Walter-Eze, 869 F.3d 891, 912 (9th Cir. 2017) (citations and internal quotations omitted). "Absolute precision" is not required. Id.

Where a court orders restitution for a fraudulent scheme, restitution is "not limited to harm caused by the particular counts of conviction . . . [but may extend] to related but uncharged conduct that is part of [the] fraud scheme." Anieze-Smith, 923 F.3d at 572 (quoting In re Her Majesty the Queen in Right of Can., 785 F.3d 1273, 1276 (9th Cir. 2015)). "In a conspiracy, restitution may be ordered against each defendant to the extent the victim's losses were reasonably foreseeable to that defendant." United States v. Adebimpe, 649 F. App'x 449, 452–53 (9th Cir. 2016).

Once a court determines the proper restitution amount, they are required to specify the "schedule according to which[] the restitution is to be paid." 18 U.S.C. § 3664(f)(2). "If the court finds that more than [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

## III. DISCUSSION

Under the MVRA, "a court calculates 'actual losses' by determining the difference between (1) the loss the victim incurred because of the unlawful conduct, and (2) the loss the victim would have incurred had the defendant acted lawfully." United States v. Solakyan, 119 F.4th 575, 595 (9th Cir. 2024). Defendants and the government offer different interpretations of what this test requires here. According to Defendants, the Court should assess how much the insurers would have been charged had the Defendants been engaged in the lawful practice of medicine (i.e. if they had been properly screening and assessing their patients to determine which ones deserved a prescription). Brody Opp'n at 6. The government argues, instead, that Solakyan merely requires the Court to determine "how much insurers would have paid if Defendants submitted truthful claims." Reply at 1.

While both parties offer a plausible read of the test, where a restitution claim arises

United States District Court
Northern District of California

from fraud, as here, the government's interpretation is the more reasonable one. The relevant question for a fraud scheme is what losses the victims would have suffered if the Defendants had made lawful disclosures. See, e.g., United States v. Bussell, 504 F.3d 956, 965 (9th Cir. 2007) (assessing loss by looking at what would have happened if the defendant "made full and complete disclosure of her financial affairs"). And this approach makes practical sense. The MVRA requires only that the Court make a "reasonable estimate" of the losses accrued, based on "available information." Walter-Eze, 869 F.3d at 912. But asking the Court to assess what insurers would have paid if there had been "a compliant evaluation, truthful authorization, appropriate prescribing, and required follow up" goes much farther. See Brody Opp'n at 9. The Defendants' approach would risk thrusting the Court into a potentially unending evidentiary contest over the appropriate interpretation of thousands of patients' medical records, going far beyond the information available from the trial. See Hr'g Tr. (dkt. 632) at 10 ("The question is how large is [the group of individuals who should not have been prescribed this medication] and the answer is we don't know. We just don't know."). The MVRA gives district courts flexibility to avoid precisely this kind of evidentiary morass.

This reading is affirmed by United States v. Tcherniavsky, 708 F. App'x 444 (9th Cir. 2018), and Walter-Eze, 896 F.3d 891. In those cases, the Ninth Circuit held that the government need only show "most, if not all" of a medical provider's claims were "tainted by fraud" to justify restitution for all claims. Tcherniavsky, 708 F. App'x at 445; Walter-Eze, 896 F.3d at 912. Here, as the government shows, Defendants' high-speed, rubber-stamp prescription process meets that same threshold, tainting almost all of the pills prescribed in the government's four categories with illegitimacy. See Rest. Memo. at 3–6, 9–11; Reply at 5–6. Indeed, healthcare providers testified at trial they would not have reimbursed "a single Done claim" had they known about their medical processes and screening techniques. Id. at 6 (quoting Trial Tr. at 2715–17, 2738). Defendants argue Walter-Eze is distinguishable because the Plaintiffs there failed to rebut the government's showings. Brody Opp'n at 13–14. But the Walter-Eze holding can more accurately be

United States District Court
Northern District of California

read as establishing that where a district court has no readily available basis for "establish[ing] how much of [the defendant's business] was legitimate and untainted by fraud," it is reasonable to order restitution for all potentially tainted claims. 869 F.3d at 913; see also Adebimpe, 649 F. App'x at 452 (when calculating intended loss, "the district court was not required to discount the value of any [claims] that happened to be medically necessary, because the medical examination mandated to determine medical necessity were not performed."). That is the case here. The government has already excluded from its calculations those claims that were not clearly illegitimate. Reply at 1. And Defendant provides nothing in the way of a reasonable approach for establishing potentially legitimate claims beyond a fact-intensive inquiry that goes far beyond the evidence available on this record. The government's approach is the more reasonable one.

Thus, restitution should be awarded for all losses resulting from Defendant's illegitimate claims or the illegitimate claims that were the foreseeable consequence of the Defendants' actions,[2] including the $86,721 attributable to Defendant Brody's illegitimate prescriptions, the $4,030,182 attributable to the co-conspirator's illegitimate prescriptions, the $1,388,342 attributable to patients never offered a follow-up appointment, and the $2,137 attributable to the 16 patients reviewed by Dr. Goodman.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** restitution in the amount of $5,507,382 to be paid jointly and severally by Defendants He and Brody.

//

//

//

//

[2] The Court agrees that the actions of the co-conspirators and lack of follow-up appointments were outcomes attributable to the Defendants. See Rest. Memo at 10–11. The Defendants do not contest this point. See Brody Opp'n at 14 ("Where an offense includes a fraudulent scheme or conspiracy, restitution may reach actual losses directly caused by the broader scheme, and foreseeable losses may be attributable to conspirators.").

United States District Court
Northern District of California

The parties are also **ORDRED** to meet and confer to determine a schedule of payments. If they cannot agree on a schedule, the government is directed to file a proposed schedule of payments within 30 days of this Order. The Defendants can file alternative schedules within 7 days of the government's filing.

**IT IS SO ORDERED.**

Dated: November 25, 2026



CHARLES R. BREYER
United States District Judge